Joshua H. Haffner, SBN 188652
  jhh@haffnerlawyers.com
Alfredo Torrijos, SBN 222458
  at@haffnerlawyers.com
Vahan Mikayelyan, SBN 337023
  vh@haffnerlawyers.com
**HAFFNER LAW PC**
15260 Ventura Blvd., Suite 1520
Sherman Oaks, California 91403
Tel: (213) 514-5681 / Fax: (213) 514-5682

Shaun C. Setareh, SBN 204514
  shaun@setarehlaw.com
Thomas A. Segal, SBN 222791
  thomas@setarehlaw.com
**SETAREH LAW GROUP**
9665 Wilshire Blvd., Suite 430
Beverly Hills, California 90212
Tel: (310) 888-7771 / Fax: (310) 888-0109

Attorneys for Plaintiffs
and the Proposed Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA CAVALLERI, an individual; MARK GLINOGA, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HERMÈS INTERNATIONAL, a French corporation and HERMÈS OF PARIS, INC., a New York corporation, and DOES 1 through 10; inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br>1. **VIOLATION OF SHERMAN ACT (15 U.S.C. §2);**<br>2. **VIOLATION OF CARTWRIGHT ACT (BUS. & PROF. CODE, § 16720);**<br>3. **VIOLATION OF CARTWRIGHT ACT (BUS. & PROF. CODE, § 16727); AND**<br>4. **VIOLATION OF UNFAIR COMPETITION LAW (BUS. & PROF. CODE, §§ 17200, ET SEQ.)**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs Tina Cavalleri and Mark Glinoga (collectively, "Plaintiffs"), allege based upon information and belief, as follows.

## NATURE OF ACTION

1. This is an antitrust and unfair business practices class action arising out of Defendants Hermès International and Hermès of Paris, Inc. ("Defendants" or "Hermès") unlawful practice of tying the purchase of Defendants' popular Birkin bags to the purchase of other Defendant's luxury clothing and accessory items. As set forth herein, Defendant's practices are unlawful. In this action, Plaintiffs on behalf of themselves and all others similarly situated seek compensatory and punitive damages, and appropriate injunctive relief.

## PARTIES

2. Plaintiff Tina Cavalleri ("Plaintiff Cavalleri") is a resident of California.

3. Plaintiff Mark Glinoga ("Plaintiff Glinoga") is a resident of California.

4. Defendant Hermès International ("Hermès International") is a corporation, organized and existing under the laws of France, having its principal place of business located in Paris, France. Hermès International does business in the United States, including New York, through its wholly owned subsidiary Hermès of Paris, Inc.

5. Defendant Hermès of Paris, Inc. ("Hermès of Paris") is a corporation, organized and existing under the laws of New York, having its principal place of business located at 55 East 59th Street, New York, New York 10022. Hermès of Paris, Inc. is the sole authorized distributor of the Birkin handbags in the United States and has the exclusive right to sell Birkin handbags under the Hermès trademark in the United States.

6. Hermès International and Hermès of Paris are collectively referenced herein as Hermès.

7. The true names and capacities, whether individual, corporate, partnership, associate or otherwise of defendants Does 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of Does 1 through 10, inclusive, when they are ascertained.

**CLASS ACTION COMPLAINT**

8.  Plaintiffs are informed and believe, and based upon that information and belief allege, that the Defendants named in this complaint, including Does 1 through 10, inclusive, are responsible in some manner for one or more of the events and happenings that proximately caused the injuries and damages alleged herein.

9.  Plaintiffs are informed and believe, and based upon that information and belief allege, that each of the Defendants, including Does 1 through 10, inclusive, in performing or omitting to perform the acts alleged were, at various times, acting within the course and scope of his or her employment, authority, or apparent authority as an employee, agent and/or representative of the other Defendants.  Plaintiffs are further informed and believe, and based upon that information and belief allege, that at various other times the Defendants, in performing or omitting to perform the acts alleged hereinafter, acted outside the course and scope of their employment, authority, or apparent authority, did not utilize or operate through any corporations or businesses, and were not engaged in any business activities whatsoever, but rather, were acting outside the realm of any business individually and are thus liable for all damages alleged herein, jointly and severally.

