1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM & WATKINS LLP
    Christopher S. Yates (SBN 161273)
    Belinda S Lee (SBN 199635)
    Ashley M. Bauer (SBN 231626)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
Email:   Chris.Yates@lw.com
          Belinda.Lee@lw.com
          Ashley.Bauer@lw.com

LATHAM & WATKINS LLP
    Peter E. Davis (SBN 320256)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone:  202.637.2200
Facsimile: 202.637.2201
Email:    Peter.Davis@lw.com

Attorneys for Defendants
*Hermès of Paris, Inc. and Hermès International*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TINA CAVALLERI, an individual; MARK GLINOGA, an individual, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>HERMÈS INTERNATIONAL, a French corporation and HERMÈS OF PARIS, INC., a New York corporation, and DOES 1 through 10; inclusive,<br><br>                    Defendants. | Case No. 3:24-cv-01707-JD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    July 11, 2024<br>Time:    10:00 AM<br>Place:   Courtroom 11, 19th Floor<br>Judge:   Hon. James Donato |

1    <u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2    **TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:**

3           PLEASE TAKE NOTICE that on July 11, 2024, at 10:00 a.m., or as soon thereafter as

4    the matter may be heard by the Court, at the courtroom of the Honorable James Donato,

5    Courtroom 11, 19th Floor, United States District Court, located at 450 Golden Gate Avenue, San

6    Francisco, California, Defendants Hermès of Paris, Inc. and Hermès International will and

7    hereby do move the Court for an order dismissing Plaintiffs' Complaint, Dkt. 1 ("Compl."), on

8    the ground that it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).  This

9    motion is based on the Memorandum of Points and Authorities, and all other matters properly

10   before the Court.

11          Defendants seek an order pursuant to Federal Rule of Civil procedure 12(b)(6) dismissing

12   with prejudice Plaintiffs' claims for failure to state a claim upon which relief can be granted.

13                           **STATEMENT OF ISSUES**

14          1.      Whether the Complaint fails to state a claim under Section 2 of the Sherman

15   Antitrust Act, 15 U.S.C. § 2.

16          2.      Whether the Complaint fails to state a claim under Sections 16720 and 16727 of

17   the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, 16727.

18          3.      Whether the Complaint fails to state a claim under the California Unfair

19   Competition Law, Cal Bus. & Prof. Code § 17200.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.   STATEMENT OF THE CASE ........................................................................ 2

III.  ARGUMENT ................................................................................................... 4

  A.   Plaintiffs Do Not Plead The Elements Of A Tying Claim Under
       The Sherman Act .................................................................................... 4

       1.   The Complaint Does Not Define A Viable Tying Market In
            Which Hermès Could Exercise Market Power ............................. 6

       2.   The Complaint Does Not Define A Viable Tied Product
            Market In Which Competitive Effects Can Be Assessed ............. 9

       3.   Plaintiffs Do Not Plead Facts Showing Antitrust Standing ........ 10

       4.   Plaintiffs Do Not Plead Willful Maintenance Or
            Acquisition Of Monopoly Power As Required By Section 2 ...... 12

  B.   Plaintiffs' State Law Claims Also Fail ............................................... 13

       1.   Plaintiffs Do Not State A Claim Under The Cartwright Act ....... 13

       2.   Plaintiffs Do Not State A Claim Under The UCL ...................... 14

IV.   CONCLUSION .............................................................................................. 14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4   *Apple Inc. v. Psystar Corp.,*
5     586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...................................................................7, 13

6   *Asahi Kasei Pharma Corp. v. CoTherix, Inc.,*
      138 Cal. Rptr. 3d 620 (Ct. App. 2012)...........................................................................13

7   *Ashcroft v. Iqbal,*
8     556 U.S. 662 (2009)..........................................................................................................4

9   *Atlantic Richfield Co. v. USA Petroleum Co.,*
      495 U.S. 328 (1990)........................................................................................................10

10  *Bell Atlantic Corp. v. Twombly,*
11    550 U.S. 544 (2007)..........................................................................................................4

12  *Beverage v. Apple, Inc.,*
13    --- Cal. Rptr. 3d ----, 2024 WL 1794410 (Ct. App. Apr. 25, 2024).............................13

14  *Blough v. Holland Realty, Inc.,*
      574 F.3d 1084 (9th Cir. 2009) ............................................................................4, 5, 6, 11
15
16  *Brantley v. NBC Universal, Inc.,*
      675 F.3d 1192 (9th Cir. 2012) .......................................................................................11

17  *Chubb Custom Insurance Co. v. Space Systems/Loral, Inc.,*
18    710 F.3d 946 (9th Cir. 2013) ...........................................................................................4

19  *Coronavirus Reporter v. Apple, Inc.,*
      85 F.4th 948 (9th Cir. 2023).........................................................................6, 7, 8, 10, 12
20
21  *Coronavirus Reporter v. Apple Inc.,*
      No. 21-cv-05567, 2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ...........................................8

