Joshua H. Haffner, SBN 188652
  jhh@haffnerlawyers.com
Alfredo Torrijos, SBN 222458
  at@haffnerlawyers.com
Vahan Mikayelyan, SBN 337023
  vh@haffnerlawyers.com
HAFFNER LAW PC
15260 Ventura Blvd., Suite 1520
Sherman Oaks, California 91403
Tel: (213) 514-5681 / Fax: (213) 514-5682

Shaun C. Setareh, SBN 204514
  shaun@setarehlaw.com
Thomas A. Segal, SBN 222791
  thomas@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Blvd., Suite 430
Beverly Hills, California 90212
Tel: (310) 888-7771 / Fax: (310) 888-0109

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA CAVALLERI, an individual; MARK GLINOGA, an individual; MENGYAO YANG, an individual; on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>HERMÈS INTERNATIONAL, a French corporation and HERMÈS OF PARIS, INC., a New York corporation, and DOES 1 through 10; inclusive,<br><br>        Defendants. | Case No.  3:24-CV-01707-JD<br><br>HON. JAMES DONATO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>Hearing</u><br>Date: September 19, 2024<br>Time: 10:00 a.m.<br>Dept: 11 – 19th Floor |

1

2

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................1

II.  PERTINENT FACTUAL ALLEGATIONS – DEFENDANTS' TYING SCHEME. ................1

III.  LEGAL ARGUMENT.............................................................................................2

    A.  Plaintiffs Allege Unlawful Tying Under The Sherman Act. ...........................................2

        1.  Plaintiffs Have Adequately Alleged A Per Se Tying Claim................................2

        2.  Plaintiffs Also Plead A Tying Claim Under The Rule Of Reason. ....................5

        3.  Plaintiffs' Allegations Of The Tied Product Market Are Adequate. ...................11

        4.  Plaintiffs Have Adequately Pled Antitrust Standing. ...........................................12

    B.  Plaintiffs Adequately Allege A Tying Claim Under The Cartwright Act. ......................13

    C.  Plaintiffs Adequately Allege A UCL Claim. ................................................................14

    D.  Plaintiffs Request Leave To Amend To Add A Section 1 Claim. ...................................15

IV.  CONCLUSION....................................................................................................15

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT (CASE NO. 3:24-CV-01707-JD)**

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs Abbott Laboratories v. Superior Court*
9 Cal.5th 642 (2020) .......................................................................................................... 14

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*
2019 WL 633008 (N.D. Cal. Feb. 14, 2019) ........................................................................ 8

*Bogan v. Hodgkins*
166 F.3d 509 (2nd Cir. 1999) ............................................................................................... 9

*Brantley v. NBC Universal, Inc.*
675 F.3d 1192 (9th Cir. 2012) ........................................................................................... 12

*Bushie v. Stenocord Corp.*
460 F.2d 116 (9th Cir. 1972) ............................................................................................. 15

*Cargill Inc. v. Budine*
2007 WL 4207908 (E.D. Cal. Nov. 27, 2007) .................................................................. 15

*Chang v. Chen*
80 F.3d 1293 (9th Cir. 1996) ............................................................................................. 15

*Copperweld Corp. v. Independence Tube Corp.*
467 U.S. 752 (1984) ............................................................................................................. 5

*County of Tuolumne v. Sonora County Hospital*
236 F.3d 1148 (9th Cir. 2001) ..................................................................................... 2, 3, 4

*CTUnify, Inc. v. Nortel Networks, Inc.*
115 F.App'x 831 (6th Cir. 2004) .................................................................................... 4, 10

*Datel Holdings Ltd. v. Microsoft Corp.*
712 F.Supp.2d 974 (N.D. Cal. 2010) ................................................................................... 3

*Eastman-Kodak Co. v. Image Technical Services, Inc.*
504 U.S. 451 (1992) ............................................................................................................. 7

*Epic Games v. Apple, Inc.*
67 F.4th 946 (9th Cir. 2023) ....................................................................................... passim

*Fortner Enterprises, Inc. v. U.S. Steel Corp.*
394 U.S. 495 (1969) ......................................................................................................... 3, 7

*Hogan v. Amazon.com, Inc.*
2024 WL 1091671 (W.D. Wash. Mar. 13, 2024) ............................................................... 3

*Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*
627 F.2d 919 (9th Cir. 1980) ............................................................................................... 8

*Illinois Tool Works, Inc. v. Indep. Ink, Inc.*
547 U.S. 28 (2006) ................................................................................................... 4, 7, 8, 10

– ii –

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT (CASE NO. 3:24-CV-01707-JD)**

*In re Air Passenger Computer Rsrvs. Sys. Antitrust Litig.*
694 F.Supp. 1443 (C.D. Cal. 1988) ........................................................................ 3

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*
466 U.S. 2 (1984) ................................................................................... passim

*Klein v. Facebook, Inc.*
580 F.Supp.3d 743 (N.D. Cal. 2022) ..................................................................... 9

*Korea Kumho Petrochemical v. Flexsys Am. LP*
2008 WL 686834 (N.D. Cal. Mar. 11, 2008) ............................................................ 9

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*
551 U.S. 877 (2007) ....................................................................................... 5

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*
924 F.2d 1484 (9th Cir. 1991) .......................................................................... 12

*Morrison v. Viacom, Inc.*
66 Cal.App.4th 534 (1998) ........................................................................... 13, 14

*Multistate Legal Stud., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*
63 F.3d 1540 (10th Cir. 1995) .......................................................................... 15

*Newcal Industries, Inc. v. Ikon Office Solution*
513 F.3d 1038 (9th Cir. 2008) ......................................................................... 7, 9

*NL Industries v. Kaplan*
792 F.2d 896 (9th Cir. 1986) ........................................................................... 11

*Oahu Gas Serv., Inc. v. Pac. Res., Inc.*
838 F.2d 360 (9th Cir. 1988) ............................................................................ 7

*Ohio v. American Express Co.*
585 U.S. 529 (2018) .................................................................................. 5, 6, 7

*Paladin Assocs., Inc. v. Montana Power Co.*
328 F.3d 1145 (9th Cir. 2003) .......................................................................... 11

