LATHAM & WATKINS LLP
   Christopher S. Yates (SBN 161273)
   Belinda S Lee (SBN 199635)
   Ashley M. Bauer (SBN 231626)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Email: Chris.Yates@lw.com
         Belinda.Lee@lw.com
         Ashley.Bauer@lw.com

LATHAM & WATKINS LLP
   Peter E. Davis (SBN 320256)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: 202.637.2200
Facsimile: 202.637.2201
Email: Peter.Davis@lw.com

Attorneys for Defendants
*Hermès of Paris, Inc. and Hermès International*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TINA CAVALLERI, an individual; MARK GLINOGA, an individual; MENGYAO YANG, an individual; on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>    vs.<br><br>HERMÈS INTERNATIONAL, a French corporation and HERMÈS OF PARIS, INC., a New York corporation, and DOES 1 through 10; inclusive,<br><br>         Defendants. | Case No. 3:24-cv-01707-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: September 19, 2024<br>Time: 10:00 AM<br>Place: Courtroom 11, 19th Floor<br>Judge: Hon. James Donato |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Plaintiffs' Opposition Confirms Their Failure To Plead Facts Supporting The Elements Of A Tying Claim ....................................................... 2

        1. Plaintiffs' Opposition Concedes Their Amended Complaint Does Not Plead Monopoly Power And Does Not Resuscitate Their Market Power Allegations ......................................... 2

            a. No Direct Evidence ................................................................. 3

            b. No Indirect Evidence .............................................................. 4

            c. No Birkin-Handbag Market .................................................... 6

        2. Plaintiffs' Opposition Does Not Identify Factual Allegations Of The Willful Maintenance Or Acquisition Of Monopoly Power ....................................................................................... 7

        3. Plaintiffs' Opposition Underscores That They Have Not Adequately Identified Any Tied Markets Or Tied Market Effects ............................................................................................. 8

        4. Plaintiffs' Opposition Confirms Their Lack Of Antitrust Injury ............................................................................................. 9

    B. Plaintiffs' Opposition Offers No Viable Defense Of Their State Law Claims ............................................................................................................ 9

        1. Plaintiffs' Cartwright Act Argument Misreads California Law ................................................................................................. 9

        2. Plaintiffs Do Not Address The Flaws In Their UCL Claims ................... 10

III. CONCLUSION ............................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Belton v. Comcast Cable Holdings, LLC*,
　151 Cal. App. 4th 1224 (Cal. Ct. App. 2007) ........................................................................10

*Blough v. Holland Realty, Inc.*,
　574 F.3d 1084 (9th Cir. 2009) ..................................................................................................8

*Brantley v. NBC Universal, Inc.*,
　675 F.3d 1192 (9th Cir. 2012) ..................................................................................................9

*Coronavirus Reporter v. Apple, Inc.*,
　85 F.4th 948 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1054 (2024) ......................................7, 8

*Dominick v. Collectors Universe, Inc.*,
　2012 WL 4513548 (C.D. Cal. Oct. 1, 2012) .............................................................................3

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
　504 U.S. 451 (1992) .........................................................................................................2, 4, 8

*Epic Games, Inc. v. Apple, Inc.*,
　67 F.4th 946 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024) ..................................2, 6, 10

*Forsyth v. Humana, Inc.*,
　114 F.3d 1467 (9th Cir. 1997), *overruled on other grounds by Lacey v.*
　*Maricopa County*, 693 F.3d 896 (9th Cir. 2012) ......................................................................3

*Fortner Enterprises, Inc. v. United States Steel Corp.*,
　394 U.S. 495 (1969) ........................................................................................................5, 6, 10

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
　733 F. App'x 380 (9th Cir. 2018) .............................................................................................5

*Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*,
　627 F.2d 919 (9th Cir. 1980) ....................................................................................................5

*Illinois Tool Works Inc. v. Independent Ink., Inc.*,
　547 U.S. 28 (2006) ........................................................................................................1, 2, 5, 6

*Intel Corp. v. Fortress Investment Group LLC*,
　511 F. Supp. 3d 1006 (N.D. Cal. 2021) ...................................................................................4

