LATHAM & WATKINS LLP
  Christopher S. Yates (SBN 161273)
  Belinda S Lee (SBN 199635)
  Ashley M. Bauer (SBN 231626)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Email:  Chris.Yates@lw.com
        Belinda.Lee@lw.com
        Ashley.Bauer@lw.com

Attorneys for Defendants
*Hermès of Paris, Inc. and Hermès International*

Additional Counsel Listed on Signature Pages

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TINA CAVALLERI, an individual; MARK GLINOGA, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HERMÈS INTERNATIONAL, a French corporation and HERMÈS OF PARIS, INC., a New York corporation, and DOES 1 through 10; inclusive,<br><br>Defendants. | Case No. 3:24-cv-01707-JD<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:   September 19, 2024<br>Time:   10:00 AM<br>Place:  Courtroom 11, 19th Floor<br>Judge:  Hon. James Donato |

## I. INTRODUCTION

Pursuant to Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California, this Court's Standing Order for Civil Cases, and this Court's Order of June 13, 2024 (ECF No. 37), counsel for Plaintiffs Tina Cavalleri, Mark Glinoga, Mengyao Yang and counsel for Defendants Hermès of Paris, Inc. and Hermès International ("Hermès") met and conferred on August 28, 2024 regarding certain issues and respectfully submit this Joint Case Management Statement in advance of the initial case management conference on September 19, 2024, at 10:00 a.m.

### A. Jurisdiction and Service

**Subject Matter Jurisdiction.** Plaintiffs allege that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (state law) because this case arises under the Sherman Act 15 U.S.C. § 2 and the state law claims form part of the same case or controversy.

**Personal Jurisdiction and Venue.** Defendants do not contest personal jurisdiction or venue.

**Service.** Hermès of Paris, Inc. was served with the summons and complaint on March 25, 2024. ECF No. 11. Hermès International waived service of the summons and complaint on May 8, 2024. Plaintiffs filed the waiver of service the same day. ECF No. 24. There are no other parties remaining to be served.

### B. Facts

#### Plaintiff's Statement

The Birkin bag is an exclusive Hermès design, manufactured by Defendants. Each Birkin is handcrafted from the finest leather by experienced artisans in France. The price of a Birkin bag ranges from thousands of dollars to over one hundred thousand dollars. Defendants engage in "limited production" of the Birkin bag.

Plaintiffs allege that Defendants have considerable market power because of the high demand and limited production of the Birkin bag. Plaintiffs allege that Defendants have

implemented a scheme to exploit this market power by requiring consumers to purchase other ancillary products from Defendants such as shoes, scarves, belts and jewelry.

Plaintiffs allege that Defendants carry this scheme, by among other things, paying sales associates a 3% commission on ancillary goods, and paying no commission whatsoever on the Birkin bag. Defendants direct their sales associates to identify consumers who are "qualified" to purchase Birkin bags, and to only offer the Birkin bag to consumers who have established a sufficient purchase history.

### Hermès' Statement

Hermès is a world-famous designer and producer of high-quality items such as handbags, jewelry, fashion accessories, and home furnishings.  Hermès sells those items through retail locations in the United States and also maintains a website through which it sells some, but not all of its products.  In the nearly two centuries since its founding, Hermès has developed a reputation for artisan-crafted products and built a loyal following.

This case focuses on two of the many items that Hermès sells—handbags known as the Birkin and Kelly handbags.  Each Birkin and Kelly handbag is handcrafted from the finest leather by experienced artisans in France.  Due to the intensive labor and high-quality materials required, these handbags are difficult and costly to produce, which leads to supply limitations.

