1   HAFFNER LAW PC
        Joshua H. Haffner, SBN 188652
2       Alfredo Torrijos, SBN 222458
        Vahan Mikayelyan, SBN 337023
3   15260 Ventura Blvd., Suite 1520
    Sherman Oaks, California 91403
4   Telephone:  213.514.568
    Facsimile:  213.514.5682
5   Email:  jhh@haffnerlawyers.com
             at@haffnerlawyers.com
6            vh@haffnerlawyers.com

7   SETAREH LAW GROUP
        Shaun C. Setareh, SBN 204514
8       Thomas A. Segal, SBN 222791
    9665 Wilshire Blvd., Suite 430
9   Beverly Hills, California 90212
    Telephone:  310.888.777
10  Facsimile:  310.888.0109
    Email:  shaun@setarehlaw.com
11          thomas@setarehlaw.com

12  *Attorneys for Plaintiffs*
    *and the Proposed Class*
13

14                       UNITED STATES DISTRICT COURT
15
                        NORTHERN DISTRICT OF CALIFORNIA
16
                             SAN FRANCISCO DIVISION
17

18  TINA CAVALLERI, an individual; MARK          CASE NO. 3:24-cv-01707-JD
    GLINOGA, an individual; MENGYAO
19  YANG, an individual; on behalf of            **PLAINTIFF'S NOTICE OF ADDITIONAL
    themselves and all others similarly situated, AUTHORITY PURSUANT TO LOCAL
20                                                RULE 7-3(D)(2) AND NINTH CIRCUIT
                    Plaintiffs,                   RULES ON FEDERAL RULES OF
21                                                APPELLATE PROCEDURE 36-3**
            vs.
22                                                Hon. James Donato
    HERMÈS INTERNATIONAL, a French
23  corporation and HERMÈS OF PARIS, INC.,
    a New York corporation, and DOES 1
24  through 10; inclusive,
25                  Defendants.
26

27

28

1

2          TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that Pursuant to Civil Local Rule 7-3(D)(2) and Ninth Circuit

4   Rules On Federal Rules Of Appellate Procedure 36-3 Plaintiff submits as additional authority a

5   decision that did not exist when Plaintiff's Opposition to Defendant's Motion to Dismiss First

6   Amended Class Action Complaint was filed.  Said authority is attached as Exhibit 1 for the

7   Court's convenience:  *Thomas A. Shields et al. v. World Aquatics et al.,* 2024 WL 4211477 (9th

8   Cir. Sept. 17, 2024).

9

10  Dated:  September 18, 2024                    **HAFFNER LAW PC**

11                                               By _____/s/ *Vahan Mikayelyan*_____
                                                     Joshua H. Haffner
12                                                   Alfredo Torrijos
                                                     Vahan Mikayelyan
13                                                   15260 Ventura Blvd., Suite 1520
                                                     Sherman Oaks, California  91403
14                                                   Telephone: 213.514.5681
                                                     Facsimile:  213.514.5682
15                                                   Email: jff@haffnerlawyers.com
                                                            at@haffnerlawyers.com
16                                                          vh@haffnerlawyers.com

17                                                   Shaun C. Setareh
                                                     Thomas A. Segal
18                                                   **SETAREH LAW GROUP**
                                                     9665 Wilshire Blvd., Suite 430
19                                                   Beverly Hills, California  90212
                                                     Telephone:  310.888.7771
20                                                   Facsimile:  310.888.0109
                                                     Email: shaun@setarehlaw.com
21                                                          thomas@setarehlaw.com

22                                                   *Attorneys for Plaintiffs and*
                                                     *the Proposed Class*
23

24

25

26

27

28

1

# EXHIBIT 1

2024 WL 4211477
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States Court of Appeals, Ninth Circuit.

THOMAS A. SHIELDS; KATINKA HOSSZÚ, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,
v.
**WORLD AQUATICS**, Defendant-Appellee.
INTERNATIONAL SWIMMING LEAGUE, LTD., Plaintiff-Appellant,
v.
**WORLD AQUATICS**, Defendant-Appellee.

No. 23-15092, No. 23-15156
|
Filed September 17, 2024
|
Argued and Submitted February 16, 2024 San Francisco, California

D.C. No. 3:18-cv-07393-JSC

D.C. No. 3:18-cv-07394-JSC

Appeal from the United States District Court for the Northern District of California Jacqueline Scott Corley, District Judge, Presiding

Before: MILLER, BADE, and VANDYKE, Circuit Judges.