10.  Plaintiffs are informed and believe, and based upon that information and belief allege, that each Defendant named in this complaint, including Does 1 through 10, inclusive, knowingly and willfully acted in concert, conspired and agreed together among themselves, and entered into a combination and systemized campaign of activity, to inter alia damage Plaintiffs and the Class and to otherwise consciously and/or recklessly act in derogation of the rights of Plaintiffs and the Class, and the trust reposed by Plaintiffs and the Class in each of the Defendants, the acts being negligently and/or intentionally inflicted.  This conspiracy, and Defendants' concerted actions, were such that, to the information and belief of Plaintiffs and the Class, and to all appearances, Defendants, represented a unified body so that the actions of one Defendant were accomplished in concert with, and with knowledge, ratification, authorization and approval of each of the other Defendants.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under the Sherman Act, 15 U.S.C. § 2.

12. This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as those that give rise to the federal claims.

13. This Court has personal jurisdiction over Defendants because they conduct business in California and have sufficient minimum contacts with California. Defendants also advertise and solicit business in California.

14. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District: Defendants gain significant revenue and profits from doing business in this District, Class Members affected by the practices asserted herein reside in this District, and Defendants employ numerous people in this District. Each Defendant has transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District. Defendants' conduct had the intended and foreseeable effect of causing injury to persons residing in this District.

## FACTUAL ALLEGATIONS

**A.     Hermès.**

15. Hermès is a world-famous designer and producer of high-quality merchandise including, *inter alia*, luxury handbags, apparel, scarves, jewelry, fashion accessories, and home furnishings.

16. For decades, Hermès has developed its reputation and distinctive image.

17. Hermès' origins date back to 1837, when it began designing and manufacturing high quality harnesses for horses. During the twentieth century, Hermès expanded its business to include handbags, personal leather goods, and apparel.

18. Hermès is the exclusive distributor or licensor in the United States of its merchandise.

19. Hermès sells its products directly to consumers through Hermès-owned retail stores and (except for Birkin handbags) through its website at www.hermes.com. Hermès currently operates approximately 43 retail stores in the United States with 8 of those retail stores located in California.

**B.     The Birkin Handbag.**

20. Hermès is well known for its famous Birkin and Kelly handbags (collectively "Birkin handbag"), which are exclusive Hermès design.

21. Each Birkin handbag is handcrafted from the finest leather by experienced artisans in France. The manufacturing of a single Birkin handbag requires many hours of an artisan's time. The intensive labor and craftmanship and high-quality leathers required make the Birkin handbag difficult to produce and expensive. The price of a Birkin handbag from thousands of dollars to over one hundred thousand dollars.

22. "The desirability of an Hermès Birkin handbag – a symbol of rarefied wealth – is such that not even a global pandemic can dull demand for it." In the second quarter of 2021, Hermès' sales for the leather and saddlery division, which includes the Birkin handbags, more than doubled from a year ago and rose by 24% from their pre-pandemic June 2019 levels.

23. Despite the price and exclusivity, the Birkin handbag has become a household name and well known by the general public, both in name and by its distinctive design.

24. Since as early as 2000, Hermès has expended millions of dollars in the United States advertising the Birkin handbag. As a result of such advertising, since 2000, Hermès has sold thousands of Birkin handbags.

25. The Birkin handbag is an icon of fashion. A September 2021 Vanity Fair article noted that, "There is a kind of fashion object so long lasting, so tirelessly wanted that its name becomes recognizable, a metonym for the brand that made it: the Air Jordan, the Love bracelet. Few brands, successful though they may be, attain that kind of saturation."