22  *Dimidowich v. Bell & Howell,*
23    803 F.2d 1473 (9th Cir. 1986) .......................................................................................13

24  *Eastman Kodak Co. v. Image Technical Services, Inc.,*
      504 U.S. 451 (1992)..........................................................................................................7
25
26  *Epic Games, Inc. v. Apple, Inc.,*
      67 F.4th 946 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 682 (2024).......................7, 12

27  *Farmers Insurance Exchange v. Superior Court,*
      826 P.2d 730 (Cal. 1992) ...............................................................................................14
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' MOT. TO DISMISS
CASE NO. 3:24-CV-01707-JD

**Page(s)**

*FTC v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2023) ...............................................................................6

*Grappone, Inc. v. Subaru of New England, Inc.*,
   858 F.2d 792 (1st Cir. 1988) ...............................................................................8

*Green Country Food Market, Inc. v. Bottling Group, LLC*,
   371 F.3d 1275 (10th Cir. 2004) ........................................................................7, 8

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) .............................................................................9

*Host International, Inc. v. MarketPlace, PHL, LLC*,
   32 F.4th 242 (3d Cir. 2022) ...............................................................................10

*Illinois Tool Works Inc. v. Independent Ink, Inc.*,
   547 U.S. 28 (2006).............................................................................1, 4, 5, 6, 8

*Jefferson Parish Hospital District No. 2 v. Hyde*,
   466 U.S. 2 (1984)...............................................................................................11

*Morrison v. Viacom, Inc.*,
   78 Cal. Rptr. 2d 133 (Ct. App. 1998)................................................................13

*Packaging Systems, Inc. v. PRC-Desoto International, Inc.*,
   268 F. Supp. 3d 1071 (C.D. Cal. 2017) ......................................................6, 9, 13

*PSKS, Inc. v. Leegin Creative Leather Products, Inc.*,
   615 F.3d 412 (5th Cir. 2010) ...............................................................................7

*Rebel Oil Co. v. Atlantic Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ...........................................................................5, 8

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*,
   532 F.3d 963 (9th Cir. 2008) ........................................................1, 4, 5, 8, 9, 11

*Sidibe v. Sutter Health*,
   4 F. Supp. 3d 1160 (N.D. Cal. 2013) ...............................................................6, 9

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) .............................................................................10

*United States v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001) ..............................................................................5

1

**Page(s)**

2

*Whitaker v. Tesla Motors, Inc.*,
3      985 F.3d 1173 (9th Cir. 2021) .................................................................................................2

4                                            **STATUTES**

5    Cal. Bus. & Prof. Code § 17200 ....................................................................................................14

6                                       **OTHER AUTHORITIES**

7    Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law:  An Analysis of Antitrust*
8      *Principles and Their Application* (Aug. 2023, online) ........................................................7, 12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION

Plaintiffs fundamentally misunderstand the antitrust laws.  Hermès does not require a customer to have purchased its many other products before purchasing a Birkin or Kelly handbag.  But, even if it did, that would not violate the antitrust laws.  Plaintiffs' conclusory allegations are both legally and factually unsupported, and they utterly fail to meet the requirements to state a tying claim.  The Court should dismiss Plaintiffs' Complaint with prejudice because no amendment can cure its fatal deficiencies.

"A tying arrangement is a device used by a seller with market power in one product market [the tying product] to extend its market power to a distinct product market [the tied product]."  *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 971 (9th Cir. 2008) (citation omitted).  The Supreme Court has long recognized that, because tying arrangements are often "procompetitive," *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 36 (2006), tying does not violate the Sherman Act unless the seller uses "market power over the tying product" as leverage to "exclude other sellers of the tied product," *Rick-Mik Enters.*, 532 F.3d at 971 (citation omitted).  Plaintiffs' Complaint does not define any viable tying product market in which Hermès could have market power and says nothing at all about foreclosure of competitors in any allegedly tied product market.

This Court should dismiss Plaintiffs' Sherman Act claim, for at least four independent reasons:

1.    Plaintiffs do not allege that Hermès possesses market power in a properly defined tying product market.  Their conclusory assertion that Birkin and Kelly handbags together constitute their own product market is legally erroneous and unsupported by factual allegations.

2.    Plaintiffs do not allege a properly defined tied product market.  Their attempt to group all Hermès products (except for three handbags) into a single "Ancillary Products" market consisting of disparate products ranging from jewelry to shoes to perfume to home goods contravenes controlling precedent and flunks both basic economics and common sense.

3.    There are no allegations that Hermès has excluded other sellers of the supposedly tied products.  Without well-pleaded allegations that other sellers of jewelry, of shoes, of

1  perfume, of home goods, and so-on, have been excluded from competing, there is no viable tying

2  claim—and there is no harm to the competitive process, the focus of the antitrust laws.

3          4.      Plaintiffs do not plead, as Section 2 of the Sherman Act requires, the willful

4  acquisition or maintenance of monopoly power.  Instead, they allege that Hermès has always had

5  (and always will have) iconic products that have built a loyal following.  The antitrust laws do

6  not punish companies for creating better, more desirable products than anyone else.