*Phonetele, Inc. v. Am. Tel. & Tel. Co.*
664 F.2d 716 (9th Cir. 1981) ............................................................................. 5

*Progressive W. Ins. Co. v. Superior Court*
135 Cal.App.4th 263 (2005) ............................................................................ 14

*Rebel Oil Co. v. Atl. Richfield Co.*
51 F.3d 1421 (9th Cir. 1995) ............................................................................. 5

*Rickards v. Canine Eye Registration Found., Inc.*
704 F.2d 1449 (9th Cir. 1983) ........................................................................... 4

*Safeway Inc. v. Abbott Laboratories*
761 F.Supp.2d 874 (N.D. Cal. 2011) ................................................................... 15

– iii –

*Sidibe v. Sutter Health*
 103 F.4th 675 (9th Cir. 2024) ............................................................................ 13

*Suburban Mobile Homes, Inc. v. Amfac Communities, Inc.*
 101 Cal.App.3d 532 (1980) ............................................................................. 14

*Systemcare, Inc. v. Wang Laboratories Corp.*
 117 F.3d 1137 (10th Cir. 1997) ....................................................................... 15

*Teradata Corp. v. SAP SE*
 570 F.Supp.3d 810 (N.D. Cal. 2021) ............................................................... 11

*Truck-Rail Handling, Inc. Burlington N. & Sante Fe Ry. Co.*
 244 F.App'x 130 (9th Cir. 2007) ...................................................................... 12


**<u>Statutes</u>**

Cal. Bus. & Prof. Code, § 16720 ............................................................................. 13

Cal. Bus. & Prof. Code, § 16727 ............................................................................. 13

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT (CASE NO. 3:24-CV-01707-JD)**

## I.     INTRODUCTION

This action arises out of Defendant Hermes International and Hermes of Paris, Inc.'s ("Defendants" or "Hermes") unlawful tying scheme.  Defendants require consumers to purchase accessory items, shoes, scarves, belts, clothing, jewelry, and home goods (the "tied" items) from them in order to obtain their Birkin bag (the "tying" product).  This is a classic, anticompetitive tying scheme, with the seller having an economic interest in *both* the tying and tied products.

Plaintiffs also allege Defendants manipulate pricing and output of the Birkin bag and incentivize their sales agents through a commission structure designed to implement the tying scheme.  Plaintiffs allege that Defendants exploit their unique product and market power to obtain supercompetitive profits.

Defendants deny that they engages in this tying scheme. Dckt. 38, p.7 of 22, lines 7-8 ("Hermes does not require a customer to purchase any other product before purchasing a Birkin or Kelly handbag"). Contrary to this denial, Plaintiffs allegations will bear out to be true.  More importantly, Plaintiffs' allegation are assumed true at the pleading stage.

Plaintiffs have properly alleged a classic tying scheme that has harmed competition and consumers, and violates the Sherman and Cartwright Acts and California's Unfair Competition Law (the "UCL"). Plaintiffs respectfully request that Defendants' motion be denied.

## II.     PERTINENT FACTUAL ALLEGATIONS – DEFENDANTS' TYING SCHEME.

The Birkin bag is an "exclusive Hermès design," manufactured by Defendants and" handcrafted from the finest leather by experienced artisans in France."  FAC, ¶¶ 21,22.  Defendants engage in "limited production" of the Birkin. FAC, ¶26. The Birkin is defined by "unique brand identity and exclusivity." FAC, ¶27.  "The unique desirability, incredible demand and low supply of Birkin handbags gives Defendants incredible market power." FAC, ¶36.

"Defendants implemented a scheme to exploit this market power by requiring consumers to purchase other, ancillary products from Defendants before they will be given an opportunity to purchase a Birkin handbag." FAC, ¶36.  "The tied products include designer shoes, scarves, belts, clothing, jewelry, and home goods sold by Hermès." FAC, ¶36.

Defendants only sell Birkin bags directly to consumers in Hermès-owned retail stores, not on websites. FAC, ¶¶20, 37.  However, "consumers cannot simply walk into a Hermès retail store" to get a

– 1 –

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT (CASE NO. 3:24-CV-01707-JD)**

1  Birkin. FAC, ¶37.  Defendants direct their Sales Associates "to only offer Birkin handbags to consumers

2  who have established a sufficient 'purchase history' or 'purchase profile' with Defendants of

3  Defendants' ancillary products . . ." FAC, ¶38.

4      "Defendants have designed the compensation structure of their Sales Associates to ensure that they

5  follow Defendants' [tying] policy." FAC, ¶39.  Sales Associates are paid "paid 3% [commission] on

6  ancillary products such as shoes, scarves, belts, jewelry and home goods; they are paid a 1.5%

7  commission on non-Birkin handbags, and they receive no commission whatsoever on the sale of Birkin

8  handbags." FAC, ¶39.  Sales Associates "are instructed by Defendants to use Birkin handbags as a way

9  to coerce consumers to purchase ancillary products . . ." FAC, ¶39.

10     Defendants "control prices and engage in the anti-competitive conduct . . . to the detriment of

11  consumers." FAC, ¶26.  Defendants artificially suppress "the nominal retail price of Birkin handbags."

12  FAC, ¶33.  However, "the true price of the Birkin bag . . . includes the cost of the[] coerced Ancillary

13  Product purchases." FAC, ¶33.  "The artificial suppression of the nominal retail price of Birkin

14  handbags is evidenced by their robust resale value, which consistently and significantly exceeds the

15  original purchase price." FAC, ¶34. This scheme "forces consumers to purchase substantial amounts of

16  Hermès Ancillary Products to 'qualify' for the mere opportunity to buy a Birkin." FAC, ¶33.

17  "Defendants . . . engage in a . . . manipulative pricing scheme, artificially inflating the true cost of [the

18  Birkin] and reaping supracompetitive profits." FAC, ¶31.

19  **III.    LEGAL ARGUMENT**

20      **A.    Plaintiffs Allege Unlawful Tying Under The Sherman Act.**

21      "Tying can be either a *per se* violation or a violation under the rule of reason." *Cty. of Tuolumne v.*

22  *Sonora Cty. Hosp.*, 236 F.3d 1148, 1157 (9th Cir. 2001). Plaintiffs' claim survives under either standard.