*John Doe 1 v. Abbott Laboratories*,
　571 F.3d 930 (9th Cir. 2009) ....................................................................................................8

**Page(s)**

*Klein v. Facebook, Inc.*,
   580 F. Supp. 3d 743 (N.D. Cal. 2022) ................................................................................... 5

*Korea Kumho Petrochemical v. Flexsys America LP*,
   2008 WL 686834 (N.D. Cal. Mar. 11, 2008) .......................................................................... 5

*Lambrix v. Tesla, Inc.*,
   2023 WL 8265916 (N.D. Cal. Nov. 17, 2023) ...................................................................... 10

*Little v. Pac. Seafood Procurement, LLC*,
   2024 WL 2305603 (N.D. Cal. May 21, 2024) ...................................................................... 10

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................................. 2

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
   2022 WL 2791201 (E.D. Cal. July 15, 2022) ......................................................................... 4

*Newcal Industries, Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ............................................................................................ 2, 7

*In re Pandora Media, LLC*,
   2023 WL 6370884 (C.D. Cal. Apr. 5, 2023) ........................................................................... 5

*In re Qualcomm Antitrust Litigation*,
   2023 WL 121983 (N.D. Cal. Jan. 6, 2023) ............................................................................. 9

*Rebel Oil Co. v. Atlantic Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ....................................................................................... 3, 4, 5, 6

*Rhodes v. Robinson*,
   621 F.3d 1002 (9th Cir. 2010) ................................................................................................ 6

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*,
   532 F.3d 963 (9th Cir. 2008) ........................................................................................... 2, 6, 9

*SC Innovations, Inc. v. Uber Technologies, Inc.*,
   434 F. Supp. 3d 782 (N.D. Cal. 2020) .................................................................................... 3

*SC Manufactured Homes, Inc. v. Liebert*,
   162 Cal. App. 4th 68 (Cal. Ct. App. 2008) ........................................................................... 10

*Scally v. Ditech Financial, LLC*,
   2017 WL 5614604 (S.D. Cal. Nov. 21, 2017) ........................................................................ 7

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) .................................................................................................. 9

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFS.' REPLY ISO MOT. TO DISMISS FAC
CASE NO. 3:24-CV-01707-JD

| | **Page(s)** |
|---|---|

*Suburban Mobile Homes, Inc. v. Amfac Communities, Inc.*,
  101 Cal. App. 3d 532 (Cal. Ct. App. 1980) ...............................................................................10

**OTHER AUTHORITIES**

1-1 American Bar Association, *Antitrust Law Developments* 1D-2-a-(1)-(c)
  (9th ed. 2023, online) ..................................................................................................................6

iv

DEFS.' REPLY ISO MOT. TO DISMISS FAC
CASE NO. 3:24-CV-01707-JD

## I.  INTRODUCTION

Plaintiffs' Opposition confirms their misunderstanding of both the antitrust laws and the need to plead facts, as opposed to legal conclusions, to survive dismissal.  The Opposition repeats the Amended Complaint's conclusory allegations, but nowhere engages with Plaintiffs' failure to plead the facts needed to state a tying claim.

Because "[m]any tying arrangements … are fully consistent with a free, competitive market," *Ill. Tool Works Inc. v. Indep. Ink., Inc.*, 547 U.S. 28, 45 (2006), antitrust plaintiffs must allege facts plausibly suggesting market power in a tying market and foreclosure of competition in a tied market.  The Opposition does not grapple with Plaintiffs' failure to allege facts regarding Hermès' share of any luxury handbag market.  Instead, they retreat to what they alleged in their original complaint: a now unpleaded Birkin-handbag submarket that they argue is proper based on its desirability and product characteristics.  But the Supreme Court long ago rejected a presumption of market power based on unique product attributes, even as to products protected by patents.  As to foreclosure of competition, Plaintiffs argue legal conclusions rather than well-pleaded facts—claiming that some unidentified competitors, in some undefined markets somewhere, must be harmed.  The reality is more straightforward and dooms Plaintiffs' case: Hermès has desirable products, and has developed a devoted customer base, but occupies a small slice of any alleged luxury handbag market.  This is what the antitrust laws encourage and certainly not what they prohibit.