Plaintiffs allege that Hermès unlawfully conditions the purchase of Birkin and/or Kelly handbags on the purchase of all other Hermès products ("Ancillary Products"), including but not limited to jewelry, scarves, and home goods.  In their initial complaint, Plaintiffs claimed Hermès has market power in the market for "the Birkin Handbag" and uses its economic power to coerce customers into buying other Hermès products.  ECF No. 1.  Rather than oppose a first motion to dismiss, Plaintiffs filed the First Amended Class Action Complaint ("FAC," ECF No. 33), which redefines the relevant market as the "market and/or submarket of luxury handbags in the United States" and alleges Hermès' dominance in this broader market, but does not specify its market share.  Plaintiffs acknowledge the robust resale value of Birkin handbags and the competitive nature of the luxury market, where Hermès competes with numerous other brands

like Chanel, Gucci, Prada, and Louis Vuitton. Plaintiffs claim Hermès forces consumers to buy other products to qualify for a Birkin, which inflates costs and leads to supracompetitive profits.

Hermès disputes Plaintiffs' conclusory allegations regarding market definitions, market power, and its sales practices.

### C. Legal Issues

**<u>Plaintiffs' Statement</u>**

The facts in this case show a classic unlawful tying scheme. "Tying can be either a *per se* violation or a violation under the rule of reason." *Cty. of Tuolumne v. Sonora Cty. Hosp.*, 236 F.3d 1148, 1157 (9th Cir. 2001). "To establish that a tying arrangement is illegal *per se,* plaintiffs must prove three elements: (1) a tie between two separate products or services sold in relevant markets; (2) sufficient economic power in the tying product market to affect the tied market; and (3) an effect on a not-insubstantial volume of commerce in the tied product market." *Cnty. of Tuolumne*, supra, 236 F.3d at 1157–58.

**Issue One: Is Defendants' Tying Scheme Per Se Unlawful?**

A critical factor in applying *per se* tying rules is whether Defendants are on both ends of the tying and tied transaction, *i.e.*, "whether the defendant had an economic interest in the tied product." *Cty. of Tuolumne*, *supra*, 236 F.3d at 1158 (9th Cir. 2001).

"In examining a tie-in claim, this Court must consider whether the seller of the tying product . . . harbors an economic interest in the tied product." *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1454 (9th Cir. 1983). The justification for *per se* treatment where a seller transacts in both tying and tied products is "that the seller's intent is to engage in such anticompetitive business practices." *CTUnify, Inc. v. Nortel Networks, Inc.*, 115 F.App'x 831, 834 (6th Cir. 2004); *see also id.* at 835 (where seller is on both ends of tied transactions, "the tying agreement is aimed at suppressing competition"). The Ninth Circuit refers to the "economic interest" element as a "fourth element" for *per se* unlawful tying. *Cty. of Tuolumne*, *supra*, 236 F.3d at 1158.

In this case, Defendants are the sellers of *both* the tying and tied products. FAC, ¶20, 37-38. Thus, this case represents "the usual tying arrangement, [where] it is not difficult to establish

the economic interest element because the seller of the tying product is also the seller of the tied product." *CTUnify, supra*, 115 F. App'x at 834-35.  Thus, the economic interest element is satisfied here.  "A tying agreement is a *per se* violation of the antitrust laws when [among other elements] . . . the seller of the tying product is shown to have an economic interest in the sale of the tied product." *Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, No. C 04-02266 JW, 2008 WL 11387062, at *9 (N.D. Cal. Sept. 25, 2008).

**Issue Two: Is Defendants' Tying Scheme Unlawful Under the Rule of Reason?**

The Ninth Circuit has established that conduct falling short of the requirements for the application of the per se rule may still constitute a violation under the rule of reason. *Phonetele, Inc. v. Am. Tel. & Tel. Co.*, 664 F.2d 716, 738 (9th Cir. 1981).

Under the rule of reason, courts assess a restraint's actual effect on competition through a fact-specific examination of market power and structure. *Ohio v. American Express Co.*, 585 U.S. 529, 541 (2018) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)).  The goal is to distinguish harmful, anticompetitive restraints from those that stimulate competition and benefit consumers. *Ohio v. Am. Express*, *supra*, 585 U.S. at 541 (*citing Leegin Creative Leather Products, Inc. v. PSKS, Inc.,* 551 U.S. 877, 886 (2007)).  A plaintiff may allege this anticompetitive effect directly or indirectly. *Id.*, 585 U.S. at 542.