MEMORANDUM*

**\*1** Plaintiffs-Appellants, a group of professional swimmers and the International Swimming League (ISL), appeal the district court's grant of summary judgment to Defendant-Appellee Fédération Internationale de Natation (FINA) on their claims under section 1 of the Sherman Act. (Since the district court's decision, FINA has changed its legal name to World Aquatics.) The swimmer plaintiffs also appeal the district court's denial of class certification. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

"We review a grant of summary judgment *de novo* and

evaluate the evidence most favorably to the nonmoving party to determine whether any genuine issues of material fact remain and whether the district court correctly applied the relevant substantive law." *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1432 (9th Cir. 1995). "We review a district court's denial of a motion to modify a scheduling order for abuse of discretion." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 982 (9th Cir. 2017). We review a district court's denial of class certification and "any particular underlying Rule 23 determination involving a discretionary determination" for abuse of discretion. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010).

Section 1 of the Sherman Act prohibits contracts, combinations, or conspiracies that unreasonably restrain trade. *Tanaka v. University of S. Cal.*, 252 F. 3d 1059, 1062 (9th Cir. 2001); *see* 15 U.S.C. § 1. Restraints can be unreasonable in one of three ways. "A small group of restraints are unreasonable *per se* because they always or almost always tend to restrict competition and decrease output." *Ohio v. American Express Co. (Amex)*, 585 U.S. 529, 540 (2018) (internal quotation and citation omitted). Most restraints are subject to the rule of reason, under which we "conduct a fact-specific assessment of 'market power and market structure ... to assess the [restraint]'s actual effect' on competition." *Id.* at 541 (alterations in original) (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)). When restraints are " 'not unambiguously in the per se category,' " but " 'require no more than cursory examination to establish that their principal or only effect is anticompetitive,' " *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1134 (9th Cir. 2011) (quoting 11 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1911a (2d ed. 2005)), we apply a "quick look," or truncated, rule of reason approach.

1. Plaintiffs have created a triable issue as to whether FINA's General Rule 4 constituted a per se unlawful group boycott by preventing member federations and swimmers from doing business with ISL without risking draconian sanctions. We apply the per se approach to an alleged boycott when "competitors enter into a horizontal agreement" with "no purpose other than disadvantaging the target," *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 820 (9th Cir. 2023), or when some or all of the following conditions are met: "(1) the defendant's restriction 'cut[s] off access to a supply, facility, or market necessary to enable the boycotted firm to compete'; (2) the defendant 'possesse[s] a dominant position in the relevant market'; and (3) the defendant's

restriction is 'not justified by plausible arguments that [it is] intended to enhance overall efficiency and make markets more competitive.' " *Id.* at 821 (alterations in original) (quoting *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 294 (1985)).

**\*2** Viewing the evidence in the light most favorable to the plaintiffs, a rational trier of fact could conclude that General Rule 4 had no purpose other than to disadvantage FINA's competitors. FINA admitted that General Rule 4 "has also been applied in the context of third parties that seek to ... replace FINA as the international governing body," and FINA executives discussed plans to thwart future ISL events by punishing member federations for engaging with unaffiliated organizations.

The district court reasoned that General Rule 4 "does not (and did not in 2018) prevent swimmers from participating in unauthorized events; it prevented and continues to prevent *member federations* from affiliating with ISL and other non-sanctioned entities." That is one interpretation of the evidence, but a jury could conclude otherwise and find that General Rule 4 cut off ISL's access to top-tier professional swimmers, an input necessary for ISL to compete. Before it was amended in 2019, General Rule 4 required member federations to "suspend[ ]" any "individual or group" that participated in an unsanctioned event "for a minimum period of one year, up to a maximum period of two years." The rule prohibited member federations from engaging with non-affiliated bodies and, more generally, the "exchange of competitors" with such bodies. While FINA never imposed sanctions on any athletes for participating in non-FINA events, plaintiffs point to ample evidence that FINA, national federations, and swimmers understood the rule to expose swimmers to suspensions—including from competing at the Olympics and World Championships—if they participated in events hosted by unaffiliated entities like ISL**.**

2. Plaintiffs have also created a triable dispute under the quick look standard, which requires showing that General Rule 4 imposed a "naked restraint on price and output." *National Collegiate Athletic Ass'n v. Board of Regents of Univ. of Okla.*, 468 U.S. 85, 110 (1984). A rational trier of fact could conclude that General Rule 4 reduced output in the market for swimming competitions by suppressing the number of competitions in 2018, and that it lowered prices in the market for swimmers' services by reducing the total pool of prize money and appearance fees.

The district court erred in concluding that a rule of reason analysis was necessary because courts lack experience with "the rules of a governing body for international and Olympic sports." It is well established that "the likelihood that horizontal price and output restrictions are anticompetitive is generally sufficient to justify application of the per se rule without inquiry into the special characteristics of a particular industry." *Board of Regents*, 468 U.S. at 100 n.21; *accord In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015).