**CLASS ACTION COMPLAINT**

**C.     Defendants' Illegal Tying with the Birkin Handbag.**

26.     The unique desirability, incredible demand and low supply of Birkin handbags gives Defendants incredible market power.  Defendants implemented a scheme to exploit this market power by requiring consumers to purchase other, ancillary products from Defendants before they will be given an opportunity to purchase a Birkin handbag.  With this scheme Defendants were able to effectively increase the price of Birkin handbags and, thus, the profits that Defendants earn from Birkin handbags.

27.     Birkin handbags cannot be purchased from Defendants through the Hermès website. Instead, consumers can only purchase Birkin handbags from Defendants by physically going to a *Hermès* retail store. However, unlike most consumer products – and most other products sold by Defendants – consumers cannot simply walk into a *Hermès* retail store, pick out the Birkin handbag they want and purchase it.  Birkin handbags are never publicly displayed for sale at *Hermès* retail stores.  Indeed, it is often the case that there are no Birkin handbags *at all* at *Hermès* retail stores or, if there are, there are only one, two or at most three Birkin handbags.  But even if there are Birkin handbags at a particular *Hermès* retail store, the handbags will not be displayed on the sales floor for the general public.  In fact, most consumers will never be shown a Birkin handbag at *Hermès* retail store.  Typically, only those consumers who are deemed worthy of purchasing a Birkin handbag will be shown a Birkin handbag (in a private room).  The chosen consumer will be given the opportunity to purchase the specific Birkin handbag which they are shown.  Consumers cannot order a Birking handbag at the retail location.  For all practical purposes, there is no way to order a bag in the style, size, color, leather, and hardware that a consumer wants.

28.     Hermès Sales Associates are tasked by Defendants with selecting those consumers who are qualified to purchase Birkin handbags.  These sales associates are directed by Defendants to only offer Birkin handbags to consumers who have established a sufficient "purchase history" or "purchase profile" with Defendants of Defendants' ancillary products such as shoes, scarves, belts, jewelry and home goods.  Only once a consumer has a sufficient purchase history or purchase profile with Defendants, will the consumer be offered the opportunity to purchase a

— 6 —
**CLASS ACTION COMPLAINT**

1  Birkin handbag.

2  29. Defendants have designed the compensation structure of sales associates to ensure that sales associates follow Defendants policy of only selling Birkin handbags to consumers who have a sufficient purchase history of ancillary products. Hermès Sales Associates are paid by the hour and also receive a commission on their sales. The commission rates paid by Defendants to sales associates differ based on the type of product sold. Sales Associates are paid 3% on ancillary products such as shoes, scarves, belts, jewelry and home goods; they are paid a 1.5% commission on non-Birkin handbags, and they receive *no* commission whatsoever on the sale of Birkin handbags. Although Hermès Sales Associates receive *no* commission on the most valuable and sought-after products sold by their employer, they are instructed by Defendants to use Birkin handbags as a way to coerce consumers to purchase ancillary products sold by Defendants (for which the sales associates receive a 3% commission) in order to build-up the purchase history required to be offered a Birkin handbag.

30. In this way, Defendants are able to use their Sales Associate's to implement Defendants' illegal tying arrangement.

**D. Plaintiffs' Attempts to Purchase a Birkin Handbag.**

31. Plaintiff Cavalleri has spent tens of thousands of dollars at Hermès, and had been coerced into purchasing Ancillary Products in order to obtain access to Hermès Birkin bags, based on the practices alleged herein. In or about September 2022, Plaintiff contacted Hermes about purchasing another Birkin bag but was told specialty bags are going to "clients who have been consistent in supporting our business." Plaintiff Cavalleri understood she would have to spend more on Ancillary Products to obtain access to another Birkin Handbag. As a result, Plaintiff Cavalleri was unable to purchase another Birkin Handbag in September 2022.

32. In or about 2023, Plaintiff Glinoga sought to purchase a Birkin Handbag, but was counseled by Defendant's sales associates to purchase Ancillary Products in order to potentially obtain a Berkin Handbag. Plaintiff Glinoga made multiple attempts to purchase a Birkin bag, but was told on each occasion he needed to purchase other items and accessories. As a result, Plaintiff Glinoga was unable to purchase a Birkin Handbag.