7          Because Plaintiffs' Sherman Act claims fail, their derivative claims under the Cartwright

8  Act and the California Unfair Competition Law ("UCL") should be dismissed as well.

9          These failings cannot be remedied, and the Court should thus dismiss with prejudice.

10 **II.     STATEMENT OF THE CASE**

11         On March 19, 2024, Plaintiffs Tina Cavalleri and Mark Glinoga (collectively,

12 "Plaintiffs") filed an antitrust lawsuit alleging that Hermès of Paris, Inc. and Hermès

13 International (collectively, "Hermès") have engaged in a tying scheme in violation of the federal

14 Sherman Act, the California Cartwright Act, and the California UCL.[1]

15         Hermès is a "world-famous designer and producer of high-quality merchandise," such as

16 "luxury handbags, . . . jewelry, fashion accessories, and home furnishings."  Compl. ¶ 15.

17 Hermès sells those items through retail locations in the United States and also maintains a

18 website through which it sells some but not all of its products.  *Id.* ¶¶ 17-19.  In the nearly two

19 centuries since it was founded, Hermès has developed a reputation for artisan-crafted luxury

20 products and built a loyal following.  *Id.* ¶¶ 15-18.

21         This case concerns two of the many luxury items that Hermès sells—handbags known as

22 the Birkin and Kelly handbags (defined by Plaintiffs collectively as "Birkin Bag").  "Each Birkin

23 handbag is handcrafted from the finest leather by experienced artisans in France."  *Id.* ¶ 21.  This

24 is a deliberate process: "The manufacturing of a single Birkin handbag requires many hours of an

25 artisan's time," and the "intensive labor and craftsmanship and high-quality leathers required

26

27 [1] Because this case is at the motion-to-dismiss phase, Hermès recounts the facts as alleged in
   Plaintiffs' Complaint and does not admit the truth of these allegations.  *See Whitaker v. Tesla*
28 *Motors, Inc.*, 985 F.3d 1173, 1175 (9th Cir. 2021).

1   make the Birkin handbag difficult to produce." *Id.*  Because of these supply limitations, Hermès

2   cannot produce sufficient Birkin or Kelly handbags to satisfy demand.  *Id.* ¶¶ 21-23.

3      Plaintiffs' lawsuit claims that Hermès unlawfully conditions the purchase of Birkin or

4   Kelly handbags on purchases of other Hermès products, such as jewelry, scarves, or home goods.

5   Plaintiffs allege that Hermès has market power in the so-called market for "Birkin Bags"—a

6   market they define without explanation to include solely Birkin and Kelly handbags, and no

7   other handbags.  *Id.* ¶ 48.  They claim that Hermès uses this "market power" to coerce customers

8   interested in purchasing a Birkin Bag (the tying product) to purchase unspecified amounts of

9   other Hermès products (the tied product), which Plaintiffs call "Ancillary Products."  *Id.* ¶ 51.

10  For example, Plaintiff Cavalleri allegedly spent thousands of dollars on "Ancillary Products in

11  order to obtain access to Hermès Birkin Bags."  *Id.* ¶ 31.  When she attempted to purchase an

12  additional Birkin Bag in 2022, a sales associate allegedly told her that "specialty bags are going

13  to 'clients who have been consistent in supporting our business.'"  *Id.*  From this, Cavalleri

14  claims she understood that she would be required to buy additional Ancillary Products to

15  purchase a Birkin Bag.  *Id.*

16     Plaintiffs' Complaint does not identify any particular tied product that customers are

17  required to purchase for access to Birkin Bags—nor even a total amount of money that

18  customers are purportedly expected to spend.  Instead, they claim that the tied product (and tied

19  product market) is "Ancillary Products" and includes "any products sold at Hermès branded

20  retail boutiques except for any Birkin, Kelly, or Constance branded handbag."  *Id.* ¶ 35.

21  Plaintiffs do not explain how *all* Hermès products (excepting the three handbags) could fall

22  within the same product market.  Plaintiffs also do not allege that Hermès has excluded

23  competitors or otherwise harmed competition in any tied product market.  Rather, Plaintiffs

24  assert only that the alleged tie has "effectively increase[d] the price of Birkin handbags" and

25  hindered Plaintiffs' ability to "cho[o]se among" luxury items "independently from their decision

26  to purchase Birkin handbags."  *Id.* ¶¶ 26, 50.

27     Plaintiffs purport to represent a class of U.S. residents (and a subclass of California

28  residents) who "purchased or were asked to purchase Ancillary Products in order to purchase a

1   Birkin Handbag." *Id.* ¶ 34.  They seek damages, injunctive relief, and attorneys' fees.  *Id.* at 15-
2   16 (Prayer for Relief).