23          **1.    Plaintiffs Have Adequately Alleged A *Per Se* Tying Claim.**

24      Plaintiffs have alleged the necessary elements for a *per se* tying claim. "To establish that a tying

25  arrangement is illegal *per se,* plaintiffs must prove three elements: (1) a tie between two separate

26  products or services sold in relevant markets; (2) sufficient economic power in the tying product market

27  to affect the tied market; and (3) an effect on a not-insubstantial volume of commerce in the tied product

28  market." *Cty. of Tuolumne*, *supra*, 236 F.3d at 1157-58.

1 Defendants argue that Plaintiffs have changed their market definition from their original complaint.

2 Dckt. 38, p.10, lines 8-10.  That is incorrect.  Plaintiffs plead that Defendants have market power in the

3 relevant luxury bag market, and alternatively plead a "submarket." FAC, ¶26.  The uniqueness of the

4 Birkin bag can create a submarket, a concept related to single-market brands. *In re Air Passenger*

5 *Computer Rsrvs. Sys. Antitrust Litig.*, 694 F.Supp. 1443, 1457 (C.D. Cal. 1988).  Defendants are also

6 wrong when they argue that Plaintiffs have failed to allege a well-defined market. Dkt.38, p.15, lines 21-

7 22.  At the pleading stage, "it is not necessary to rigorously define a market for the product." *Datel*

8 *Holdings Ltd. v. Microsoft Corp.*, 712 F.Supp.2d 974, 998 (N.D. Cal. 2010) (citing *Fortner Enterprises,*

9 *Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 501 (1969)).  In any event, Plaintiffs do adequately define the

10 luxury bag market. FAC, ¶¶27, 30-32.

11 Defendants cite to *Epic Games v. Apple, Inc.*, 67 F.4th 946, 997 (9th Cir. 2023), which declined to

12 apply *per se* tying rules in the context of "software that serves as a platform for third-party applications."

13 *Id.* at 997.  *Epic Games* is distinguishable because it involved bundling in the technology sector.  The

14 court explained "we do not have the level of confidence needed to universally condemn ties related to

15 app-transaction platforms that combine multiple functionalities." *Id*.  *Epic Games* has been recognized

16 as limited to the technology sector. *Hogan v. Amazon.com*, 2024 WL 1091671, at *4 (W.D. Wash. 2024)

17 ("[w]hile tying arrangements are often per se violations, in *Epic Games. . .*, the Ninth Circuit held that

18 '*per se* condemnation is inappropriate for ties 'involv[ing] software that serves as a platform for third-

19 party applications'").)  Unlike *Epic Games*, this case involves tying claims in traditional markets and has

20 additional elements, economic interest, uniqueness, forcing, that make *per se* treatment appropriate.

21 Defendants' motion solely challenges whether Plaintiffs properly allege economic power in a

22 relevant market and a not-insubstantial effect on commerce in the tied markets. Plaintiffs have properly

23 alleged these elements. FAC, ¶¶26-27, 30, 33, 36, 61.  Defendants, however, ignore several important

24 additional elements that demonstrate *per se* treatment is appropriately pled.

25 **Economic Interest**:  A critical factor in applying *per se* tying rules is whether Defendants are on

26 both ends of the tying and tied transaction, *i.e.*, "whether the defendant had an economic interest in the

27 tied product." *Cty. of Tuolumne*, *supra*, 236 F.3d at 1158 (9th Cir. 2001).  "In examining a tie-in claim,

28 this Court must consider whether the seller of the tying product . . . harbors an economic interest in the

– 3 –

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED CLASS ACTION COMPLAINT (CASE NO. 3:24-CV-01707-JD)**

1   tied product." *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1454 (9th Cir. 1983).

2   Where a seller transacts in both tying and tied products "the seller's intent is to engage in such

3   anticompetitive business practices." *CTUnify, Inc. v. Nortel Networks, Inc.*, 115 F.App'x 831, 834 (6th

4   Cir. 2004).  The Ninth Circuit refers to the "economic interest" element as a "fourth element" for *per se*

5   unlawful tying.  *Cty. of Tuolumne*, *supra*, 236 F.3d at 1158.  Here, Defendants are the sellers of *both* the

6   tying and tied products. FAC, ¶20, 37-38.  Thus, this case represents "the usual tying arrangement,

7   [where] it is not difficult to establish the economic interest element because the seller of the tying

8   product is also the seller of the tied product." *CTUnify, supra*, 115 F. App'x at 834-35.

9       **Unique Product**:  The strict *per se* rule against tying "is appropriate in . . . situations in which the

10  existence of market power is probable. . .  ***[W]hen the seller offers a unique product that competitors***

11  ***are not able to offer*** . . ." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 17 (1984), *abrogated*

12  *on other grounds by Illinois Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006) (emphasis added).

13  Here, the Birkin bag has "unique brand identity, craftsmanship, and exclusivity" (FAC, ¶32) and

14  "unique desirability, incredible demand and low supply." FAC, ¶36.  There are only "imperfect

15  substitutes" for the Birkin bag. *Id*. at ¶27.  The Birkin is highly desirable and "tirelessly wanted." *Id*. at

16  ¶25.  The allegation that Defendants are exploiting a unique product also supports the *per se* tying claim.

17      **Probability Of Forcing**:  Application of *per se* tying illegality rules is proper where "the existence

18  of forcing is probable." *Jefferson Parish*, *supra*, 466 U.S. at 15-16.  *Jefferson Parish* explained that "the

19  essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over

20  the tying product **to force** the buyer into the purchase of a tied product. . ." *Id.* at 12 (emphasis added).

21  *See also Illinois Tool Works*, *supra*, 547 U.S. at 37 (citing with approval *Jefferson Parish*'s statement

22  that *per se* treatment is "appropriate if the existence of forcing is probable").  Here, Plaintiffs allege that

23  "consumers can only purchase Birkin handbags from Defendants by going to a Hermès retail store,"

24  (FAC, ¶37), where Defendants direct their sales associates "to only offer Birkin handbags to consumers

25  who have established a sufficient 'purchase history' or 'purchase profile'" for Defendants' tied products.