Confronted with these flaws, and after effectively conceding they cannot meet the requirements for a Section 2 claim, Plaintiffs seek leave to replead under Section 1—even though Hermès' first motion put them on notice about Section 2's elements.  These maneuvers underscore the infirmities in the Amended Complaint, and reveal Plaintiffs' more fundamental problem: they cannot plead an antitrust claim against Hermès because no such claim exists.

Ultimately, Plaintiffs' Opposition cannot distract from their real goal: to obtain on-demand access to Birkin handbags at their preferred price for purposes of resale and investment.  But Plaintiffs' dissatisfaction that they cannot buy as many Birkin handbags as they wish is not an antitrust violation.  The Amended Complaint should be dismissed with prejudice.

## II.     ARGUMENT

### A. Plaintiffs' Opposition Confirms Their Failure To Plead Facts Supporting The Elements Of A Tying Claim

Plaintiffs' Opposition at times acknowledges the multiple required elements of a tying claim, Opp'n to Mot. to Dismiss First Am. Compl. ("Opp'n") 2, 5, Dkt. 39, but it fundamentally misunderstands their meaning and application—and disregards binding precedent.

#### 1. Plaintiffs' Opposition Concedes Their Amended Complaint Does Not Plead Monopoly Power And Does Not Resuscitate Their Market Power Allegations

The critical starting point in pleading any tying claim is monopoly or market power in the tying product market. *Ill. Tool*, 547 U.S. at 46. This is true for both a *per se* and a rule of reason claim. *See, e.g.*, *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 971 (9th Cir. 2008) ("market power" required "in all cases involving a tying arrangement," including "per se" claim) (citations omitted). Plaintiffs' Amended Complaint fails this basic requirement.

At the outset, Plaintiffs' Opposition confirms that their Sherman Act claim should be dismissed for failure to plead "monopoly power," as required by Section 2. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 998 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024). Plaintiffs do not dispute the need for monopoly power, but cite the Ninth Circuit's one-off statement that the "'relevant market' and 'market power' requirements apply identically under the two different sections … [of the] Act." Opp'n 15 (quoting *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1044 n.3 (9th Cir. 2008)). Plaintiffs do not seriously defend that line, as they admit the Ninth Circuit said the opposite last year in *Epic Games*, invoking Supreme Court precedent that "[m]onopoly power under § 2 requires, of course, something greater than market power under § 1." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992). Plaintiffs do not argue that their Amended Complaint pleads monopoly power, and thus concede the point. Opp'n 5-9. Instead, they improperly seek to amend yet again to attempt to add a Section 1 claim, even though "Defendant raised the same issue in the initial motion to dismiss which Plaintiff[s] failed to cure in the Amended Complaint." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1033 (N.D. Cal. 2012) (denying leave to amend on that basis); Mot. To Dismiss ("MTD") 12, Dkt. 29.

But the question of monopoly versus market power is immaterial here and leave to amend is thus futile because Plaintiffs have not pleaded market power either. Market power can be pleaded via direct or indirect evidence, but Plaintiffs misunderstand the key question: whether "by restricting its own output, [the defendant] can restrict *marketwide* output and, hence, increase *marketwide* prices." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) (emphasis added). There are no allegations about Hermès' ability to restrict its own output of *luxury handbags* and thereby increase *marketwide* prices of *luxury handbags*. Nor could there be in light of Plaintiffs' allegations of Hermès' limited production and multiple competitors. Plaintiffs allege neither direct nor indirect evidence, and they cannot save their case by arguing the single-brand "Birkin bag" market they rightly abandoned.