"[E]vidence of **restricted output and supracompetitive prices** … is direct proof of the injury to competition which a competitor with market power may inflict, and thus, of the actual exercise of market power." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) (emphasis added).  Direct evidence of anticompetitive effects includes "proof of actual detrimental effects [on competition], … such as **reduced output, increased prices**, or decreased quality in the relevant market." *Ohio v. Am. Express*, *supra*, 585 U.S. at 542 (ellipsis in original; internal quotations and citations omitted; emphasis added).  Plaintiffs allege restricted output and supracompetitive prices and, as such, allege facts constituting direct evidence of anticompetitive conduct.

Plaintiffs allege that Defendants, in connection with their tying scheme, have reduced output for the Birkin bag. FAC, ¶26 (Defendants engage in "limited production" of the Birkin

bag); and FAC, ¶36 ("low supply of Birkin handbags").  Plaintiffs additionally allege that Defendants have used their market power to engage in "a deceptive and manipulative pricing scheme, artificially inflating the true cost of their Birkin handbags and reaping supracompetitive profits." FAC, ¶32.

To plead an unlawful tying claim under the rule of reason based on "[i]ndirect evidence involves 'proof of market power plus some evidence that the challenged restraint harms competition.'" *Ohio v. Am. Express*, *supra*, 585 U.S. at 542.  "There is no requirement that these elements of an antitrust claim be pled with specificity." *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008).  "[B]oth market definition and market power are essentially questions of fact." *Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 363 (9th Cir. 1988).

Where the seller has "appreciable economic power" in the tying product, that is sufficient market power. *Eastman-Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 462 (1992), *citing Fortner Enterprises, Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 503 (1969). Market power can be alleged based on a particularly unique and desirable product.  Market power exists "[w]hen the seller's share of the market is high, *or* when the seller offers a unique product that competitors are not able to offer." *Jefferson Parish*, *supra*, 466 U.S. at 17 (emphasis added).  "Market power in the tying product may also be shown by product uniqueness or desirability." *Moore*, *supra*, 550 F.2d at 1215.  "'[T]he crucial economic power may be inferred from the tying product's desirability to consumers or from uniqueness in its attributes.'" *Fortner Enterprises, supra*, 394 U.S. at 502-03 (internal citations omitted).

In addition to Defendants having market power, the tying practices also harm competition. Injury to competition occurs when consumers forgo purchases with competitors. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1203 (9th Cir. 2012), citing *U.S. v. Loew's, Inc.*, 371 U.S. 38 (1962)

**Issue Three: Is Defendants' Tying Scheme Unlawful Under the Cartwright Act?**

To plead a tying claim under section 16727 (as distinct from a claim under Business & Professions Code section 16720), Plaintiff must plead (1) a tying agreement; (2) sufficient

economic power in the tying market *or* anticompetitive effects in the tied market; and (3) pecuniary loss. *Morrison v. Viacom, Inc.*, 66 Cal.App.4th 534, 541-42 (1998). Thus, Section 16727 of the Cartwright Act requires only that economic power or anticompetitive effect be pled, whereas the Sherman Act requires both. To plead anti competitive effects, appellants must allege facts to show that "'a total amount of business, substantial enough in terms of dollar-volume so as not to be merely de minimis, is foreclosed to competitors by the tie.'" *Morrison, supra,* 66 Cal.App.4th at 542 (internal citations omitted).

**Issue Four: Does Defendants' Tying Scheme Violate the UCL?**

California Business & Professions Code section 17200 (the Unfair Competition Law or UCL) prohibits unlawful, deceptive and unfair business practices.

The UCL's "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Abbott Laboratories v. Superior Court*, 9 Cal.5th 642, 651 (2020) (citing *Kasky v. Nike, Inc.,* 27 Cal.4th 939, 949 (2002)).