Similarly, FINA argues that as with joint venture sports leagues, the rule of reason applies because FINA is "an athletic *governance* association" and General Rule 4 is a necessary "governance rule." It is true that sports leagues and joint venture restrictions are unique antitrust contexts that are generally analyzed under the rule of reason. *See Honey Bum*, 63 F.4th at 822 n.4; *National Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 88–91 (2021). As the district court recognized, however, FINA and its member federations are not a joint venture sports league, but an association of independent national federations. And the fact "[t]hat *some* restraints are necessary to create or maintain a league sport does not mean *all* 'aspects of elaborate interleague cooperation are.' " *Alston*, 594 U.S. at 90 (quoting *American Needle, Inc. v. National Football League*, 560 U.S. 183, 199 n.7 (2010)). A rational trier of fact could conclude that FINA can organize swimming competitions and maintain its calendar of events without restricting participation in non-affiliated events.

**\*3** 3. The district court did not abuse its discretion in denying plaintiffs' request to extend their merits expert report deadline. Once a district court enters a scheduling order setting a deadline for completing discovery, modifications are allowed only upon a showing of "good cause." Fed. R. Civ. P. 16(b)(4). "The central inquiry under Fed. R. Civ. P. 16(b)(4) is whether the requesting party was diligent in seeking the amendment." *DRK Photo*, 870 F.3d at 989. The district court was within its discretion to reject plaintiffs' post hoc argument that confusion arising from unrelated stipulations prevented them from meeting their deadline. The court reasonably determined that there was "no inference to be drawn from" plaintiffs' failure to meet their deadline "other than that [it] was an intentional decision."

4. Absent expert testimony, plaintiffs have not created a triable dispute regarding market definition. By omitting it from their opening brief, plaintiffs have forfeited any challenge to the district court's determination that they failed to define their proposed "market for the organization and promotion of top-tier international swimming competitions." *See Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("[A]rguments ... omitted from

the opening brief are deemed forfeited."). As to plaintiffs' proposed labor market for top-tier swimmers, undisputed facts render unreasonable their evidence substantiating the buyer side of this market. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). For example, top-tier professional swimmers, including the swimmer plaintiffs, frequently compete in a wide variety of non-affiliated events.

5. Even without a viable market definition, however, Plaintiffs have raised a triable dispute under the rule of reason through direct evidence of anticompetitive effects. "A plaintiff is not required to define a particular market for ... a rule of reason claim based on evidence of the actual anticompetitive impact of the challenged practice," *PLS.com, LLC v. National Ass'n of Realtors*, 32 F.4th 824, 838 (9th Cir. 2022), " 'such as reduced output, increased prices, or decreased quality in the relevant market,' " *id.* at 832 (quoting *Amex*, 585 U.S. at 542). Drawing all reasonable inferences in plaintiffs' favor, a rational trier of fact could conclude that by threatening to sanction swimmers, General Rule 4 prevented ISL from holding events in 2018 and thereby reduced output and wages.

6. The district court abused its discretion in refusing to certify the swimmer plaintiffs' proposed damages classes of swimmers who signed contracts to participate in ISL competitions in 2018 or participated in ISL events in 2019. Under Rule 23(a)(4), plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4). " 'Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.' " *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting 1 William B. Rubenstein et al., *Newberg on Class Actions* § 3.58 (5th ed. 2011)). Rule 23(b)(3) permits certification when "questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The district court abused its discretion in determining that representation was inadequate because swimmers "compete for shares of a fixed pot," meaning "any

damages formula will necessarily disfavor some swimmers." Any such conflict would not be fundamental because each plaintiff shares the same liability and damages theory: that General Rule 4 precluded opportunities to compete in ISL events and collect prize money. *See Blackie v. Barrack*, 524 F.2d 891, 909–10 (9th Cir. 1975). Plaintiffs proposed to apportion more money to swimmers with stronger past performance; "[m]ere speculation as to conflicts that may develop" from that methodology is not an appropriate reason to deny certification. *Social Servs. Union, Loc. 535, Serv. Emps. Int'l Union, AFL-CIO v. Santa Clara County*, 609 F.2d 944, 948 (9th Cir. 1979).

**\*4** Any arguments about adequacy of representation arising from the funding of this litigation by ISL's founder, Konstantin Grigorishin, have been forfeited by FINA because it did not address that issue in its answering brief. *See Jensen v. EXC, Inc.*, 82 F.4th 835, 847 (9th Cir. 2023).

The district court also abused its discretion in holding that a class action was not superior to individual actions because issues related to the allocation of damages—as well as the high total damages at stake—give each absent class member a strong interest in individually prosecuting an action. A class action is superior to other methods of litigation when it "will reduce litigation costs and promote greater efficiency" or when "no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). By failing to address superiority on appeal, FINA has forfeited any argument that a class action was not superior to other methods of litigation. *See Jensen*, 82 F.4th at 847. Even so, plaintiffs' damages model projected that most swimmers lost less than $10,000 in 2018 and 2019 due to cancelled ISL events, making the cost of individually prosecuting an antitrust action prohibitive. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013).

**REVERSED and REMANDED.**

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 4211477

---

**Footnotes**

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

---

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**THOMAS A. SHIELDS; KATINKA HOSSZÚ, on behalf of..., Not Reported in Fed....**

End of Document                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.