33. Plaintiffs are informed and believes, and on that basis alleges, that Defendants tied Plaintiffs' access to purchase a Birkin Handbag to a requirement that they spend more on other items, pursuant to the unlawful tying arrangement alleged herein.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this action on behalf of themselves and as representatives of all others who are similarly situated. Pursuant to Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following class and subclass that are initially defined as follows:

> **Class**: All residents of the United States who, from four years prior to the filing of this complaint until the date that notice of this class action is disseminated to the class, purchased or were asked to purchase Ancillary Products in order to purchase a Birkin Handbag (the "Class").
>
> **Subclass**: All residents of California who, from four years prior to the filing of this complaint until the date that notice of this class action is disseminated to the class, purchased or were asked to purchase Ancillary Products in order to purchase a Birkin Handbag (the "Subclass").

35. For purposes of the above class definitions, "*Ancillary Products"* include any products sold at Hermès' branded retail boutiques except for any Birkin, Kelly or Constance branded handbag. For purposes of the above class definitions, "*Birkin Handbag*" shall consist of any handbag manufactured and sold by Hermès' under the tradename of "Birkin" or "Kelly."

36. Excluded from each of the above classes are Defendants, including any entity in which Defendants have a controlling interest, are a parent or subsidiary, or which are controlled

by Defendants, as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

37. Plaintiffs reserve the right to amend or modify the above class definition with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

38. This action has been brought and may be properly maintained on behalf of the classes proposed herein under Rule 23 of the Federal Rules of Civil Procedure.

39. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The member of each class and subclass are so numerous that joinder of all members is impractical. Plaintiffs are informed and believe that there are thousands of members of each of the classes.

40. <u>Commonality and Predominance.</u> Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to each class, which predominate over any questions affecting individual members of each respective class. These common questions of law and fact include, without limitation:

    a. Whether the Birkin handbags and Defendants' ancillary products are separate and distinct;

    b. Whether Defendants implemented a policy to ensure that their sales associates would only sell Birkin handbags to consumers with a sufficient purchase history of Defendants' ancillary products; and

    c. Whether Defendants have sufficient economic power in the market for Birkin handbags to coerce at least some consumers into purchasing Defendants' ancillary products;

    d. Whether Defendants unlawfully tied the sale of Birkin handbags to the sale of Ancillary products; and

    e. Whether Plaintiffs and the members of the Class and Subclass have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded.

**CLASS ACTION COMPLAINT**

41. <u>Typicality.</u> Fed. R. Civ. P. 23 (a)(3). Plaintiffs' claims are typical of the claims of the classes they seek to represent. Plaintiffs and all Class and Subclass members were exposed to uniform practices and sustained injuries arising out of and caused by Defendants' conduct.

42. <u>Adequacy.</u> Fed. R. Civ. P. 23(a)(4). Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class and Subclass.

43. <u>Superiority.</u> Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class and Subclass member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, Class and Subclass members will continue to suffer losses and Defendants' misconduct will proceed without remedy. Even if Class or Subclass members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court. Finally, Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

### FIRST CLAIM FOR RELIEF
**Violation of the Sherman Act**
*15 U.S.C. § 2*
**(By Plaintiffs and the Class Against Defendants)**

44. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs, inclusive, of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

— 10 —
**CLASS ACTION COMPLAINT**

45. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants under federal law.

46. The Sherman Act prohibits "monopoliz[ation] of] any part of the trade or commerce among the several states, or with foreign nations." 15 U.S.C. §2.

47. As detailed above, Defendants have unlawfully tied their Birkin handbags to their Ancillary Products through their sales associate incentive program. A market exists for both the tying and tied products, the Berkin handbag and ancillary products, respectively.

48. Defendants have sufficient economic power in the tying market, the Birkin Handbag, to affect competition in the tied market, ancillary products. Defendants willfully and intentionally engage in predatory, exclusionary, and anticompetitive conduct with the design, purpose, and effect of unlawfully maintaining its market and/or monopoly power.