3   **III.   ARGUMENT**

4          Under Federal Rule of Civil Procedure 12(b)(6), "[d]ismissal is proper when the
5   complaint does not make out a cognizable legal theory or does not allege sufficient facts to
6   support a cognizable legal theory." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d
7   946, 956 (9th Cir. 2013).  To defeat dismissal, the complaint "must contain sufficient factual
8   matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,
9   678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the court
10  generally accepts as true a complaint's "well-pleaded facts," it does not accept "legal
11  conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678-79.  If the
12  allegations do not "plausibly give rise to an entitlement to relief" on the merits, the case must be
13  dismissed. *Id.* at 679.

14         **A.   Plaintiffs Do Not Plead The Elements Of A Tying Claim Under The Sherman**
15              **Act**

16         As explained above, tying occurs when the "seller conditions the sale of one product (the
17  tying product) on the buyer's purchase of a second product (the tied product)." *Rick-Mik Enters.*,
18  532 F.3d at 971 (citation omitted).  Tying alone does not raise competitive concerns, as many
19  "tying arrangements may well be procompetitive." *Illinois Tool*, 547 U.S. at 36.  The required
20  elements in an unlawful tie include the possession of market power in the tying market and the
21  threat of foreclosure in the tied market.  "Tying arrangements are forbidden on the theory that, if
22  the seller has market power over the tying product, the seller can leverage this market power
23  through tying arrangements to exclude other sellers of the tied product." *Rick-Mik Enters.*, 532
24  F.3d at 971 (citation omitted).  Accordingly, a tying claim requires allegations of anticompetitive
25  harm in the form of "reduced competition in the market for *the tied product*." *Blough v. Holland*
26  *Realty, Inc.*, 574 F.3d 1084, 1089 (9th Cir. 2009) (emphasis added) (citation omitted); *accord*
27  *Illinois Tool*, 547 U.S. at 36.  Conversely, a tying arrangement that does not have the effect of

28

1    foreclosing rivals in the tied market will not harm competition and is therefore lawful.  *See*

2    *Blough*, 574 F.3d at 1089.

3        These principles were articulated in the classic antitrust tying case against Microsoft.

4    "Microsoft required licensees of Windows 95 and 98" to also license Microsoft's Internet

5    Explorer browser "as a bundle at a single price."  *United States v. Microsoft Corp.*, 253 F.3d 34,

6    84 (D.C. Cir. 2001) (per curiam).  The United States alleged that the tie violated the Sherman

7    Act because it enabled Microsoft to leverage its market power over the Windows operating

8    system (the tying product) to exclude competitors in the market for Internet browsers (the tied

9    product).  Because of the facts of that case, the D.C. Circuit remanded for consideration of the

10   tie's actual effects on "competition in the tied good market" under the rule of reason.  *Id.* at 95-

11   96.  The case then settled.

12       Today, most tying claims under the Sherman Act are analyzed under a unique rule set out

13   by the Supreme Court.  To establish that a tying arrangement violates the antitrust laws, "'a

14   plaintiff must prove: (1) that the defendant tied together the sale of two distinct products or

15   services; (2) that the defendant possesses enough economic power in the tying product market to

16   coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a

17   not insubstantial volume of commerce in the tied product market.'"  *Rick-Mik Enters.*, 532 F.3d

18   at 971 (citation omitted).

19       These elements are difficult to establish.  *See id.* at 971 & n.2.  A plaintiff must show not

20   only that the defendant has tied together two economically distinct products, but also "that the

21   defendant has market power in the tying product."  *Id.* at 971 (quoting *Illinois Tool*, 547 U.S. at

22   46); *see Illinois Tool*, 547 U.S. at 43 ("proof of power in the relevant market" required for tying

23   claim).  A showing of market power typically requires evidence that shows "the defendant owns

24   a dominant share" of the relevant market, "there are significant barriers to entry," and "existing

25   competitors lack the capacity to increase their output in the short run."  *Rebel Oil Co. v. Atl.*

26   *Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).  Finally, a plaintiff must also show that the

27   tying arrangement has "a significant negative impact on competition in the tied product market."

28

1    *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1178 (N.D. Cal. 2013) (citation omitted); *Blough*,

2    574 F.3d at 1089.

3            Here, as explained below, Plaintiffs' case fails these requirements because Plaintiffs do

4    not allege market power in any viable tying product market, and they do not allege effects in any

5    viable tied product market.  Plaintiffs' Sherman Act claim also separately fails because Plaintiffs

6    have not pleaded the requirements of antitrust standing or the willful acquisition or maintenance

7    of monopoly power.

8                    **1.      The Complaint Does Not Define A Viable Tying Market In Which
                                Hermès Could Exercise Market Power**
9

10           "A threshold step in any antitrust case is to accurately define the relevant market."