26  *Id*. at ¶38.  "[O]nly" if sufficient purchases are made of tied products "will the consumer be offered the

27  opportunity to purchase a Birkin handbag." *Id.*  Defendants are "requiring consumers to purchase other,

28  ancillary products from Defendants before they will be given an opportunity to purchase a Birkin

– 4 –

1    handbag." *Id.* at ¶36.  These allegations plead forcing for a *per se* tying claim.

2                **2.**      **Plaintiffs Also Plead A Tying Claim Under The Rule Of Reason.**

3    Plaintiffs' tying claim also withstands Defendants' motion to dismiss under rule of reason analysis.

4    Conduct falling short of the requirements for the application of the *per se* rule may still constitute a

5    violation under the rule of reason. *Phonetele v. Am. Tel. & Tel. Co.*, 664 F.2d 716, 738 (9th Cir. 1981).

6    Under the rule of reason, courts assess a restraint's actual effect on competition through a fact-specific

7    examination of market power and structure. *Ohio v. Am. Express*, 585 U.S. 529, 541 (2018) (citing

8    *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)).  The goal is to distinguish

9    harmful, anticompetitive restraints from those that stimulate competition and benefit consumers. *Ohio v.*

10   *Am. Express*, at 541 (*citing Leegin Creative Leather Products v. PSKS,* 551 U.S. 877, 886 (2007)).  A

11   plaintiff may allege an anticompetitive effect directly or indirectly. *Id*.

12               **a) Plaintiffs Allege Direct Evidence Of Anticompetitive Tying.**

13   "[E]vidence of ***restricted output and supracompetitive prices*** … is direct proof of the injury to

14   competition which a competitor with market power may inflict, and thus, of the actual exercise of

15   market power." *Rebel Oil Co. v. Atl. Richfield*, 51 F.3d 1421, 1434 (9th Cir. 1995) (emphasis added).

16   Plaintiffs allege that Defendants, in connection with their tying scheme, have reduced output for the

17   Birkin bag. FAC, ¶26 (Defendants engage in "limited production" of the Birkin bag); and FAC, ¶36

18   ("low supply of Birkin handbags").  Plaintiffs also allege that Defendants have used their market power

19   to engage in "a deceptive and manipulative pricing scheme, artificially inflating the true cost of their

20   Birkin handbags and reaping supracompetitive profits." FAC, ¶32.  Defendants argue that Plaintiffs'

21   allegations that Defendants sell Birkin bags at 1.5 to 5 times "below the resale price" is "the opposite of

22   supracompetitive pricing." Dckt. 38, p.14 at line 27 to p.15 at line 1.  But the true cost of a Birkin bag is

23   ***not*** the nominal retail price of the bags because consumers cannot simply walk into a Hermès store and

24   purchase a Birkin bag at its nominal retail price. FAC, ¶33.  Instead, to have the opportunity to purchase

25   a Birkin bag, consumers ***must*** first purchase a sufficient dollar amount of Hermès Ancillary Products. *Id.*

26   at ¶¶36, 38.  In this way, Defendants inflate "the true cost of their Birkin handbags" and reap

27   supracompetitive profits. FAC, ¶33; *see also id.* at ¶32 (Defendants "artificially inflate the true prices of

28   their handbags (as opposed to the nominal, retail price of the Birkin bags)").

Consumers of Birkin bags are less price-sensitive than consumers of ordinary goods – in other words, Birkin bags have low price elasticity. FAC, ¶31.  Birkin bags have limited direct substitutes. FAC, ¶27, 32.  Selling a product subject to low price elasticity and with limited direct substitutes enables Defendants "to maintain supracompetitive prices and engage in unlawful restraints of trade, including the illegal tying arrangements alleged [in the complaint]." FAC, ¶32.  Yet, as demonstrated by their resale price, Birkin bags are sold by Defendants at nominal retail prices that are 1.5 to 5 times below what Defendants could charge. FAC, ¶35.  This raises the question: why don't Defendants charge a higher retail price for Birkin bags?  While Defendants seeks to obfuscate the issue, the answer is clear: Defendants make *greater* supracompetitive profits with their pricing scheme.  Not only does Defendants' predatory pricing practices obscure from consumers the true prices of Birkin bags (enabling price discrimination), it also generates "additional revenue for Defendants from consumers who never 'qualify' and are left with Hermès Ancillary Products that they never would have purchased but for their desire to acquire a Birkin bag." FAC, ¶ 33.  Defendants' ability to implement this pricing scheme is direct proof of Defendants' market power. *Ohio v. Am. Express*, *supra*, 585 U.S. at 542 (addressing "proof of actual detrimental effects [on competition], … such as *reduced output, increased prices*, or decreased quality in the relevant market.") (ellipsis in original; citations omitted; emphasis added).

Defendants' argument that "marking up [tied items] would be economically irrational," because Defendants do not "have market power over any of the Ancillary Products," Dckt.38, p.15, lines 25-28, n.3, misses the point.  Defendants are using their market power in the tying product, the Birkin bag, to force purchases in the tied market and charge supracompetitive prices. Similarly, Defendants' argument that Plaintiffs' allegation that Defendants' intentionally underprice the Birkin bag, and that the value of the Birkin bag on the resale market is higher, undercuts the antitrust claim because it "is the opposite of supracompetitive pricing," Dckt.38, p.14 line 27 to p.9 line 1, lacks merit.  Plaintiffs allege that the high resale value of the Birkin bag is evidence of Defendants' tying scheme. FAC, ¶33.  Defendants used this "leverage" to charge "supracompetitive" prices for the tied items, inflating the actual cost of the Birkin. FAC, ¶32.  This is a typical tying scheme of charging "noncompetitive price on the tied product…even though the tying product is sold . . . at nominal rates." *Moore*, *supra*, 550 F.2d at 1216.

**b) Plaintiffs Allege Indirect Evidence Of Anticompetitive Effect.**

To plead an unlawful tying claim under the rule of reason based on "[i]ndirect evidence involves 'proof of market power plus some evidence that the challenged restraint harms competition.'" *Ohio v. Am. Express*, *supra*, 585 U.S. at 542. "There is no requirement that these elements of an antitrust claim be pled with specificity." *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008). "[B]oth market definition and market power are essentially questions of fact." *Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 363 (9th Cir. 1988).