### a. No Direct Evidence

Plaintiffs' direct evidence argument fails most fundamentally because it misunderstands that market power turns on control of "marketwide output," and thus "marketwide prices." *Id.* Price increases after "reduced [marketwide] output" lead consumers to pay more "to obtain the smaller quantity available." *SC Innovations, Inc. v. Uber Techs., Inc.*, 434 F. Supp. 3d 782, 793 (N.D. Cal. 2020) (citation omitted); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475-76 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). Here, Plaintiffs have not—and cannot—allege that Hermès has restricted overall output of luxury handbags and thereby increased marketwide prices of luxury handbags. In fact, Plaintiffs do not even have conclusory allegations that Hermès has reduced the supply of Birkin handbags such that overall output has been reduced and overall prices for luxury handbags have increased. *See Dominick v. Collectors Universe, Inc.*, 2012 WL 4513548, *7 (C.D. Cal. Oct. 1, 2012) (rejecting market power allegations because Plaintiffs failed to allege facts "illustrat[ing] Defendants' ability to affect the marketwide quantity … by suppressing their own supply").

Plaintiffs' conclusory references in their Amended Complaint to the Birkin handbag's "limited production" or "low supply" ignore the critical question of Hermès' ability to reduce marketwide output and thereby increase marketwide price. Opp'n 5 (quoting First Am. Compl. ("FAC") ¶¶ 26, 36), Dkt. 33. In any event, Plaintiffs' Amended Complaint offers its own

explanation for the "low supply," (FAC ¶ 36), unrelated to the "injurious exercise of market power," *Rebel Oil*, 51 F.3d at 1434—the "intensive labor and craftsmanship and high-quality leathers required" that "make the Birkin handbag difficult to produce," FAC ¶ 22.

Turning to price, Plaintiffs focus only on Hermès' prices instead of marketwide prices for luxury handbags, which is fatal. But even if Hermès' prices were the proper focus, Plaintiffs' Opposition confirms the Amended Complaint's failings. Plaintiffs rest their argument not on the Birkin handbag's price, which they state is sold *below* market price, but instead on alleged "'supracompetitive' prices for the tied items." Opp'n 6 (quoting FAC ¶ 32). But their Amended Complaint has no allegations about the actual prices of any of the purportedly tied items, no comparison between the (allegedly) higher prices of the tied items and Hermès' competitors, and no facts showing that the cumulative price (accounting for the Birkin handbag's purportedly low price) is supracompetitive. And Plaintiffs' conclusory invocation of Hermès' purported "ability to implement [the alleged] pricing scheme" (*id.*) means nothing without the requisite pricing allegations. Courts routinely reject similar allegations. *See, e.g.*, *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 2022 WL 2791201, *10 (E.D. Cal. July 15, 2022) (rejecting market power argument given absence of allegations "that Defendants restricted market-wide output or imposed market-wide supracompetitive prices"); *Intel Corp. v. Fortress Inv. Grp. LLC*, 511 F. Supp. 3d 1006, 1027 (N.D. Cal. 2021) (rejecting conclusory pricing allegations).[1]

### b.    No Indirect Evidence

Plaintiffs have no more luck alleging market power through indirect evidence, which requires the plaintiff to "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil*, 51 F.3d at 1434. All three components are important, but the critical "starting point" is "market

---

[1] Plaintiffs' conclusory assertion that they have alleged "a typical tying scheme of charging 'noncompetitive price on the tied product … even though the tying product is sold … at nominal rates,'" is misplaced. Opp'n 6 (alterations in original) (citation omitted). What Plaintiffs mistakenly refer to is an aftermarket where an initial buyer of a company's equipment is thereafter locked into purchasing the same company's parts. *See, e.g.*, *Eastman Kodak*, 504 U.S. at 478-79.

share." *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 925 (9th Cir. 1980).