With respect to the unlawful prong, "[b]y proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Abbott Labs*, 9 Cal.5th at 651 (internal citation omitted). Therefore, if Defendants' conduct violates the Sherman Act or the Cartwright Act, it violates the unlawful prong of the UCL.

A court determines whether a business practice is unfair to consumers under the UCL by applying the balancing test which 'weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Epic Games*, *supra*, 67 F.4th at 1000

**Hermès' Statement**

Hermès denies that it violated any laws. Plaintiffs have not stated a claim under Section 2 of the Sherman Act or California law, this case is not maintainable as a class action, and Plaintiffs are not entitled to any relief.

Hermès filed a Motion to Dismiss (ECF No. 38) on the grounds that Plaintiffs do not allege sufficient facts to state a claim for violation of Section 2 of the Sherman Act:

**1.     No Monopoly Power:**  Plaintiffs fail to allege that Hermès possesses monopoly power in the relevant market.  The Ninth Circuit requires a showing of a dominant market share, typically upwards of 60%, to infer monopoly power. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995).

**2.     No Willful Maintenance or Acquisition of Monopoly Power**:  Plaintiffs do not allege any facts showing that Hermès willfully acquired or maintained monopoly power through anticompetitive conduct.  The success of Hermès' brand and the desirability of its products do not constitute anticompetitive behavior. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 998 (9th Cir. 2023); Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 781 (May 2024, online).  This failure to plead exclusionary conduct is fatal to Plaintiffs' antitrust claims.

**3.     No Viable Tied Product Market**:  Plaintiffs do not define a viable tied product market or effects in any viable tied product market. *See, e.g., Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 851 (N.D. Cal. 2021); *accord Truck-Rail Handling, Inc. v. Burlington N. & Santa Fe Ry. Co.*, 244 F. App'x 130, 131–32 (9th Cir. 2007).  Their "Ancillary Products" market—comprising jewelry, shoes, and home goods—is economically implausible. *See Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 955 (9th Cir. 2023).  But even if each category of Ancillary Products were considered its own market, Plaintiffs fail to allege substantial effects on competition in each of these markets. *See In re Qualcomm Antitrust Litig.*, No. 17-md-02773, 2023 WL 121983, at *16 (N.D. Cal. Jan. 6, 2023); *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 995 (N.D. Cal. 2010).

**4.     No Antitrust Injury:**  Plaintiffs' alleged harms (*e.g.*, buying unwanted Ancillary Products and being denied the opportunity to resell Birkin handbags at a profit) are not antitrust injuries.  Plaintiffs must, but did not, demonstrate harm to competition in the tied product market(s). *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1089 (9th Cir. 2009); *Somers v. Apple, Inc.*, 729 F.3d 953, 963–64 & n.5 (9th Cir. 2013)

**5.     State Law:**  Plaintiffs' state law claims under the California Cartwright Act and the California Unfair Competition Law ("UCL") fail for similar reasons.  They do not allege

sufficient facts to show market power, substantial effects in a viable tied product market, or antitrust injury. *Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 541–42 (Cal. Ct. App. 1998); *Ahn v. Stewart Title Guar. Co.*, 93 Cal. App. 5th 168, 178–81 (Cal. Ct. App. 2023). The UCL claims, whether under the "unlawful" or "unfairness" prong, are not supported by any allegations in the Amended Complaint. *Epic Games*, 67 F.4th at 1000; *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1240 (Cal. Ct. App. 2007).

Hermès seeks dismissal of Plaintiffs' claims with prejudice. Amendment would be futile.

### D.  Motions

**Motions to Dismiss.** Plaintiffs' original complaint was filed on March 19, 2024. ECF No. 1. Hermès filed a motion to dismiss on May 9, 2024. ECF No. 29. Rather than oppose Hermès' first motion to dismiss, Plaintiffs filed a first amended complaint ("Plaintiffs' FAC") on May 30, 2024. ECF No. 33.