49. The availability of the Birkin handbags is conditioned on customers purchasing ancillary products from Defendants. In other words, consumers are coerced into purchasing ancillary products from Defendants by virtue of wanting to purchase the Birkin Handbags. This is anticompetitive, tying conduct.

50. The tying product, the Birkin Handbags, is separate and distinct from the tied products, the ancillary products required to be purchased by consumers, because consumers such as Plaintiffs have alternative options for the ancillary products and would prefer to chose among them independently from their decision to purchase Birkin handbags. Defendants' unlawful tying arrangements thus ties two separate products that are in separate markets.

51. Defendants have sufficient economic power in the market for Birkin handbags to coerce at least some consumers into purchasing ancillary products from Defendants. Defendants conduct effects and has effected a not insubstantial volume of commerce, significantly more than de minimis.

52. Plaintiffs and the other members of the Class were harmed and Defendants' violation of the Sherman Act was a substantial factor in causing this harm.

**CLASS ACTION COMPLAINT**

**SECOND CLAIM FOR RELIEF**
**Violation of the Cartwright Act**
*Cal. Bus. & Prof. Code, § 16720*
**(By Plaintiffs and the Subclass Against Defendants)**

53. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs, inclusive, of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

54. Plaintiffs bring this claim individually and on behalf of the members of the Subclass against Defendants under California law.

55. Defendants' acts and practices detailed herein violate the Cartwright Act, Cal. Bus. & Prof. Code § 16700 et seq., which prohibits, *inter alia*, the combination of resources by two or more persons to restrain trade or commerce, or to prevent market competition. (Cal. Bus. & Prof. Code, §§ 16720, 16726.)

56. Under the Cartwright Act, a "combination" is formed when the anticompetitive conduct of a single firm coerces other market participants to involuntarily adhere to the anti-competitive scheme.

57. The Cartwright Act also makes it "unlawful for any person to lease or make a sale or contract for the sale of goods, merchandise, machinery, supplies, commodities for use within the State, or to fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, merchandise, machinery, supplies, commodities, or services of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of trade or commerce in any section of the State." (Cal. Bus. & Prof. Code, § 16727.)

58. As detailed above, Defendants have unlawfully tied their Birkin handbags to their ancillary products through their sales associate incentive program.

59. Defendants have sufficient economic power in the tying market, the Birkin handbag, to affect competition in the tied market, ancillary products.

60. The availability of the Birkin handbags is conditioned on customers purchasing ancillary products from Defendants. In other words, consumers are coerced into purchasing ancillary products from Defendants by virtue of wanting to purchase the Birkin handbags.

61. The tying product, the Birkin handbags, is separate and distinct from the tied products, the ancillary products required to be purchased by consumers, because consumers such as Plaintiffs have alternative options for the ancillary products and would prefer to chose among them independently from their decision to purchase Birkin handbags. Defendants' unlawful tying arrangements thus ties two separate products that are in separate markets.

62. Defendants have sufficient economic power in the market for Birkin handbags to coerce at least some consumers into purchasing ancillary products from Defendants.

63. Plaintiffs and the other members of the Subclass were harmed and Defendants' violation of the Carwright Act was a substantial factor in causing this harm.

WHEREFORE, Plaintiffs and the Class pray judgment against Defendants as hereafter set forth.

### THIRD CLAIM FOR RELIEF
**Violation of the Cartwright Act**
*Cal. Bus. & Prof. Code, § 16727*
**(By Plaintiffs and the Subclass Against Defendants)**

64. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs, inclusive, of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

65. Plaintiffs bring this claim individually and on behalf of the members of the Subclass against Defendants under California law.

66. Defendants' acts and practices detailed herein violate the Cartwright Act, Cal. Bus. & Prof. Code § 16727, which makes it "unlawful for any person to lease or make a sale or contract for the sale of goods, merchandise, machinery, supplies, commodities for use within the State, or to fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, merchandise, machinery, supplies, commodities, or services of a competitor or competitors of the

lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of trade or commerce in any section of the State." (Cal. Bus. & Prof. Code, § 16727.)