11   *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 955 (9th Cir. 2023) (citation omitted).  In a tying

12   case, this means the plaintiff must plead sufficient facts to define a viable market for the tying

13   product.  *Illinois Tool*, 547 U.S. at 46; *see, e.g.*, *Sidibe*, 4 F. Supp. 3d at 1174-75 (plaintiff must

14   "plausibly define" tying product market).  This step is critical, because without an accurate

15   definition of the market, the court cannot determine whether the defendant has market power

16   sufficient to coerce the plaintiff into buying the tied product.  *See FTC v. Qualcomm Inc.*, 969

17   F.3d 974, 992 (9th Cir. 2023).  When the plaintiffs' market definition allegations "lack sufficient

18   clarity to state an antitrust claim plausibly," the complaint must be dismissed.  *Coronavirus Rep.*,

19   85 F.4th at 956.  So, for example, a "'complaint's relevant market definition'" is "'facially

20   unsustainable,'" and thus requires dismissal, where "'the plaintiff fails to define its proposed

21   relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of

22   demand.'"  *Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1084 (C.D.

23   Cal. 2017) (citations omitted).  Here, Plaintiffs' tying market definition is both legally deficient

24   and factually unsupported.

25           To start, Plaintiffs' attempt to invoke a single-brand product market fails as a matter of

26   law.  As part of an effort to minimize the fierce competition across all segments of luxury goods,

27   including handbags, Plaintiffs allege the tying market is a market consisting of the Birkin and

28

Kelly handbags—and absolutely nothing else.[2]  Courts commonly reject such claims of a so-called single-brand market, and this Court should do so as well.  "Single-brand markets are, at a minimum, extremely rare."  *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008).  "Even where brand loyalty is intense, courts reject the argument that a single branded product constitutes a relevant market."  *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1282 (10th Cir. 2004).  The reason for this skepticism is straightforward: a single brand rarely, if ever, has no economic substitutes, as would be required for the brand to constitute its own market.  *Coronavirus Rep.*, 85 F.4th at 955-56.

The weight of authority, in the Ninth Circuit and elsewhere, has rejected the notion of a product market artificially drawn around a single brand.  The exception when courts have entertained the idea of a single-brand market is in the limited world of derivative aftermarkets, "where demand for a good is entirely dependent on the prior purchase of a durable good in a foremarket," *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 976 (9th Cir. 2023) (emphasis omitted), *cert. denied*, 144 S. Ct. 682 (2024), and a manufacturer has concealed its aftermarket restrictions when consumers make their foremarket purchases.  A prominent example from the case law is Kodak's policies locking customers into Kodak-compatible copier parts, which arise only "once customers have purchased and are 'locked in'" to one brand's products and must purchase the brand's parts in order for the primary product to function.  *Psystar*, 586 F. Supp. 2d at 1197 (discussing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 459 (1992)); *see PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010) ("possibility" of single-brand market "limited to" aftermarket).  That rule has no application here, where Birkin and Kelly handbags are alleged to be the *primary* market and they have numerous economic substitutes.

Even if a single-brand market could theoretically exist outside the aftermarket context, however, Plaintiffs here have not pleaded sufficient facts to show that the Birkin and Kelly

---

[2] As the leading antitrust treatise explains, plaintiffs often unsuccessfully argue "that a price-quality class, a single brand, or even a single popular model within the defendant's product line constitutes a relevant market."  Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law:  An Analysis of Antitrust Principles and Their Application* ¶ 1736d1 (Aug. 2023, online).

1    handbags constitute their own market.  Plaintiffs rely on (1) the Birkin Bag's trademark (Compl.

2    ¶ 18); (2) Hermès' general reputation as a highly regarded fashion brand (*id.* ¶¶ 15-17); and

3    (3) the Birkin Bag's limited supply and high price (*id.* ¶¶ 21-25).  None comes close to

4    establishing a separate market.  As a matter of law, the existence of a *patent* is insufficient to

5    infer market power—so a trademark is certainly not enough to define an entire market.  *See*

6    *Illinois Tool*, 547 U.S. at 45-46.  Nor is consumers' high regard for Hermès or the Birkin and

7    Kelly handbags sufficient: even "intense" "brand loyalty" is not enough.  *Green Country*, 371

8    F.3d at 1282.  As then-Judge Stephen Breyer explained, "virtually every seller of a branded

9    product has *some* customers who especially prefer its product," but that does not alone show

10   "market power."  *Grappone, Inc. v. Subaru of New England, Inc.*, 858 F.2d 792, 797 (1st Cir.

11   1988).  Moreover, "[t]he consumers do not define the boundaries of the market; the products or

12   producers do."  *Coronavirus Rep. v. Apple Inc.*, No. 21-cv-05567, 2021 WL 5936910, at *11

13   (N.D. Cal. Nov. 30, 2021) (citation omitted).  Any suggestion that the Birkin and Kelly handbags

14   have *no* economic substitutes is patently wrong.  And Plaintiffs' vague references to the Birkin

15   Bag's price and supply, which are characteristic of a wide range of competing luxury products,

16   are not enough to establish a single-brand market either.  *See Rebel Oil*, 51 F.3d at 1433.