### i.    Plaintiffs' Properly Plead Defendants' Market Power.

Plaintiffs have pled sufficient market power in the relevant market. This is true for both *per se* and rule of reason purposes. Where the seller has "appreciable economic power" in the tying product, that is sufficient market power. *Eastman-Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 462 (1992)., *citing Fortner Enterprises, Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 503 (1969).

First, Plaintiffs have properly pled market power based on the Birkin's uniqueness and desirability. Market power exists "[w]hen the seller's share of the market is high, *or* when the seller offers a unique product that competitors are not able to offer." *Jefferson Parish*, *supra*, 466 U.S. at 17 (emphasis added). "Market power in the tying product may also be shown by product uniqueness or desirability." *Moore*, *supra*, 550 F.2d at 1215. "'[T]he crucial economic power may be inferred from the tying product's desirability to consumers or from uniqueness in its attributes.'" *Fortner Enterprises, supra*, 394 U.S. at 502-03. Plaintiffs have alleged that the Birkin bag is particularly unique and desirable, and there are no perfect substitutes. FAC, ¶27. Plaintiff alleges that "[t]he unique desirability, incredible demand and low supply of Birkin handbags gives Defendants incredible market power." FAC, ¶36. Plaintiff's allegations regarding the uniqueness of the Birkin bag adequately alleges sufficient market power.

Defendants' citation to *Illinois Tool, supra*, lacks merit. The uniqueness of a product can be the basis for market power after *Illinois Tool*, it just cannot be based solely on the existence of a patent. In *Illinois Tool*, the Court addressed "the presumption that a patent always gives the patentee significant market power." *Illinois Tool*, *supra*, 547 U.S. at 37. *Illinois Tool* noted that "[f]our years after our decision in *Jefferson Parish* repeated the patent-equals-market-power presumption, . . . Congress amended the Patent Code to eliminate that presumption in the patent misuse context." *Id.* at 41.

– 7 –

1    However, other than disapproving a finding of market power based solely on the existence of a patent,

2    *Illinois Tool* kept in place *per se* rules against tying, citing with approval to *Jefferson Parish*'s statement

3    that "*Per se* condemnation—condemnation without inquiry into actual market conditions—is only

4    appropriate if the existence of forcing is probable." *Id.* at 37 (citing *Jefferson Parish, supra*).   After

5    *Illinois Tool*, California courts continue to recognize the rule that a unique product (irrespective of the

6    existence of a patent) can serve as the basis for market power remains viable.  *See e.g.*, *Becton,*

7    *Dickinson & Co. v. Cytek Biosciences Inc.*, 2019 WL 633008,  *3 (N.D. Cal. 2019) ("When the seller's

8    share of the market is high, *or* when the seller offers a unique product that competitors are not able to

9    offer, the [Supreme Court] has held that the likelihood that market power exists . . . to make per se

10    condemnation appropriate") (emphasis added) (citing *Jefferson Parish, supra)*.)

11    Second, Defendant's charging noncompetitive prices on tied items is indirect evidence of market

12    power.  "Other possible indices of sufficient economic power include: . . . a noncompetitive higher price

13    charged for the tied product."  *Moore*, *supra*, 550 F.2d at 1216.  Here, Plaintiffs have alleged that

14    Defendants implemented a pricing scheme whereby the price charged for the Birkin was suppressed, but

15    when tied items are included, "supracompetitive" prices were charged, inflating the actual cost of the

16    Birkin bag. FAC, ¶¶32-33.  Thus, Plaintiffs are alleging that Defendants charged "noncompetitive price

17    on the tied product exists, even though the tying product is sold . .  at nominal rates." *Moore*, supra, 550

18    F.2d at 1216.  This alleges market power. *Jefferson Parish*, *supra*, 466 U.S. at n.46 ("market power

19    exists whenever prices can be raised above the levels that would be charged in a competitive market.").

20    Third, Plaintiffs have alleged that Defendants have a sufficient market share of the luxury handbag

21    market to wield market power.  Thus, "[w]hile precise figures for Hermès' market share in the luxury

22    handbag market are not publicly available, . . . it is clear that Hermès ***holds a substantial [and growing]***

23    ***share of the luxury handbag market in 2023***." FAC, ¶28; *see also id*. at ¶28.a. (Defendants' market

24    share had "significant growth").  "Blind reliance upon market share, divorced from commercial reality,

25    could give a misleading picture of a firm's actual ability to control prices or exclude competition." *Hunt-*

26    *Wesson Foods v. Ragu Foods*, 627 F.2d 919, 924 (9th Cir. 1980).  "Although Plaintiff need not

27    necessarily quantify Flexsys' market share with precision, Plaintiff must assert some *facts* in support of

28    its assertions of market power that suggest those assertions are plausible." *Korea Kumho Petrochemical*

– 8 –

*v. Flexsys Am.*, 2008 WL 686834, *9 (N.D. Cal. 2008).  Plaintiffs' allegations of market share

adequately allege market power at the pleading stage.  "[A] rough estimate of the defendant's market

share is sufficient at the pleading stage." *Klein v. Facebook*, 580 F.Supp.3d 743, 777 (N.D. Cal. 2022).

Fourth, Plaintiffs alternatively plead a relevant submarket for luxury Birkin bags, alleging

Defendants' power within it. FAC, ¶¶26, 36. Courts have delineated several "practical indicia" of an

economically distinct submarket including: public recognition of the submarket as a separate economic

entity, the product's peculiar characteristics, unique production facilities, distinct customers, distinct

prices, sensitivity to price changes, and specialized vendors.  *Newcal Industries, supra,* 513 F.3d at

1045.  "Defining a submarket is a fact-driven inquiry." *Bogan v. Hodgkins*, 166 F.3d 509, 516 (2nd Cir.

1999).  Plaintiffs have pled the elements necessary for a submarket of luxury Birkin bags, as follows.

-**Recognition of Birkin bag submarket as separate entity**: "The Birkin handbag is an icon of

fashion . . . tirelessly wanted . . . Few brands. . . attain that kind of saturation." FAC, ¶25; *see also id. at*

¶24 ("the Birkin handbag has become a household name and well known by the general public, both in

name and by its distinctive design"); and ¶36 (there is "unique desirability" for the Birkin bag).