Plaintiffs' indirect evidence argument fails because they offer no factual allegations concerning Hermès' market share in a luxury handbag market. All they say is that "Hermès holds a substantial [and growing] share of the luxury handbag market in 2023." Opp'n 8 (alteration in original and emphasis omitted) (quoting FAC ¶ 28). Courts routinely reject similarly conclusory allegations.[2] Plaintiffs need not necessarily "quantify [Hermès'] market share with precision"; but, as Plaintiffs' cases say, they must provide a plausible "estimate of the defendant's market share." Opp'n 8-9 (first quoting *Korea Kumho Petrochemical v. Flexsys Am. LP*, 2008 WL 686834, *9 (N.D. Cal. Mar. 11, 2008); then quoting *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 777 (N.D. Cal. 2022)). Plaintiffs' two decisions show the difference: the plaintiff in *Korea Kumho*, like Plaintiffs here, had no claim because it alleged only that the defendant had "dominance of the [relevant] market," 2008 WL 686834, *9; the plaintiffs in *Klein*, unlike Plaintiffs here, survived a motion to dismiss because they had plausible allegations that Facebook had "between 80 and 95% [of the market]," 580 F. Supp. 3d at 776. Plaintiffs' allegations also refute any notion that Hermès has a large market share: the alleged "low supply" of the Birkin handbag shows Hermès has a limited role in the overall market. FAC ¶ 36.[3]

Plaintiffs' attempt (Opp'n 7-8) to claim market power based solely on the alleged "uniqueness and desirability" of Birkin handbags contravenes binding Supreme Court precedent. In *Illinois Tool*, the Court expressly repudiated a long line of decisions (some cited by Plaintiffs) applying a presumption of market power based on unique product attributes, such as patents or copyrights. 547 U.S. at 41-43; Opp'n 7 (citing, e.g., *Fortner Enters., Inc. v. U.S. Steel Corp.* ("*Fortner I*"), 394 U.S. 495, 502-03 (1969)). The Supreme Court was clear: "in *all* cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in

---

[2] *See e.g.*, *Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 F. App'x 380, 381-82 (9th Cir. 2018); *In re Pandora Media, LLC*, 2023 WL 6370884, *11 (C.D. Cal. Apr. 5, 2023).

[3] Plaintiffs misconstrue *Hunt-Wesson*'s statement that "[b]lind reliance upon market share, divorced from commercial reality, could give a misleading picture of a firm's actual ability to control prices." Opp'n 8 (quoting 627 F.2d at 924). In reality, the court was explaining that market share may not be *sufficient* to find monopoly power; not, as Plaintiffs imply, that market share was somehow *unnecessary* to the analysis. *See Rebel Oil*, 51 F.3d at 1437, 1441.

1  the tying product." 547 U.S. at 46 (emphasis added); *see Rick-Mik*, 532 F.3d at 971 n.2.

2  Contrary to Plaintiffs' suggestion (Opp'n 7-8), *Illinois Tool*'s reasoning is not limited to patents. If a patent—which is necessarily unique and affords the holder an absolute right to exclude—does not create a presumption of market power, then far vaguer qualitative assertions of uniqueness like those Plaintiffs offer here cannot establish market power. "After the decision in *Illinois Tool Works*," it is "clear that uniqueness is sufficient if, but only if, it *gives rise to actual market power*." 1-1 American Bar Association, *Antitrust Law Developments* 1D-2-a-(1)-(c) (9th ed. 2023, online) (emphasis added).[4] Thus, the Ninth Circuit holds that tying claims "require[] the market-power inquiry standard throughout antitrust law," *Epic Games*, 67 F.4th at 997—including the law's usual demand for facts plausibly suggesting that "the defendant owns a dominant share of th[e] market," *Rebel Oil*, 51 F.3d at 1434.[5] And Plaintiffs cite no case post-*Illinois Tool* that has found market power based solely on qualitative allegations of uniqueness.

c.  **No Birkin-Handbag Market**

Plaintiffs seek to retreat to the "Birkin handbag" only market they defined in their first complaint. Opp'n 9-10; *see* Compl. ¶ 48, Dkt. 1. But this theory does not appear in their Amended Complaint, which proceeds solely on a "luxury handbag market" theory. FAC ¶¶ 27-28, 30-33, 58, 69, 78. Plaintiffs cite (Opp'n 9) paragraphs 26 and 36, but paragraph 26 refers to the "market and/or submarket of *luxury handbags* in the United States," and paragraph 36 simply contains market power allegations. FAC ¶¶ 26, 36 (emphasis added). Neither alleges a Birkin-handbag submarket. Plaintiffs' effort to resurrect their theory violates the rule that an "amended complaint super[s]edes the original, the latter being treated thereafter as non-existent." *Rhodes v.*