Hermès filed a Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion to Dismiss Plaintiffs' FAC") on July 2, 2024. ECF No. 38. Hermès' Motion to Dismiss Plaintiffs' FAC, if granted, would dispose of Plaintiffs' entire case. Plaintiffs' opposition brief was filed on August 16, 2024 (ECF No. 39), and Hermès' reply brief was filed on September 9, 2024. ECF No. 44. Hermès' Motion to Dismiss Plaintiffs' FAC is noticed for hearing on September 19, 2024 at 10:00 am.

**Extension of Deadline to Respond to Complaint.** The Parties filed a Stipulation and Proposed Order to Extend Motion to Dismiss Briefing Schedule, to Continue the Case Management Conference and Waiver of Service of Summons on May 8, 2024. ECF No. 23. In this Stipulation, the Parties agreed to a "discovery stay until the Court Decides on the Defendants' Motion to Dismiss." *Id.* The Court granted the Parties' Request on May 15, 2024, expressly entering the agreed discovery stay and setting a case management conference for September 19, 2024. ECF No. 32 ("Discovery is stayed pending resolution of Hermès' motion to dismiss").

After Hermès moved to dismiss the original complaint, Plaintiffs filed the FAC on May 30, 2024. ECF No. 33. On June 10, 2024, the Parties filed a Stipulation and Proposed Order to

Extend Deadlines, Set Briefing Schedule, and Continue the Case Management Conference. ECF No. 36. On June 13, 2024, the Court granted the briefing schedule on the motion to dismiss but did not continue the Case Management Conference, which remains set for September 19, 2024. ECF No. 37. The Court's June 13, 2024 Order did not lift the discovery stay.

**Motion for Class Certification.** If Plaintiffs' FAC survives the pending motion to dismiss, Plaintiffs anticipate filing a motion for class certification and Hermès anticipates opposing the motion.

**Motion for Summary Judgment.** In the event any of Plaintiffs' case survives the pleading stage, Hermès anticipates moving for summary judgment. Plaintiffs plan to oppose.

### E.   Amendment of Pleadings

Plaintiffs' original complaint was filed on March 19, 2024. ECF No. 1. Hermès filed a motion to dismiss on May 9, 2024. ECF No. 29. Plaintiffs chose not to oppose, and instead filed their FAC on May 30, 2024. ECF No. 33. Hermès filed the Motion to Dismiss Plaintiffs' FAC on July 2, 2024. ECF No. 38.

In their opposition to the Motion to Dismiss Plaintiffs' FAC, Plaintiffs sought leave to amend Plaintiffs' FAC to add a Section 1 claim. ECF No. 39 at 15.

Hermès opposes Plaintiffs' request for leave to amend on the grounds that amendment would be futile. ECF No. 44 at 2-3. Hermès contends that Plaintiffs' entire case is premised on the incorrect, and easily disproven, assumption that customers are required to purchase "ancillary products" in order to purchase a Birkin or a Kelly handbag. But, even if that allegation were true (which it is not), Hermès argues that Plaintiffs' legal theory is unavailing because Plaintiffs cannot state a tying claim on those facts under Section 1 or Section 2 of the Sherman Act and, therefore, amendment is futile.

### F.   Evidence Preservation

The Parties certify that they have reviewed this Court's Guidelines Relating to the Discovery of Electronically Stored Information, as well as the Northern District of California's Checklist for ESI Meet and Confer, are aware of their obligations, and have taken reasonable steps to preserve potentially relevant evidence. The Parties confirm that they have met and

conferred concerning these obligations. The Parties agree that March 19, 2020 is a reasonable starting point (*i.e.*, beginning date) for evidence preservation.

### G.   Disclosures

Discovery is stayed per the Court's May 15, 2024 order. ECF No. 32 ("Discovery is stayed pending resolution of Hermès' motion to dismiss."). Therefore, the Parties have not exchanged initial disclosures. The Parties agree to serve initial disclosures within two weeks of the Court's order on Hermès' Motion to Dismiss Plaintiffs' FAC (ECF No. 38), assuming the FAC survives the motion to dismiss and the discovery stay is lifted.