67. As detailed above, Defendants have unlawfully tied their Birkin handbags to their ancillary products through their sales associate incentive program.

68. Defendants have sufficient economic power in the tying market, the Birkin handbag, to affect competition in the tied market, ancillary products.

69. The availability of the Birkin handbags is conditioned on customers purchasing ancillary products from Defendants. In other words, consumers are coerced into purchasing ancillary products from Defendants by virtue of wanting to purchase the Birkin handbags.

70. The tying product, the Birkin handbags, is separate and distinct from the tied products, the ancillary products required to be purchased by consumers, because consumers such as Plaintiffs have alternative options for the ancillary products and would prefer to chose among them independently from their decision to purchase Birkin handbags. Defendants' unlawful tying arrangements thus ties two separate products that are in separate markets.

71. Defendants have sufficient economic power in the market for Birkin handbags to coerce at least some consumers into purchasing ancillary products from Defendants.

72. Plaintiffs and the other members of the Subclass were harmed and Defendants' violation of the Carwright Act was a substantial factor in causing this harm.

WHEREFORE, Plaintiffs and the Class pray judgment against Defendants as hereafter set forth.

### FOURTH CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law**
*Cal. Bus. & Prof. Code, § 17200, et seq.*
**(By Plaintiffs and the Subclass Against Defendants)**

73. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs, inclusive, of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

74. Plaintiffs bring this claim individually and on behalf of the members of the Subclass against Defendants under California law.

75. Plaintiffs have standing to pursue this cause of action as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendants' actions as delineated herein.

76. Defendants' scheme, as delineated herein, constitutes unlawful business practices in violation of California Business and Professions Code sections 17200, *et seq*.

77. Defendants' business practices, as alleged herein, violate the "unlawful" prong of California Business & Professions Code sections 17200, *et seq*. because Defendants' conduct violates the Cartwright Act and thus constitutes unlawful conduct.

78. Accordingly, Defendants' violated, and continues to violate, California Business and Professions Code section 17200's proscription against engaging in unlawful business acts or practices.

79. As a direct and proximate result of Defendants' unlawful business practices, Plaintiffs and the Class have suffered injury in fact and lost money or property, in that they purchased ancillary products from Defendants that they did not want or could have purchased elsewhere.

80. Pursuant to California Business and Professions Code section 17203, Plaintiffs and the Class seek an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those acts set forth in the complaint.

81. Plaintiffs and the Subclass also seek an order requiring Defendants to make full restitution of all monies they wrongfully obtained from Plaintiffs and the Class.

WHEREFORE, Plaintiffs and the Class pray judgment against Defendants as hereafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment against Defendants, as follows:

1. An order certifying appropriate classes and/or subclasses, designating Plaintiffs as the class representatives and their counsel as class counsel;

2. An order enjoining Defendants from continuing to engage in the practices complained of herein;

3. An award of restitution, damages, and disgorgement to Plaintiffs and the Class and Subclass in an amount to be determined at trial;

4. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded, as allowed by law;

5. An award of costs and attorneys' fees, as allowed by law; and

6. Such other or further relief as may be appropriate.

Dated: March 19, 2024

HAFFNER LAW

By: /s/ Joshua H. Haffner
Joshua H. Haffner
Alfredo Torrijos
Vahan Mikayelyan

SETAREH LAW GROUP
Shaun C. Setareh
Thomas A. Segal

*Counsel for Plaintiffs and the Proposed Class and Subclass*

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a trial by jury of any and all issues in this action so triable of right.

Dated: March 19, 2024　　　　　　　　HAFFNER LAW

By: _____
Joshua H. Haffner
Alfredo Torrijos
Vahan Mikayelyan

SETAREH LAW GROUP
Shaun C. Setareh
Thomas A. Segal

*Counsel for Plaintiffs and the Proposed Class and Subclass*

**CLASS ACTION COMPLAINT**