17           Plaintiffs' Complaint is utterly lacking in the kind of allegations that would be required to

18   make this the exceptional case of a single-brand market.  Like the plaintiffs in *Coronavirus*

19   *Reporter*, who raised similarly deficient allegations of a single-brand market, Plaintiffs here do

20   not "attempt to demonstrate the cross-elasticity" of demand for the Birkin Bag.  85 F.4th at 956.

21   And like the plaintiffs in *Coronavirus Reporter*, their complaint "fails to draw the market's

22   boundaries to 'encompass the product at issue as well as all economic substitutes for the

23   product.'"  *Id.* (citation omitted).  Indeed, Plaintiffs nowhere explain why the tying product

24   market includes the Birkin and Kelly handbags—but excludes *all* other handbags (including

25   other bags made by Hermès, like the Constance Bag).  *See* Compl. ¶ 35.  Because "the alleged

26   markets lack sufficient clarity to state an antitrust claim plausibly," Plaintiffs' Sherman Act

27   claim should be dismissed.  *Coronavirus Rep.*, 85 F.4th at 956.

28

1          **2.      The Complaint Does Not Define A Viable Tied Product Market In**
2                    **Which Competitive Effects Can Be Assessed**

3          Plaintiffs' Sherman Act claim fails for the independent reason that Plaintiffs do not

4  define a viable *tied* product market.  If anything, the deficiencies in Plaintiffs' allegations

5  regarding the tied market are even more glaring than for the tying product market.

6          Just as Plaintiffs must properly define the tying product market to state a tying claim,

7  they must also properly define the *tied* product market.  *See Packaging Sys.*, 268 F. Supp. 3d at

8  1083-84 (complaint must define "relevant market for both the tying product and the tied product"

9  and finding that "ambiguities make Plaintiff's market definition unsustainable on its face");

10 *Sidibe*, 4 F. Supp. 3d at 1176 (similar).  This is a critical step, because the harm that tying law

11 seeks to prevent is foreclosure of competition *in the tied market*.  *See supra* at 4-5.  Absent a

12 proper definition of the tied market, courts cannot determine whether the plaintiff has properly

13 shown that the tying arrangement affects a "'not insubstantial volume of commerce in the tied

14 product market.'"  *Rick-Mik Enters.*, 532 F.3d at 971 (citation omitted); *Sidibe*, 4 F. Supp. 3d at

15 1178 (Plaintiff must allege "facts showing a significant negative impact on competition in the

16 tied product market." (citation omitted)).

17         Here, Plaintiffs' definition of the tied product market is facially unsustainable.  Their

18 Complaint appears to allege that the tied product market is "Ancillary Products," which they

19 define to include "any products sold at Hermès branded retail boutiques except for any Birkin,

20 Kelly, or Constance branded handbag."  Compl. ¶ 35.  To start, this market definition does not

21 appear to reach beyond Hermès—even though Hermès faces clear competition from different

22 sellers on the wide range of products it sells.  Courts commonly use "'judicial experience and

23 common sense'" to reject such "artificial" market definitions that are "contorted to meet [the

24 plaintiff's] litigation needs."  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018)

25 (citation omitted).  Plaintiffs' Hermès-only market of accessories and other luxury goods defies

26 common (not to mention economic) sense, and is plainly unsustainable.

27         But even if Plaintiffs intended to define the market to include not just Hermès products,

28 but some undefined class of similar products sold by other luxury brands, their argument is just

1    as flawed because it seeks to combine multiple distinct products into one single market.

2    Plaintiffs' market definition includes everything from "home furnishings" to "jewelry" to

3    "apparel" to "fashion accessories" and more besides.  Compl. ¶ 15.  As explained above, "'[t]he

4    principle most fundamental to product market definition is cross-elasticity of demand for certain

5    products or services'"—meaning, "the extent to which consumers view 'two products [as]

6    be[ing] reasonably interchangeable or substitutable' for one another."  *Coronavirus Rep.*, 85

7    F.4th at 955 (first alteration added) (citation omitted).  Plaintiffs offer no explanation for how

8    goods as diverse as home furnishings and jewelry could be reasonable substitutes for each

9    other—and no such explanation would be economically plausible.

10        Treating all Hermès products (apart from the Birkin/Kelly/Constance Bags) as part of one

11   single market makes no sense.  Hermès faces different competitors depending on the kind of

12   product; for handbags, it may face one kind of competitive pressure, while the pressure it faces

13   with respect to home furnishings is completely different.  Yet Plaintiffs' theory would mean that

14   Cartier's competition with Hermès for jewelry shoppers somehow would make it a competitor

15   for shoes too.  Customers in turn would be expected consider jewelry interchangeable with

16   shoes.  Plaintiffs' contrived effort to create a single market from of an array of obviously distinct

17   products fails as a matter of law—and fundamental economics.