-**Product's peculiar characteristics/uses**: Each Birkin is handmade in France, has a "distinctive

design," which is an "exclusive Hermès design," and is "a symbol of rarefied wealth."  *Id*. at ¶¶21-24.

-**Unique production**: "Each Birkin handbag is handcrafted from the finest leather by experienced

artisans in France. The manufacturing of a single Birkin handbag requires many hours of an artisan's

time. The intensive labor and craftmanship and high-quality leathers required make the Birkin handbag

difficult to produce and expensive." FAC, ¶22.

-**Distinct customers**: Customers are affluent, able to pay thousands to hundreds of thousands of

dollars to obtain "a symbol of rarefied wealth. FAC, ¶¶22-23."

-**Distinct prices**: The price of a Birkin handbag ranges from thousands of dollars to over one

hundred thousand dollars. FAC, ¶22.

-**Specialized vendors**: "Consumers can only purchase Birkin handbags from Defendants by

physically going to a Hermès retail store." FAC, ¶37.  At Hermès stores "the handbags will not be

displayed on the sales floor for the general public . . . [and] most consumers will never be shown a

Birkin handbag at Hermès retail store." *Id.*  "Hermès Sales Associates are tasked by Defendants with

– 9 –

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED CLASS ACTION COMPLAINT (CASE NO. 3:24-CV-01707-JD)**

1    selecting those consumers who are qualified to purchase Birkin handbags." FAC, ¶38.

2                        **ii.    Plaintiffs Have Pled Willful Anticompetitive Conduct.**

3         Defendants' argument that Plaintiffs failed to adequately plead willful anticompetitive conduct,

4    Dckt. 38, p.15, lines 16-21, is unmeritorious.  To allege willful anticompetitive conduct, Plaintiffs need

5    only allege "that the defendant acquired or maintained its monopoly through 'anticompetitive conduct."

6    *Epic Games, supra,* 67 F.4th at 998.

7         Plaintiffs allege that "Defendants willfully and intentionally engage in predatory, exclusionary, and

8    anticompetitive conduct with the design, purpose, and effect of unlawfully maintaining their market

9    and/or monopoly power." FAC, ¶58.  Plaintiffs further allege Defendants' commission system, which

10   incentivizes Defendants' sales associates to implement the tying scheme by paying commission for the

11   sale of tied items, but not the Birkin bag. FAC, ¶39.  Plaintiffs allege in detail the Birkin bag's unique

12   market power, and Defendants' pricing scheme to obtain supracompetitive prices. FAC, ¶¶32-33.

13   Plaintiffs have pled that Defendants willfully engaged in anticompetitive conduct.

14        Defendants' suggestion that its tying scheme involving the Birkin bag is "'procompetitive,'" Dckt.

15   38, p.7 of 22, lines 12-14, is contrary to Plaintiffs' allegations.  Plaintiffs explicitly allege that

16   Defendants' tying scheme was "anticompetitive." FAC, ¶58.  Indeed, where, as here, the seller has an

17   economic interest in the tying and tied product, "the tying agreement is aimed at suppressing

18   competition." *CTUnify*, *supra*, 115 F.Appx at 835.  Moreover, *Illinois Tool*, the case relied on by

19   Defendants, gave as examples of potentially procompetitive tying arrangements an "extension of a $2

20   million line of credit on condition that the borrower purchase prefabricated houses from the defendant,"

21   and other "promotional tie-ins." *Illinois Tool*, *supra*, 547 U.S. at 35-36.  Incidental financing and

22   promotional tie-ins, however, bear no resemblance to Defendants' illegal tie.  Here, prospective

23   purchasers of a Birkin bag were forced to buy entirely unrelated Ancillary Products from Defendants.

24   *Illinois Tool* acknowledged that tying was anticompetitive "if the existence of forcing is probable." *Id*. at

25   36 (citing *Jefferson Parish*).  Indeed, the Ninth Circuit recently held that allegations of tying separate

26   products (as in this case, but unlike the examples in *Illinois Tool*), filter out potentially procompetitive

27   tying arrangements.  "*Jefferson Parish*'s separate-products test filter out procompetitive bundles from

28   *per se* scrutiny in traditional markets." *Epic Games, supra,* 67 F.4th at 997-98.  Defendants' arguments

– 10 –

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT (CASE NO. 3:24-CV-01707-JD)**

1   regarding procompetitive conduct are meritless.

2           **3.**      **Plaintiffs' Allegations Of The Tied Product Market Are Adequate.**

3        Plaintiffs have properly alleged the tied product markets.  Plaintiffs need only allege distinct tying

4   and tied products and that "the tying arrangement affects a 'not insubstantial volume of commerce' in

5   the tied product market." *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003).

6   Here, Plaintiffs allege that Defendants forced them to purchase "designer shoes, scarves, belts, clothing,

7   jewelry, and home goods sold by Hermès ('Ancillary Products')." FAC, ¶36.  Plaintiffs allege "there is a

8   market for each of these tied products." *Id*.  This properly identifies the distinct, tied product markets.

9        Defendants argue that Plaintiffs need to allege "the tying arrangement affects a 'not insubstantial

10  volume of commerce in the tied product market.'" Dckt. 38, p.16 of 22, lines 19-21.  However, the

11  Ninth Circuit has made clear that Plaintiffs need allege "only that the tie affect an amount of commerce

12  in the tied product market that is not '*de minimis*.'" *Epic Games*, *supra*, 67 F.4th at 996-997.

13       Plaintiffs allege in detail the commerce affected in the tied product market. FAC, ¶¶41, 43 and 61.

14  Plaintiffs allege that each customer must have "a sufficient purchase history or purchase profile" of tied

15  products before they will be offered a Birkin bag. FAC, ¶38.  Plaintiff Yang spent "spent over $10,000

16  on Ancillary Products in order to purchase a Birkin bag." FAC, ¶43.  Plaintiff Cavalleri was also

17  "coerced into purchasing Ancillary Products in order to obtain access to Hermès Birkin bags," and spent

18  "tens of thousands of dollars at Hermès." FAC, ¶41.  Plaintiffs allege that Defendants' unlawful tying

19  "reduces competition in the market for the tied products . . . [and] that Defendants' competitors in the

20  tied markets cannot make sales for Ancillary Products that are purchased as a result of the coercive

21  effect of Defendants' tying practice." FAC, ¶43.  Plaintiffs allege that "Defendants' conduct affects and

22  has affected a substantial volume of commerce, far exceeding a de minimis amount.**"** FAC, ¶61.  This

23  more than adequately alleges an economic effect in the tied market.