---

[4] This makes sense because *Illinois Tool* relied not just on the patent context but also on the Court's rejection of any presumption of power as "a vestige of the Court's historical distrust of tying arrangements." 547 U.S. at 38; *see Rick-Mik*, 532 F.3d at 971 n.2. Indeed, the uniqueness principle Plaintiffs draw from *Fortner I* (Opp'n 7) rested on that decision's express *rejection* of "the need for proof of truly dominant power over the tying product," based on its skepticism of all ties. 394 U.S. at 503. *Illinois Tool* then held that dominance *is* required because "[m]any tying arrangements … are fully consistent with a free, competitive market." 547 U.S. at 45.

[5] Plaintiffs cannot sidestep this inquiry using conclusory allegations that "forcing is probable." Opp'n 4 (citation omitted). To determine whether forcing *is* probable, courts ask whether the defendant "has market power in the tying product." *Rick-Mik*, 532 F.3d at 971 (citation omitted).

1  *Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (citation omitted); *Scally v. Ditech Fin., LLC*, 2017 WL 5614604, *3 (S.D. Cal. Nov. 21, 2017).  That principle applies with special force here, because Plaintiffs' new allegations *contradict* their first claim of a single-brand market limited to the Birkin handbag.  While they allege the Birkin handbag is "distinct and exclusive," they also admit that "a limited number of handbags may be considered potential substitutes for cross-elasticity purposes." FAC ¶ 27.  Plaintiffs do not, and cannot, reconcile these allegations.

Regardless, Plaintiffs' complaint is utterly lacking in the kind of allegations required to make this the exceptional case of a single brand market—let alone a single *item* market.  Courts routinely reject product markets artificially drawn around a single brand.  Like the plaintiffs in *Coronavirus Reporter v. Apple, Inc.*, who raised similarly deficient allegations of a single-brand market, Plaintiffs here do not "attempt to demonstrate the cross-elasticity" of demand for the Birkin handbag.  85 F.4th 948, 956 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1054 (2024).  They "fail[] to draw the market's boundaries to 'encompass the product at issue as well as *all economic substitutes* for the product." *Id.* (emphasis added) (citation omitted).  And they nowhere explain why the tying product market includes the Birkin and Kelly handbags—but excludes all other handbags.  *See* MTD 7-8, Dkt. 29.  This is fatal.[6]

### 2. Plaintiffs' Opposition Does Not Identify Factual Allegations Of The Willful Maintenance Or Acquisition Of Monopoly Power

Plaintiffs misunderstand Section 2's requirement of willful maintenance or acquisition of monopoly power.  They restate the conduct they claim is anticompetitive—"the Birkin bag's unique market power, and Defendants' pricing scheme to obtain supracompetitive prices." Opp'n 10.  But even if those allegations were generally sufficient (and they are not), "[s]imply possessing monopoly power and charging monopoly prices does not violate § 2; rather, the statute targets the 'willful acquisition or maintenance of that power as distinguished from the growth or development as a consequence of a superior product, business acumen, or historic

---

[6] It is telling that Plaintiffs (Opp'n 9) justify their proposed single-item submarket by reference to decisions such as *Newcal*, which involve "wholly derivative aftermarket[s]" that are the exception to courts' near-uniform skepticism to single-brand markets.  513 F.3d at 1051.

1  accident.'" *John Doe 1 v. Abbott Laboratories*, 571 F.3d 930, 934 (9th Cir. 2009) (citation
2  omitted). Plaintiffs allege no facts that Hermès has willfully maintained or acquired a monopoly
3  in any tying market (for luxury handbags) or tied market (for nearly all other products Hermès
4  sells). To the contrary, Plaintiffs allege that Hermès' supposed power comes from its artisan
5  manufacturing processes, high-quality materials, and brand. FAC ¶¶ 22-27. And Plaintiffs have
6  not said anything about Hermès unlawfully maintaining or acquiring a monopoly in any tied
7  markets. This is unlike other Section 2 tying cases, where the defendant "took exclusionary
8  action to maintain" a monopoly for the tying product or "used its control over [the tying product]
9  to strengthen its monopoly share of the [tied product]." *Eastman*, 504 U.S. at 483.