#### Plaintiffs' Position

The Court ordered discovery stayed pending resolution of Defendants' motion to dismiss. ECF No. 32. However, the Court also ordered that the Initial Case Management Conference occur on the same day as the hearing on the motion to dismiss. ECF No. 37. Under Rule 26(f)(1) the parties are required to hold the Rule 26(f) conference no later than 21 days prior to the Scheduling Conference. As such, regardless of the discovery stay, Plaintiffs were ready and willing to hold the Rule 26(f) conference on August 28, 2024 when the parties met and conferred.

#### Hermès' Position

Initial disclosures are stayed under the Court's May 15, 2024 order staying discovery. ECF No. 32 ("Discovery is stayed pending resolution of Hermès' motion to dismiss."). In light of the discovery stay, during the August 28, 2024 meet and confer, Hermès objected to initial disclosures and reiterates its objection here. *See* Fed. R. Civ. P. 26(a)(1)(C). A discovery stay remains necessary here and initial disclosures would be premature in light of Hermès' pending Motion to Dismiss Plaintiffs' FAC because the Court may ultimately dismiss this entire litigation.

### H.   Discovery

Discovery is stayed per the Court's May 15, 2024 order. ECF No. 32 ("Discovery is stayed pending resolution of Hermès' motion to dismiss."). The Parties agreed on May 8, 2024 to hold a Rule 26(f) conference within two weeks of the Court's order on Hermès' motion to

dismiss. ECF No. 23. The Parties intend to discuss a proposed discovery plan and any proposed limitations or modifications of the discovery rules at the 26(f) conference. No discovery has been taken to date. The Parties have not identified any discovery disputes at this time.

### Plaintiffs' Position

That agreement assumed the Scheduling Conference would occur at a date after the hearing on the motion to dismiss. Plaintiffs were willing and ready to hold the Rule26(f0 conference on August 28, 2024, 21 days prior to the Scheduling Conference as required bv Rule 26(f)(1).

### Hermès' Position

In light of the discovery stay (ECF No. 32) and the Parties' prior agreement to hold a Rule 26(f) conference within two weeks of the Court's order on Hermès' motion to dismiss (ECF No. 23), Hermès objected to holding a Rule 26(f) conference on the August 28, 2024 meet and confer call. During the August 28, 2024 meet-and-confer, Plaintiffs took the position that the Court's June 13, 2024 Order (ECF No. 37) declining to move this initial case management conference somehow lifted the discovery stay because it did not change the deadline for the September 19, 2024 initial case management conference. Hermès disagrees and respectfully asks that the Court maintain the discovery stay in place pending resolution of its Motion to Dismiss Plaintiffs' FAC. Discovery should be stayed because the Motion to Dismiss Plaintiffs' FAC would, if granted, dispose of Plaintiffs' FAC in its entirety and no discovery is necessary to decide the Motion to Dismiss Plaintiffs' FAC. *In re Nexus 6p Prods. Liab. Litig.*, No. 3:20-cv-227, 2017 WL 3581188, at *1 (N.D. Cal. Aug. 18, 2017).

**I.    Class Actions**

This case is a putative class action. Counsel for both sides have reviewed the Procedural Guidance for Class Action Settlements.

### Plaintiffs' Position

Plaintiffs believe this case is appropriate for class certification and will file a motion.

**Hermès' Position**

Plaintiffs cannot satisfy the requirements set forth in Fed. R. Civ. P. 23, and Hermès anticipates opposing any motion for class certification.

**J.    Related Cases**

None.

**K.    Relief**

**Plaintiffs' Position**

Plaintiffs will seek damages including treble damages under the Sherman Act and Cartwright Act, as well as injunctive relief under both statutes. Plaintiffs will also seek restitution and injunctive relief under the Unfair Competition Law.