18        **3.**    **Plaintiffs Do Not Plead Facts Showing Antitrust Standing**

19        Even if Plaintiffs could otherwise satisfy the elements of tying claim, their Sherman Act

20   claim would fail for lack of antitrust standing.  To plead an actionable claim under the Sherman

21   Act, Plaintiffs must allege sufficient facts to establish that they have suffered "antitrust injury."

22   *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334-35 (1990); *Somers v. Apple, Inc.*,

23   729 F.3d 953, 963-64 & n.5 (9th Cir. 2013) (noting that "antitrust injury" is also an element of

24   Section 2 monopolization claim).  This demands allegations that the defendant's unlawful

25   conduct caused "an injury of the type the antitrust laws were intended to prevent and that flows

26   from that which makes defendants' acts unlawful."  *Somers*, 729 F.3d at 963 (citation omitted).

27   Plaintiffs must therefore allege more than that they have suffered harm, but "specific facts" of

28   *harm to competition* in the market.  *Id.* at 965, 966; *see Host Int'l, Inc. v. MarketPlace, PHL,*

*LLC*, 32 F.4th 242, 249-50 (3d Cir. 2022) (requiring that "challenged conduct affected the prices, quantity or quality of goods or services, not just [the plaintiff's] own welfare" (alteration in original) (citation omitted)).  Plaintiffs' Complaint fails this requirement too.

For a tying claim, antitrust injury means harm to "competition in the market for the tied product"—namely, the foreclosure or threatened foreclosure of rivals, to the detriment of consumers.  *Rick-Mik Enters.*, 532 F.3d at 971; *see Blough*, 574 F.3d at 1089 (asking whether plaintiff had shown sufficient "foreclos[ure] to competitors by the tie" (citation omitted)).  Here, Plaintiffs' Complaint is utterly devoid of factual allegations regarding the potential or actual threat of foreclosure of rivals in the tied market.

Rather than allege harm to the competitive process in the tied market, Plaintiffs assert that the alleged tie has (1) "effectively increase[d] the price of Birkin handbags" for Plaintiffs and (2) hindered Plaintiffs' ability to "choose among" luxury items "independently from their decision to purchase Birkin handbags."  Compl. ¶¶ 26, 50.  Neither is sufficient under controlling case law.  As to the first, the Supreme Court has explained that "'merely enhancing the price of the tying product' . . . does not" cause harm to competition.  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012) (quoting *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 14 (1984)).  This makes sense because, again, the relevant injury in a tying arrangement is not any increase in price in the tying product (over which the defendant is alleged to have market power regardless of the tie), but "reduced competition in the market for *the tied product*."  *Rick-Mik Enters.*, 532 F.3d at 971-72 (emphasis added).  And as to the second, the Ninth Circuit has held that a tie's "effect of reducing consumers' choices" for which products to purchase "does not sufficiently allege an injury to competition" because it is "fully consistent with a free, competitive market."  *Brantley*, 675 F.3d at 1202; *see also Blough*, 574 F.3d at 1090 (requiring "foreclosure of competition" in tied market (citation omitted)).

At bottom, antitrust law requires Plaintiffs to allege not just harm to themselves, but harm to the competitive process—and they utterly fail to do so.  This deficiency is understandable, because there is no plausible case that Hermès has harmed competition.  The ancillary products that Plaintiffs claim they may be forced to buy in order to obtain a Birkin Bag are independently

1   desirable items.  Accordingly, even on Plaintiffs' version of the facts, there is no harm to

2   competition resulting from the alleged tie.

3           **4.      Plaintiffs Do Not Plead Willful Maintenance Or Acquisition Of**
                      **Monopoly Power As Required By Section 2**
4

5           Plaintiffs' Sherman Act claim suffers from an additional flaw: it fails to allege the willful

6   maintenance or acquisition of monopoly power.  A plaintiff alleging tying under Section 2 must

7   also plead facts establishing (1) "monopoly power in the relevant market" and (2) "the willful

8   acquisition or maintenance of that power as distinguished from growth or development as a

9   consequence of a superior product, business acumen, or historic accident." *Epic Games*, 67

10  F.4th at 998.  Plaintiffs fail to define a relevant market, as explained above. *See supra* at 6-10.

11  They also fail to allege that Hermès has monopoly power in any well-defined market.  And they

12  also flunk the second prong because they plead *no* facts showing that Hermès willfully acquired

13  or maintained a monopoly through anticompetitive conduct.

14          To be sure, Plaintiffs allege—incorrectly—that Hermès has a monopoly in the (contrived)

15  market for Birkin Bags.  But under the allegations in Plaintiffs' Complaint, that supposed

16  monopoly resulted from the combination of: (a) the success of Hermès' brand; (b) the reputation

17  associated with the Birkin Bag as a result of "[t]he intensive labor and craftmanship and high-

18  quality leathers" required; and (c) Hermès' trademarks for the Birkin and Kelly handbags.