24       Defendants' argument that Plaintiffs "have not alleged substantial effects in *each*" of the tied

25  markets, Dckt. 38, p.17, line 21 (italics in original), is unmeritorious.  Plaintiffs allege effect in the "tied

26  markets." FAC, ¶43.  This is an adequate allegation when construed "in a light most favorable to the

27  Plaintiff," as required on a motion to dismiss. *NL Indust. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

28       Defendants' citation to *Teradata Corp. v. SAP SE*, 570 F.Supp.3d 810 (N.D.Cal. 2021) and *Truck-*

– 11 –

1  *Rail Handling, Inc. Burlington N. & Sante Fe Ry. Co.*, 244 F.App'x 130, 131-32 (9th Cir. 2007), Dckt.

2  38, p.16, lines 14-17, is unpersuasive.  Both cases arose out of summary judgment, with detailed

3  evidence.  Moreover, the cases were factually distinct.  *See Teradata* , *supra*, 570 F.Supp.3d at 821, 836-

4  839 (addressing a "terminated the joint venture" involving the sale of business technology applications,

5  and excluding expert testimony regarding qualitative and quantitative analysis); and *Truck-Rail*, 244

6  F.App'x at *1 (involving a railroad that required "transload operators to sign . . . [an agreement] as a

7  condition of leasing transload terminals").  Neither case addressed what allegations are required to plead

8  a more than *de minimus* effect in tied product markets.

9      Defendants' argument that Plaintiffs did not allege how "home furnishings and jewelry could be

10  reasonable substitutes" or analyze "different competitors" in the tied markets, Dckt. 38, p. 17, lines 1-3,

11  misses the point.  It is related to the tying market – not the tied market – that market power is analyzed.

12  "[T]he seller must have power in the tying product market." *Jefferson Parish*, *supra*, 466 U.S. at 37.

13  "Ordinarily, the relevant market is a question of fact for the jury." *Morgan, Strand, Wheeler & Biggs v.*

14  *Radiology, Ltd.*, 924 F.2d 1484, 1489 (9th Cir. 1991).

15                **4.**      **Plaintiffs Have Adequately Pled Antitrust Standing.**

16      Defendants' argument that Plaintiffs have not alleged standing lacks merit.  Here, Plaintiffs have

17  alleged harm to competition.  Defendants' practice "causes economic harm because it reduces

18  competition in the market for the tied products." FAC, ¶43.  Specifically, Plaintiffs allege that

19  "Defendants' competitors in the tied markets cannot make sales for Ancillary Products that are

20  purchased as a result of the coercive effect of Defendants' tying practice." FAC, ¶43.  This properly

21  alleges injury to competition. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1203 (9th Cir. 2012)

22  (injury to competition occurs when customers "forego purchases" with competitors) (citations omitted).

23      Plaintiffs also allege detriment to consumers. FAC, ¶33 (tying scheme results "in substantial

24  financial harm to the Class").  Indeed, Plaintiffs Cavallari and Yang allege having spent tens of

25  thousands on Hermes Ancillary Products. FAC, ¶¶41, 43.

26      Defendants argument that there is no foreclosure of competition here because Plaintiffs would not

27  "have otherwise bought even from another seller in the tied product market," Dckt. 38, p.19, lines 4-8, is

28  meritless.  Defendants make this argument by taking Plaintiffs' allegations wholly out of context.

– 12 –

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED CLASS ACTION COMPLAINT (CASE NO. 3:24-CV-01707-JD)**

1   Plaintiffs solely allege that it was the "Hermes Ancillary Products that they never would have

2   purchased." FAC, ¶33.  Plaintiffs **do not** allege they would not have bought tied products from other

3   sellers.  Rather, Plaintiffs allege that they "have alternative options for the Ancillary Products and **would**

4   **prefer** to choose among them independently from their decision to purchase Birkin handbags." *Id.* at ¶60

5   (emphasis added).  *Per se* tying rules apply where Plaintiffs "did not want [the tied product] at all, or

6   might have preferred to purchase elsewhere on different terms." *Jefferson Parish*, *supra*, 466 U.S. at 12.

7        Defendants' argument that Plaintiffs claim injury because they could not resell the Birkin bag at a

8   higher price is incorrect.  Plaintiffs allege that Defendants actively manipulate Birkin bag prices and

9   demand, through limited production and low supply, FAC, ¶¶26, 36, and suppressing "the nominal retail

10  price of Birkin handbags." FAC, ¶33.  Plaintiffs allege the "nominal retail price of a Birkin bag is a

11  façade," and Defendant's "predatory practice . . . drives up the true price of the Birkin bag," because

12  customers are required to purchase Ancillary tied items to get the Birkin bag. FAC, ¶33.  In this way,

13  Defendants obtain "supracompetitive profits." FAC, ¶31.  The high resale value of the Birkin is an

14  intentional byproduct of Defendants' tying scheme.

15       Defendants' suggestion Plaintiffs allege harm because Defendants merely enhanced the price of the

16  Birkin, Dckt.38, p. 19 of 22, mischaracterizes Plaintiffs' allegations regarding Defendants' tying

17  scheme.  Similarly, Plaintiffs have not alleged reduced choice alone, but that as a result they paid

18  supercompetitive prices, and competition in the tied product markets was affected.

19       Plaintiffs also note *per se* tying schemes require less elucidation of the harm caused to competition.

20  "In cases alleging per se violations of the antitrust laws, the alleged conduct is 'conclusively presumed

21  to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have

22  caused or the business excuse for their use.'" *Sidibe v. Sutter Health*, 103 F.4th 675, 693 (9th Cir. 2024).