### 3. Plaintiffs' Opposition Underscores That They Have Not Adequately Identified Any Tied Markets Or Tied Market Effects

Plaintiffs' Amended Complaint also fails to allege the foreclosure of competitors in a viable tied market. This is a critical component to both *per se* and rule of reason claims because foreclosure is the harm that tying claims seek to prevent. *See Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1089-90 (9th Cir. 2009). As to market definition, Plaintiffs claim that "Defendants forced them to purchase 'designer shoes, scarves, belts, clothing, jewelry, and home goods sold by Hermès ('Ancillary Products')'" and that "there is a market for each of these tied products." Opp'n 11 (quoting FAC ¶ 36). This response suffers from two basic flaws that Hermès pointed out in its Motion that Plaintiffs have ignored. *First*, this is plainly just a sampling: Plaintiffs define "Ancillary Products" to include *all* "products sold at Hermès branded retail boutiques, for which Sales Agents receive a commission" (not including the Birkin, Kelly, or Constance handbags). FAC ¶ 45. But they do not identify these other products or define the scope of the product markets at issue. *Second*, the single line in their Amended Complaint is conclusory: it does not explain the contours of any of these markets—including whether they are purportedly limited to luxury items, what qualifies as a "home good," and what items fit into which markets. Stating a product category is not enough to define a market. *See Coronavirus Rep.*, 85 F.4th at 956 (failure to plead facts alleging "cross-elasticity" of demand and market boundaries fatal).

But even assuming Plaintiffs had defined the relevant markets, they have not alleged facts

showing that the arrangement "affects a 'not insubstantial volume of commerce' in the tied product market[s]." *Rick-Mik*, 532 F.3d at 971. Plaintiffs allege that "Defendants' conduct affects and has affected a substantial volume of commerce" and that several named Plaintiffs spent thousands of dollars on certain unnamed Ancillary Products. FAC ¶ 61; *id.* ¶¶ 41-43. But the Amended Complaint has no allegations as to what tied markets are affected or even the "total amount of business … foreclosed to competitors by the tie." *In re Qualcomm Antitrust Litig.*, 2023 WL 121983, *16 (N.D. Cal. Jan. 6, 2023) (citation omitted) (applying Cartwright Act). Plaintiffs return to the conclusion that there are some "effect[s] in the 'tied markets,'" Opp'n 11 (quoting FAC ¶ 43), but conclusory allegations are not enough, *Rick-Mik*, 532 F.3d at 970-71.

### 4. Plaintiffs' Opposition Confirms Their Lack Of Antitrust Injury

Plaintiffs' antitrust injury argument fails too. Plaintiffs' Opposition confirms the crux of the Amended Complaint: that the alleged tie has raised prices for the Birkin handbag to "supracompetitive" levels and precluded Plaintiffs from "choos[ing] among" luxury items "independently from their decision to purchase Birkin handbags." FAC ¶¶ 33, 60; Opp'n 13. But they ignore the Ninth Circuit's holding that "allegations that an agreement has the effect of reducing consumers' choices or increasing prices to consumers do[] not sufficiently allege an injury to competition" because "*[b]oth* effects are fully consistent with a free, competitive market." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012) (emphasis added). Plaintiffs' conclusory allegation that "Defendants' competitors in the tied markets cannot make sales for Ancillary Products that are purchased as a result of [the tie]," FAC ¶ 43, has none of the "specific facts" of harm to competition required. *Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013). Plaintiffs' real complaint is that they are unable to buy Birkin handbags on their preferred terms. But that allegation of personal harm does not satisfy Plaintiffs' burden of pleading harm to the competitive process.