**Hermès' Position**

As noted above, Hermès disputes that Plaintiffs are entitled to any relief and reserves all of its defenses to liability and damages.

**L.    Settlement and ADR**

No settlement discussions have taken place. In compliance with ADR L.R. 3-5, the Parties discussed ADR at their August 28, 2024 meet-and-confer. The Parties have not agreed to engage in ADR at this time, but are open to engaging in ADR in the future if the FAC survives the pending motion to dismiss.

**M.    Other References:**

None.

**N.    Narrowing of Issues**

The Parties will consider issues that can be narrowed by agreement or by motion, as well as potential means to expedite the presentation of evidence at trial. The Parties have no such topics to present for the Court's consideration at this time.

**O.    Scheduling**

The Parties agree to the following pre-trial deadlines listed in the "Proposed Case Schedule" chart below with one exception. The Parties disagree regarding the fact discovery cut-off. Hermès proposes cutting off fact discovery in January 2026 (four months after Plaintiffs

file their motion for class certification) and Plaintiffs propose cutting off fact discovery in June 2026 (nine months after Plaintiffs file their motion for class certification).  The Parties would like to discuss this issue with the Court at the Case Management Conference.

| Proposed Case Schedule | | |
|---|---|---|
| **Event** | **Proposed Date**[1] | **Notes regarding Interval** |
| Initial Case Management Conference | September 19, 2024 | |
| Deadline to Amend Pleadings/Join Other Parties | November 18, 2024[2] | 60 days after Initial Case Management Conference |
| Rule 26(f) Conference | Within two weeks of the Court's order on Hermès' Motion to Dismiss Plaintiffs' FAC (ECF No. 38), assuming the FAC survives the motion to dismiss, as was agreed to by the parties. | |
| Initial Disclosures | Within two weeks of the Court's order on Hermès' Motion to Dismiss Plaintiffs' FAC (ECF No. 38), assuming the FAC survives the motion to dismiss, as was agreed to by the parties. | |
| Deadline for Plaintiffs' class certification motion and supporting expert disclosures | September 19, 2025 | One year after Initial Case Management Conference |

---

[1] The agreed proposed dates assume a ruling on the Motion to Dismiss Plaintiffs' FAC within approximately three and a half months of the September 19, 2024 hearing (*i.e.*, by December 31, 2024) and that all discovery remains stayed until that ruling.  The agreed proposed dates may need to be adjusted depending on how the Court rules on the Motion to Dismiss.

**2 See ¶ 15 of Civil Standing Order**

JOINT CASE MANAGEMENT STATEMENT
CASE NO. 3:24-CV-01707-JD
13

| Proposed Case Schedule | | |
|---|---|---|
| **Event** | **Proposed Date[1]** | **Notes regarding Interval** |
| Deadline to exchange expert backup materials for class certification motion | September 22, 2025 | 3 days after class certification motion is filed |
| Deadline for Defendant's class certification opposition and supporting expert disclosures | November 14, 2025 | 8 weeks after class certification motion is filed |
| Deadline to exchange expert backup materials for class certification opposition | November 17, 2025 | 3 days after class certification opposition is filed |
| Deadline for Plaintiffs' class certification reply | December 12, 2025 | 4 weeks after class certification motion is filed |
| Hearing on class certification motion | To be set by the Court[3] | |
| ***Hermès' proposed fact discovery cutoff*** | ***January 17, 2026*** | ***4 months after class certification motion filed*** |
| Deadline for first ADR session | June 5, 2026 | |
| ***Plaintiffs' proposed fact discovery cutoff*** | ***June 17, 2026*** | ***9 months after class certification motion filed*** |
| Deadline for Parties to serve disclosures and written reports under Rule 26(a)(2) on issues where that party bears the initial burden of proof | August 28, 2026[4] | Approximately 6 months and 3 weeks after close of fact discovery |
| Deadline to exchange expert backup materials | August 31, 2026 | 3 days after expert report is served |
| Deadline for Parties to serve rebuttal disclosures and written reports under Rule 26(a)(2) | November 6, 2026 | 10 weeks after opening merits expert reports |

---

[3] For purposes of the remaining case schedule, the Parties assume that the class certification hearing will take place in approximately February/March 2026.