19  Compl. ¶¶ 20-22.  None of this conduct is remotely anticompetitive, and Plaintiffs do not allege

20  otherwise. *Coronavirus Rep.*, 85 F.4th at 954-55; *see* Phillip E. Areeda & Herbert Hovenkamp,

21  *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 781 (Aug. 2023,

22  online) ("[P]roduct superiority is one of the objectives of competition and cannot be wrongful,

23  even for a monopolist.").  Absent allegations of unlawful monopolization in the tying market for

24  Birkin Bags, Plaintiffs must allege that Hermès willfully acquired or maintained monopoly

25  power in the tied market for so-called Ancillary Products.  But their Complaint says absolutely

26  nothing on that subject either.  Plaintiffs' failure to properly allege the necessary elements of a

27  Section 2 claim is another reason why this case should be dismissed.

28

**B.     Plaintiffs' State Law Claims Also Fail**

**1.     Plaintiffs Do Not State A Claim Under The Cartwright Act**

Plaintiffs also misunderstand the Cartwright Act.  The standard for unlawful tying under the Cartwright Act mirrors the elements of a Sherman Act claim, requiring "(1) a tying agreement, arrangement or condition existed whereby the sale of the tying product was linked to the sale of the tied product or service; (2) the party had sufficient economic power in the tying market to coerce the purchase of the tied product; (3) a substantial amount of sale was affected in the tied product; and (4) the complaining party sustained pecuniary loss as a consequence of the unlawful act." *Morrison v. Viacom, Inc.*, 78 Cal. Rptr. 2d 133, 137 (Ct. App. 1998)[3]; *see Packaging Sys.*, 268 F. Supp. 3d at 1083 (Sherman Act analysis generally "mirror[s] that of the Cartwright Act").  Consistent with federal precedent under the Sherman Act, courts routinely dismiss Cartwright Act claims that fail to properly allege the relevant markets underlying the tying claim.  *See, e.g.*, *Psystar*, 586 F. Supp. 2d at 1203-04 (rejecting Cartwright Act claim for failure to "plead relevant antitrust markets"); *Packaging Sys.*, 268 F. Supp. 3d at 1083 (same).  Because Plaintiffs have failed to properly define the markets, this Court should dismiss their Cartwright Act claims.

Plaintiffs' Cartwright Act claims also fail because they rest solely on Hermès' conduct, and the Cartwright Act "does not address unilateral conduct." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986); *Beverage v. Apple, Inc.*, --- Cal. Rptr. 3d ----, 2024 WL 1794410, at *5 (Ct. App. Apr. 25, 2024) ("A violation of the Cartwright Act" requires concerted action and "'a corporation cannot conspire with itself or its agents for purposes of the antitrust laws.'" (citation omitted)); *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 138 Cal. Rptr. 3d 620, 627 (Ct. App. 2012) ("The Cartwright Act bans combinations, but single firm monopolization is not cognizable under the Cartwright Act.").  Plaintiffs cannot challenge Hermès' unilateral conduct under the Cartwright Act.  *See Psystar*, 586 F. Supp. 2d at 1203-04 (dismissing

---

[3] California Business and Professional Code section 16727 requires either of elements (2) or (3), in addition to (1) and (4).  *Morrison*, 78 Cal. Rptr. 2d at 137.

1  Cartwright Act tying claim that "fails to plead relevant antitrust markets" and "alleges only

2  unilateral anticompetitive conduct").

3          **2.**     **Plaintiffs Do Not State A Claim Under The UCL**

4        Plaintiffs allege that the same conduct that violates the Sherman Act and the Cartwright

5  Act violates the "unlawful" prong of the UCL.  *See* Cal. Bus. & Prof. Code § 17200.  This prong

6  of the UCL "borrows" violations of other laws, treating them as unlawful practices separately

7  actionable under the UCL.  *Farmers Ins. Exch. v. Superior Court*, 826 P.2d 730, 734 (Cal. 1992).

8  Because the Sherman and Cartwright Act claims underlying Plaintiffs' UCL claim fail, their

9  UCL claim must be dismissed too.

10  **IV.**     **CONCLUSION**

11        Plaintiffs' far-fetched and implausible Complaint should be dismissed in its entirety.

12

13  Dated:  May 9, 2024                      Respectfully submitted,

14                                  LATHAM & WATKINS LLP

15

16                                By     */s/ Christopher S. Yates*
                                   Christopher S. Yates

17                                     Belinda S Lee
                                   Ashley M. Bauer

18                                     505 Montgomery Street, Suite 2000
                                   San Francisco, CA  94111-6538

19                                     Telephone:  415.391.0600
                                   Facsimile:  415.395.8095

20                                     Email:  Chris.Yates@lw.com
                                                  Belinda.Lee@lw.com

21                                                    Ashley.Bauer@lw.com

22                                     Peter E. Davis
                                   555 Eleventh Street, NW, Suite 1000

23                                     Washington, DC  20004-1304
                                   Telephone:  202.637.2200

24                                     Facsimile:  202.637.2201
                                   Email:  Peter.Davis@lw.com

25                                     Attorneys for Defendants
                                   *Hermès of Paris, Inc. and*

26                                     *Hermès International*

27

28