23       **B.     Plaintiffs Adequately Allege A Tying Claim Under The Cartwright Act.**

24       To plead a tying claim under section 16727 (as distinct from a claim under Business & Professions

25  Code section 16720), Plaintiff must plead (1) a tying agreement; (2) sufficient economic power in the

26  tying market or anticompetitive effects in the tied market; and (3) pecuniary loss. *Morrison v. Viacom,*

27  *Inc.*, 66 Cal.App.4th 534, 541-42 (1998).  Thus, Section 16727 of the Cartwright Act requires only that

28  economic power or anticompetitive effect be pled, whereas the Sherman Act requires both.  To plead

1    anti competitive effects, appellants must allege facts to show that "'a total amount of business,

2    substantial enough in terms of dollar-volume so as not to be merely de minimis, is foreclosed to

3    competitors by the tie.'" *Morrison, supra,* 66 Cal.App.4th at 542 (citations omitted).  Here, the FAC

4    pleads a tying agreement, FAC, ¶¶36-40; economic power and an anticompetitive effect, *id*. at ¶¶33, 37-

5    39; and injury to Plaintiffs, *id*. at ¶¶41, 43.  Plaintiffs note that, under California law, "the requisite

6    control of the tying product may be inferred from the seller's success in imposing a tying condition upon

7    a substantial amount of commerce in the tied product without any further reference to the market."

8    *Suburban Mobile Homes. v. Amfac Communities*, 101 Cal.App.3d 532, 547 (1980).  The FAC alleges

9    that "Defendants' conduct affects and has affected a substantial volume of commerce. . ." FAC, ¶61.

10           **C.      Plaintiffs Adequately Allege A UCL Claim.**

11           Plaintiffs have adequately alleged claims under the UCL's unlawful and unfair prongs.

12           With respect to the unlawful prong, "[b]y proscribing any unlawful business practice, section 17200

13    borrows violations of other laws and treats them as unlawful practices that the unfair competition law

14    makes independently actionable." *Abbott Labs Abbott Laboratories v. Superior Court*, 9 Cal.5th 642,

15    651 (2020) (internal citation omitted).  Because Plaintiffs have sufficiently pled the elements for relief

16    under the Sherman Act and Cartwright Act, Plaintiffs sufficiently plead unlawful business practices in

17    violation of the unlawful prong of the UCL.

18           Plaintiffs also allege Defendants' conduct violates the "unfair" prong of the UCL. FAC, ¶88.  "To

19    support a finding of unfairness to *consumers*, a court uses the balancing test, which 'weigh[s] the utility

20    of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Epic Games*, *supra*, 67

21    F.4th at 1000 (italics in original).  "The balancing test . . .  is fact intensive and is not conducive to

22    resolution at the demurrer stage." *Progressive W. Ins. Co. v. Sup. Ct.*, 135 Cal.App.4th 263, 287 (2005).

23           The FAC alleges that Defendants have created a classic tying scheme, where they act as the seller of

24    both the tying and tied products, have implemented a commission plan for its sales agents that incentives

25    tying, and manipulates prices and output of the Birkin bag to force the purchase of tied items and obtain

26    supra-competitive profits.  Plaintiffs have been harmed by tens of thousands of dollars individually, and

27    competition has been substantially affected.  This alleges liability under the unfair prong of the UCL.

28           The unfair prong of the UCL sweeps far broader than the Sherman and Cartwright Acts.  For liability

1    to attach under the unfair prong of the UCL, there is no need "to define a relevant market . . ." *Epic*

2    *Games*, *supra*, 67 F.4th at 1002.  In addition, *Epic* rejected the argument that "failure to establish

3    Sherman Act liability forecloses UCL liability" under the unfair prong. *Id*. at 1001.

**D.      Plaintiffs Request Leave To Amend To Add A Section 1 Claim.**

5        Plaintiffs have pled their tying claim under Section 2 (anticompetitive conduct) of the Sherman Act,

6    not Section 1 (concerted action).  Tying claims can be pled under either statute. *Multistate Legal Stud. v.*

7    *Harcourt Brace Jovanovich Legal & Pro. Public.*, 63 F.3d 1540, 1550 (10th Cir. 1995).

8        Defendants argue that "Section 2 [tying] claims require 'the possession of *monopoly* power in the

9    relevant market' and '[m]onopoly power differs in degree from market power, requiring 'something

10   greater.' *Epic Games, supra,* 67 F.4th at 998 (emphasis added; citation omitted)." Dckt.38, p.12, lines 9-

11   12.  The Ninth Circuit previously noted that "[t]he 'relevant market' and 'market power' requirements

12   apply identically under the two different sections [Sections 1 and 2] of the [Sherman] Act." *Newcal*

13   *Industries, supra,* 513 F.3d at 1044, n.3.  However, another California court described the difference

14   between Section 1 and Section 2 claims as "the Court uses the term 'monopoly power' to refer to

15   substantial market power." *Safeway Inc. v. Abbott Laboratories*, 761 F.Supp.2d 874, 886 (N.D. Cal.

16   2011).

17       Plaintiffs respectfully request leave to amend to allege a Section 1 claim.  A Section 1 claim is

18   appropriate under the facts alleged by Plaintiffs. *Systemcare, Inc. v. Wang Laboratories Corp.*, 117 F.3d

19   1137, 1138 (10th Cir. 1997) ("a contract between a buyer and seller satisfies the concerted action

20   element of section 1"); *Cargill Inc. v. Budine*, 2007 WL 4207908, *3 (E.D. Cal. 2007) ("agreement

21   between [seller] and its customers satisfies the concerted action requirement of Section One…").  As

22   such, dismissing Plaintiffs' complaint without granting such leave would be improper. *Chang v. Chen,*

23   80 F.3d 1293, 1296 (9th Cir. 1996) (dismissal without leave "improper unless it is clear […] that the

24   complaint could not be saved by any amendment").

**IV.      CONCLUSION**

26       For the reasons set forth herein, Defendants' motion should be denied in full.

27   / / /

28   / / /

1

2   Dated: August 16, 2024                    **HAFFNER LAW**

3
                                      By:  ___/s/ Joshua H. Haffner_____
4                                          Joshua H. Haffner
                                          Alfredo Torrijos
5                                          Vahan Mikayelyan

6                                     **SETAREH LAW GROUP**
                                          Shaun C. Setareh
7                                          Thomas A. Segal

8                                     *Attorneys for Plaintiffs and the Proposed Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED CLASS ACTION COMPLAINT (CASE NO. 3:24-CV-01707-JD)**