### B. Plaintiffs' Opposition Offers No Viable Defense Of Their State Law Claims

#### 1. Plaintiffs' Cartwright Act Argument Misreads California Law

Plaintiffs' derivative Cartwright Act claim fails for the same reasons as their Sherman Act claim—Plaintiffs fail to allege market power, tied market effects, or antitrust injury. One

1  last point: Plaintiffs incorrectly state that "California courts continue to recognize the rule that a
2  unique product (irrespective of the existence of a patent) can serve as the basis for market
3  power." Opp'n 8 (citation omitted).  But a California Court of Appeal has recognized that
4  *Illinois Tool* "overruled this line of authority," including authority cited by Plaintiffs, that
5  previously held that "'economic power may be *inferred* from the tying product's desirability to
6  consumers or uniqueness in its attributes'" and power need be shown "'only with respect to some
7  buyers in the market.'" *SC Manufactured Homes, Inc. v. Liebert*, 162 Cal. App. 4th 68, 91 (Cal.
8  Ct. App. 2008) (quoting *Suburban Mobile Homes, Inc. v. Amfac Communities, Inc.*, 101 Cal.
9  App. 3d 532, 544 (Cal. Ct. App. 1980), and citing *Fortner I*, 394 U.S. at 503).  "Rather, 'in all
10 cases involving a tying arrangement, the plaintiff must prove that the defendant has market
11 power in the tying product.'" *SC Manufactured*, 162 Cal. App. 4th at 91 (citation omitted).

**2.     Plaintiffs Do Not Address The Flaws In Their UCL Claims**

13     Plaintiffs' UCL "unlawful" prong claim is derivative of their other claims and fails for
14 the same reasons.  The UCL "unfairness" prong claim meets the same fate.  Plaintiffs'
15 Opposition solely invokes the UCL's "balancing test," which "weigh[s] the utility of the
16 defendant's conduct against the gravity of the harm to the alleged victim.'"  Opp'n 14 (quoting
17 *Epic Games*, 67 F.4th at 1000).  But they argue only that "Defendants have created a classic
18 tying scheme … to force the purchase of tied items and obtain supra-competitive prices." *Id.*
19 That theory fails to allege any valid consumer harm under the Sherman Act, so it likewise fails
20 the UCL.  *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1240 (Cal. Ct. App.
21 2007).  Plaintiffs cite *Epic Games*' statement that UCL claims do not *always* fail when the
22 underlying antitrust claim fails, but they disregard the distinction between *Epic Games* and this
23 case that Hermès identified, Mot. to Dismiss FAC 14, Dkt. 38.  Nor do they explain how they
24 could satisfy the UCL's balancing test if they failed to show consumer harm for their Sherman
25 Act claims.  *See, e.g.*, *Little v. Pac. Seafood Procurement, LLC*, 2024 WL 2305603, *5 (N.D.
26 Cal. May 21, 2024); *Lambrix v. Tesla, Inc.*, 2023 WL 8265916, *9 (N.D. Cal. Nov. 17, 2023).

**III.     CONCLUSION**

28     Hermès respectfully requests dismissal of Plaintiffs' Amended Complaint with prejudice.

| | | |
|---|---|---|
| 1 | Dated: September 9, 2024 | Respectfully submitted, |
| 2 | | LATHAM & WATKINS LLP |
| 3 | | |
| 4 | | By    /s/ *Christopher S. Yates*  <br>         Christopher S. Yates |
| 5 | | Belinda S Lee <br> Ashley M. Bauer |
| 6 | | 505 Montgomery Street, Suite 2000 <br> San Francisco, CA  94111-6538 |
| 7 | | Telephone:  415.391.0600 <br> Facsimile:  415.395.8095 |
| 8 | | Email:   Chris.Yates@lw.com <br>              Belinda.Lee@lw.com <br>              Ashley.Bauer@lw.com |
| 9 | | |
| 10 | | Peter E. Davis <br> 555 Eleventh Street, NW, Suite 1000 |
| 11 | | Washington, DC  20004-1304 <br> Telephone:  202.637.2200 |
| 12 | | Facsimile:  202.637.2201 <br> Email:  Peter.Davis@lw.com |
| 13 | | Attorneys for Defendants |
| 14 | | *Hermès of Paris, Inc. and* <br> *Hermès International* |