[4] This date assumes the Court rules on class certification by the end of June 2026.

| Proposed Case Schedule | | |
|---|---|---|
| **Event** | **Proposed Date[1]** | **Notes regarding Interval** |
| Deadline to exchange expert backup materials | November 9, 2026 | 3 days after rebuttal expert report is served |
| Close of expert discovery | December 11, 2026 | One month after rebuttal expert reports |
| Deadline to file dispositive[5] and *Daubert* motions | February 12, 2027 | 9 weeks after close of expert discovery |
| Deadline to file oppositions to dispositive and *Daubert* motions | April 16, 2027 | 9 weeks after dispositive motions are filed |
| Deadline to file replies in support of dispositive and *Daubert* motions | June 4, 2027 | 7 weeks after oppositions are filed |
| Hearing on dispositive and *Daubert* motions | To be set by the Court | |
| Meet and Confer among Lead Trial Counsel regarding Preparation of Pretrial Submissions | 30 days before Pretrial Submissions[6] | 30 days before Pretrial Submissions |
| Motions in Limine | 14 days before Pretrial Submissions[7] | 14 days before Pretrial Submissions |
| Pretrial Submissions | 14 days before Final Pretrial Conference[8] | 14 days before Final Pretrial Conference |
| Final Pretrial Conference | 19 days before trial[9] | 19 days before trial |
| Jury Trial | To be set by the Court | |

---

[5] *See* ¶ 41 of this Court's Civil Standing Order for scheduling guidance in the event of cross-motions for summary judgment.

[6] *See* ¶ 1 of this Court's Standing Order for Civil Jury Trials Before Judge James Donato.

[7] *See* ¶ 5 of this Court's Standing Order for Civil Jury Trials Before Judge James Donato.

[8] *See* ¶ 1 of this Court's Standing Order for Civil Jury Trials Before Judge James Donato.

[9] *See* ¶ 1 of this Court's Standing Order for Civil Jury Trials Before Judge James Donato.

**P.     Trial**

Plaintiffs request a jury trial.  The Parties recognize that the scope of any trial may depend, in part, on the Court's rulings on class certification and dispositive motions.  The Parties therefore believe that it is premature to estimate the time required for any trial at this time.

**Q.     Disclosure of Non-party Interested Entities or Persons**

Defendants filed their certifications pursuant to Civil L.R. 3-15.  ECF Nos. 21, 31. Plaintiffs filed their certifications pursuant to Civil L.R. 3-15. ECF No. 15.

**R.     Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**S.     Other Matters**

The Parties have no other issues to raise with the Court at this time.

Dated:  September 12, 2024                    Respectfully submitted,

LATHAM & WATKINS LLP

By      /s/ *Belinda S Lee*
Christopher S. Yates
Belinda S Lee
Ashley M. Bauer
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
Email:   Chris.Yates@lw.com
              Belinda.Lee@lw.com
              Ashley.Bauer@lw.com

Peter E. Davis
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone:  202.637.2200
Facsimile:  202.637.2201
Email:   Peter.Davis@lw.com

*Attorneys for Defendants*
*Hermès of Paris, Inc. and*
*Hermès International*

1  
2  
3  HAFFNER LAW

By  /s/ *Thomas A. Segal*
    Joshua H. Haffner
    Alfredo Torrijos
    Vahan Mikayelyan

SETAREH LAW GROUP
Shaun C. Setareh
Thomas A. Segal

*Attorneys for Plaintiffs and the Proposed Class*

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing *Joint Case Management Statement*. Pursuant to L.R. 5-1(i)(3) regarding signatures, I, Belinda S Lee, attest that concurrence in the filing of this document has been obtained.

Dated: September 12, 2024

/s/ Belinda S Lee
Belinda S Lee