LATHAM & WATKINS LLP
   Christopher S. Yates (SBN 161273)
   Belinda S Lee (SBN 199635)
   Ashley M. Bauer (SBN 231626)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
Email:  Chris.Yates@lw.com
      Belinda.Lee@lw.com
      Ashley.Bauer@lw.com

LATHAM & WATKINS LLP
   Peter E. Davis (SBN 320256)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone:  202.637.2200
Facsimile: 202.637.2201
Email:   Peter.Davis@lw.com

Attorneys for Defendants
*Hermès of Paris, Inc. and Hermès International*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TINA CAVALLERI, an individual; MARK GLINOGA, an individual; MENGYAO YANG, an individual; on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>    vs.<br><br>HERMÈS INTERNATIONAL, a French corporation and HERMÈS OF PARIS, INC., a New York corporation, and DOES 1 through 10; inclusive,<br><br>      Defendants. | Case No. 3:24-cv-01707-JD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    January 30, 2025<br>Time:   10:00 AM<br>Place:  Courtroom 11, 19th Floor<br>Judge:  Hon. James Donato |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2
**TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:**

3        PLEASE TAKE NOTICE that on January 30, 2025, at 10:00 a.m., or as soon thereafter

4  as the matter may be heard by the Court, in the courtroom of the Honorable James Donato,

5  Courtroom 11, 19th Floor, United States District Court, located at 450 Golden Gate Avenue, San

6  Francisco, California, Defendants Hermès of Paris, Inc. and Hermès International ("collectively,

7  "Hermès") will and hereby do move the Court for an order dismissing Plaintiffs' Second

8  Amended Class Action Complaint, Dkt. 52 ("SAC"), on the ground that it fails to state a claim

9  under Federal Rule of Civil Procedure 12(b)(6).  This Motion is based on this Notice, the

10  supporting Memorandum of Points and Authorities, the declaration of Ashley M. Bauer and

11  accompanying exhibits, the complete files and records in this action, and any additional material

12  and arguments as may be considered in connection with the hearing.

13        Plaintiffs have already amended their complaint twice in response to Hermès' prior

14  motions to dismiss, and further amendment would be futile.  Defendants thus seek an order

15  pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing with prejudice Plaintiffs' claims

16  for failure to state a claim upon which relief can be granted.  *See, e.g.*, *Gadda v. State Bar of*

17  *Cal.*, 511 F.3d 933, 939 (9th Cir. 2007) (affirming dismissal with prejudice where there was no

18  "possible way that [plaintiff] could cure his complaint to survive dismissal upon amendment,"

19  and "allowing amendment would be futile").

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED ............................................. 2

III.  BACKGROUND ............................................................................................. 2

IV.   ARGUMENT .................................................................................................. 6

    A.    Plaintiffs Do Not Plead A Sherman Act Claim ................................... 6

        1.    The SAC Does Not Allege That Hermès Has Market Power
In Any Properly Defined Market ............................................... 7

        2.    The SAC Does Not Define A Viable Tied Product Market
In Which Competitive Effects Can Be Assessed ....................... 9

        3.    The SAC Does Not Plead Facts Showing Antitrust Injury ..................... 10

        4.    The SAC Does Not Plead Willful Maintenance Or
Acquisition Of Monopoly Power As Required By Section 2 ................. 12

    B.    Plaintiffs' State Law Claims Also Fail ................................................ 12

        1.    Plaintiffs Do Not State A Tying Claim Under The
Cartwright Act ........................................................................ 12

        2.    Plaintiffs' False Advertising, Fraud, And Negligent
Misrepresentation Claims Fail ................................................ 12

        3.    Plaintiffs Do Not State A Claim Under The UCL ................................. 14

V.    CONCLUSION .............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahn v. Stewart Title Guar. Co.*,
   93 Cal. App. 5th 168 (Cal. Ct. App. 2023) ...................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................................6

*Belton v. Comcast Cable Holdings, LLC*,
   151 Cal. App. 4th 1224 (Cal. Ct. App. 2007) ................................................................15

*Blough v. Holland Realty, Inc.*,
   574 F.3d 1084 (9th Cir. 2009) ........................................................................................11

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012) ...................................................................................6, 12

*Broberg v. The Guardian Life Ins. Co. of Am.*,
   171 Cal. App. 4th 912 (Cal. Ct. App. 2009) ..................................................................14

*Chavez v. Whirlpool Corp.*,
   93 Cal. App. 4th 363 (Cal. Ct. App. 2001) ....................................................................15

*Coronavirus Rep. v. Apple, Inc.*,
   85 F.4th 948 (9th Cir. 2023) ..................................................................................7, 8, 10

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ......................................................................................6, 12

*Fink v. Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ...........................................................................................13

*Foster v. Sexton*,
   61 Cal. App. 5th 998 (Cal. Ct. App. 2021) ....................................................................13

*Freund v. HP, Inc.*,
   2023 WL 5184140 (N.D. Cal. Aug. 10, 2023) .................................................................8

*Gadda v. State Bar of Cal.*,
   511 F.3d 933 (9th Cir. 2007) ............................................................................................0

*Hazel v. Prudential Fin., Inc.*,
   2023 WL 3933073 (N.D. Cal. June 9, 2023) ....................................................................8

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ...................................................................................7, 10

*In re Qualcomm Antitrust Litig.*,
    2023 WL 121983 (N.D. Cal. Jan. 6, 2023) .........................................................................10

*Kelley v. Mortg. Elec. Registration Sys.*,
    642 F. Supp. 2d 1048 (N.D. Cal. 2009) ..............................................................................13

*Klinge v. Ygrene Energy Fund Inc.*,
    2023 WL 8613672 (Sup. Ct. Cal. June 1, 2023) .................................................................13

*Korea Kumho Petrochemical v. Flexsys Am. LP*,
    2008 WL 686834 (N.D. Cal. Mar. 11, 2008) ........................................................................9

*Morrison v. Viacom, Inc.*,
    66 Cal. App. 4th 534 (Cal. Ct. App. 1998) .........................................................................12

*Nat'l Union Fire Ins. Co. of Pitt., PA v. Cambridge Integrated Servs. Grp., Inc.*,
    171 Cal. App. 4th 35 (Cal. Ct. App. 2009) .........................................................................13

*NCAA v. Alston*,
    594 U.S. 69 (2021).................................................................................................................6

*People v. Johnson & Johnson*,
    77 Cal. App. 5th 295 (Cal. Ct. App. 2022) .........................................................................14

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
    532 F.3d 963 (9th Cir. 2008) .............................................................................................6, 7

*Salazar v. Target Corp.*,
    83 Cal. App. 5th 571 (Cal. Ct. App. 2022) .........................................................................14

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (Cal. Ct. App. 2020) ..................................................................12, 14

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ..............................................................................................11

*State Oil Co. v. Khan*,
    522 U.S. 3 (1997)..................................................................................................................15

*Teradata Corp. v. SAP SE*,
    570 F. Supp. 3d 810 (N.D. Cal. 2021) ..................................................................................9

*Truck-Rail Handling, Inc. v. Burlington N. & Santa Fe Ry. Co.*,
    244 F. App'x 130 (9th Cir. 2007) ..........................................................................................9

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)...............................................................................................................1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' MOT. TO DISMISS SAC
CASE NO. 3:24-CV-01707-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATUTES

15 U.S.C.
§ 1.................................................................................................................2
§ 2.........................................................................................................2, 6, 12

Cal. Bus. & Prof. Code
§ 17200...........................................................................................................2
§ 17500...........................................................................................................2

## OTHER AUTHORITIES

BernsteinResearch, *European Luxury Goods: The Anatomy of Overseas Luxury Markets* (July 2010) ............................................................................................8

*Birkin Bag*, Hermès, https://www.hermes.com/us/en/content/106191-birkin/ (last visited Oct. 24, 2024)..........................................................................................13

Tasha L. Lewis & Brittany Haas, *Managing an iconic old luxury brand in a new luxury economy: Hermès handbags in the US market, in* GLOBAL FASHION BRANDS: STYLE, LUXURY & HISTORY (2014) ...........................................................8

## I.       INTRODUCTION

Plaintiffs' second amended complaint ("SAC") confirms what has been true from the start of this case:  they have no viable claim against Hermès.  This Court dismissed Plaintiffs' first amended complaint for failure to "plausibly allege relevant product markets, defendant's market power within those markets, or an injury that the antitrust laws were intended to prevent." Minute Entry, Dkt. 51, Sept. 19, 2024.  The SAC only makes those fatal flaws more obvious. Plaintiffs try to gerrymander two new markets—a tying market for "elitist luxury handbags" and a tied market for "luxury ready-to-wear apparel and accessories."  SAC ¶¶ 26, 40.  But each fails on its face:  the first omits obvious competitors and misconstrues the sources it cites; the second combines products that plainly do not compete.  And Plaintiffs' new allegations do not come close to solving their failure to plead market power, anticompetitive effects, or antitrust injury.

Unable to salvage their antitrust claims, Plaintiffs throw everything at the wall in hopes that something will stick.  They raise new state-law claims for false advertising, common law fraud, and negligent misrepresentation.  SAC ¶¶ 121-39.  But they allege no false or misleading statement; their claims hinge on a dubiously clipped quote from Hermès' website and vague salesperson statements that could not possibly mislead any consumer.  And they do not allege facts showing that they relied on any such representation to their detriment.

Plaintiffs' case ultimately seeks to turn Hermès' success in crafting a superior but rare product into an antitrust violation.  But product superiority is one of the objectives of antitrust law and cannot be anticompetitive.  *See, e.g.*, *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-08 (2004).  Plaintiffs may be dissatisfied that they cannot have on-demand access to Hermès' Birkin handbags at their preferred price so that they can resell them on the secondary market.  But Hermès is under no duty to make unlimited Birkin handbags freely available to Plaintiffs—especially when Birkin handbags are so "difficult to produce" given the "intensive labor and craft[s]manship and high-quality leathers required."  SAC ¶ 22. Plaintiffs' frustration in being unable to purchase additional Birkin handbags does not support an antitrust claim, let alone claims for false advertising, fraud, or negligent misrepresentation.  This Court should end this case for good and dismiss the case with prejudice.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the SAC fails to state a claim under Sections 1 or 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2.

2.    Whether the SAC fails to state a claim under Sections 16720 and 16727 of the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, 16727.

3.    Whether the SAC fails to state a claim under California's False Advertising Law, Cal. Bus. & Prof. Code § 17500.

4.    Whether the SAC fails to state a claim for common law fraud.

5.    Whether the SAC fails to state a claim for negligent misrepresentation.

6.    Whether the SAC fails to state a claim under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

## III.    BACKGROUND

<u>Plaintiffs and the Proposed Class.</u>  On March 19, 2024, Plaintiffs Tina Cavalleri and Mark Glinoga filed an antitrust lawsuit alleging that Hermès of Paris, Inc. and Hermès International (collectively, "Hermès") engaged in a tying scheme in violation of the Sherman Act, the Cartwright Act, and the UCL.  Class Action Compl., Dkt. 1 ("Compl.").  Hermès filed a motion to dismiss on May 9, 2024, Dkt 29.  Rather than oppose the motion to dismiss, Plaintiffs filed the First Amended Class Action Complaint on May 30, 2024, Dkt. 33 ("FAC"), which added Mengyao Yang as a new Plaintiff and included additional allegations.  This Court dismissed Plaintiffs' FAC with leave to amend on September 19, 2024, Minute Entry, Dkt. 51.  Plaintiffs filed the SAC on October 11, 2024, adding (among other things) new claims for violation of California's False Advertising Law, common law fraud, and negligent misrepresentation, Dkt. 52.  Plaintiffs purport to represent a class of U.S. residents who "purchased or were asked to purchase Ancillary Products in order to purchase a Birkin Handbag" and a subclass of California residents that "purchased or were asked to purchase Ancillary Products in order to purchase a Birkin Handbag."  SAC ¶ 58.

<u>Hermès.</u>  According to Plaintiffs, Hermès is a "world-famous designer and producer of high-quality merchandise," such as "luxury handbags, apparel, scarves, jewelry, fashion

accessories, and home furnishings." *Id.* ¶ 16.[1]  Hermès sells through retail locations in the United States and also maintains a website through which it sells some, but not all of its products. *Id.* ¶¶ 19-20.  In the nearly two centuries since it was founded, Hermès has developed a reputation for artisan-crafted luxury products and built a loyal following. *Id.* ¶¶ 16-25.

Plaintiffs' Allegations.  This case focuses on two of the many items that Hermès sells: the Birkin and Kelly handbags (defined by Plaintiffs collectively as "Birkin handbag" or "Birkin bag"). *Id.* ¶ 21.  "Each Birkin handbag is handcrafted from the finest leather by experienced artisans in France." *Id.* ¶ 22.  "The manufacturing of a single Birkin handbag requires many hours of an artisan's time," and the "intensive labor and craft[s]manship and high-quality leathers required make the Birkin handbag difficult to produce and expensive." *Id.*  Because of these supply limitations, Hermès cannot produce sufficient Birkin or Kelly handbags to satisfy demand. *See id.* ¶¶ 22-23.

All three of Plaintiffs' complaints have claimed that Hermès unlawfully conditions the purchase of Birkin or Kelly handbags on purchases of other Hermès products, such as jewelry, scarves, or home goods.  At first, Plaintiffs alleged that Hermès has market power in the so-called market for "the Birkin Handbag"—a single-brand market they defined to include solely Birkin and Kelly handbags.  Compl. ¶ 48.  They claimed that Hermès uses its "economic power" to coerce customers wishing to buy a Birkin handbag (the tying product) to purchase unspecified amounts of other Hermès products (the tied product), which Plaintiffs grouped in one "Ancillary Products" market. *Id.* ¶¶ 47, 51.  Plaintiffs shifted gears in the FAC and alleged that Hermès has market power in a "luxury handbag market," and that it competed in that market against "luxury brands like Gucci, Prada, and Louis Vuitton."  FAC ¶ 27.  Plaintiffs claimed that Hermès uses this power to harm competition in the tied markets for an array of distinct "ancillary products" (e.g., the markets for scarves, ties, home goods). *Id.* ¶ 36.

This Court's Decision.  This Court dismissed Plaintiffs' FAC because it "did not plausibly allege relevant product markets, defendant's market power within those markets, or an

---

[1] Hermès accepts the well-pleaded and non-contradictory allegations of fact in the SAC for purposes of this Motion to Dismiss only.

1   injury that the antitrust laws were intended to prevent."  Minute Entry, Dkt. 51, Sept. 19, 2024.

2   At the hearing, the Court made the following observations:

- The Court was "really struggling with [Plaintiffs'] market definitions" and did not "see them alleged" in the FAC.  Hearing Tr. 7:10-11, Sept. 19, 2024 ("Hearing Tr."). The Court also did not see allegations of "market power"—"nothing in [the FAC] about Hermès being a monopolist or near monopolist in your alleged market of luxury handbags." *Id.* at 7:12-15.

- The Court explained that Plaintiffs had not shown "an antitrust injury," because they had not alleged that "competition in either a tying product market or a tied product mark[et] ha[d] been substantially foreclosed or restrained." *Id.* at 3:21-4:3.  The Court explained that Plaintiffs needed to "spell out how competition is being affected adversely" and "none of that is in here." *Id.* at 8:19-23.

- The Court views this case as a "rule of reason" case rather than a "per se case." *Id.* at 9:3-4.  The Court posited that building brand loyalty to obtain a Birkin handbag, as alleged in the FAC, may be "pro competitive." *Id.* at 15:6; *see id.* at 16:2-7.

- The Court emphasized that "the fact that a lot of your clients may not be able to get a Birkin bag is not Hermès' antitrust problem." *Id.* at 15:24-16:1.  Hermès "can do whatever they want with their product so long as it does not substantially foreclose competition in a relevant product market in a way that the antitrust laws would look askance at." *Id.* at 15:16-19.

21          Plaintiffs' New Tying Allegations.  Plaintiffs responded by filing an SAC that focuses

22   primarily on redefining the relevant markets.  Citing articles from 2010 and 2014—eons ago in

23   the fashion industry—the SAC defines the tying market as "the market and/or submarket of

24   elitist luxury handbags[.]"  SAC ¶ 26.  Plaintiffs allege that this so-called "elitist luxury handbag

25   market" has "high price points, superior craftsmanship and materials, and investment potential."

26   *Id.* ¶ 30.  The alleged market includes (at least) Hermès, Chanel, and Bottega Veneta; other

27   handbag makers, such as Louis Vuitton, Gucci, and Ferragamo, are included in a different

28   market labeled "aspirational" luxury.  *Id.* ¶ 27.  Referencing unnamed and uncited "publicly

1  available data," Plaintiffs allege that "Hermès Birkin bags constitute between 60% and 75% of

2  the Elitist Luxury Handbag market." *Id.* ¶ 32.

3        Plaintiffs also appear to offer a new formulation of the tied market: "the market for

4  luxury ready-to-wear apparel and accessories." *Id.* ¶ 40.  This single market purportedly

5  includes "ancillary products sold by Herm[è]s and competitors such as Chanel and Louis

6  Vuitton, including scarves and shawls, ready to wear clothing, footwear, watches, jewelry,

7  fragrances, accessories (including hats, gloves, ties, and sunglasses), and home goods such as

8  table wear, furniture, blankets, and decorative objects like vases and trays." *Id.*  The SAC claims

9  without explanation that "[t]he industry recognizes luxury ready to wear apparel and accessories

10  as a distinct market category." *Id.*  Confusingly, the SAC elsewhere retains references to a single

11  "Ancillary Products" market (from their original complaint) and multiple ancillary products

12  markets (from the FAC). *Id.* ¶¶ 74, 80.  The SAC claims that Hermès has a "53% market share

13  of the luxury apparel market," which is a different alleged market altogether. *Id.* ¶ 49.

14        Plaintiffs now allege that customers "purchase products that they either do not want or

15  would prefer to purchase from one of Hermès' competitors such as Chanel or Louis Vuitton,"

16  and they allege that many Hermès products are sold secondhand "in pristine condition." *Id.*

17  ¶¶ 47, 48.  But Plaintiff Glinoga does not allege any purchase from Hermès, let alone the

18  purchase of something he did not want or would have preferred to purchase from a competitor.

19  And Plaintiffs Cavalleri and Yang do not allege what items they would have preferred to

20  purchase from a competitor (as opposed to simply not purchasing them at all). *See id.* ¶ 56.

21       <u>Plaintiffs' New Claims.</u>  Plaintiffs also raise new claims for relief under California's

22  False Advertising Law, common law fraud, and negligent misrepresentation.  The crux of these

23  allegations appears to be Hermès' statement on its website that "'[t]he Birkin is available' with

24  certain features." *Id.* ¶ 122.  Plaintiffs claim this is misleading because the Birkin handbag "is

25  not available to consumers unless they also purchase Accessory items." *Id.*  Plaintiffs also

26  reference alleged statements by Hermès' salespersons conveying that Plaintiffs "will be able to

27  purchase the Birkin Bag if they purchase Ancillary products," when in fact, "many of the

28  customers who purchase Ancillary products for this purpose . . . will not be provided the ability

1   to purchase a Birkin Bag." *Id.* ¶ 123.  Plaintiffs allege only one potential example: that Plaintiff

2   Cavalleri at some undefined point purportedly spent more than $10,000 on ancillary products in

3   an effort to obtain her third Birkin handbag, but was unsuccessful in doing so.  *Id.* ¶ 126.

4   **IV.   ARGUMENT**

5       To survive dismissal, a complaint "must contain sufficient factual matter" to "'state a

6   claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

7   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the court generally

8   accepts as true a complaint's "well-pleaded facts," it does not accept "legal conclusions" or

9   "[t]hreadbare recitals of the elements of a cause of action."  *Id.* at 678-79.

10      **A.   Plaintiffs Do Not Plead A Sherman Act Claim**

11      Plaintiffs' SAC does not solve any of the deficiencies that led this Court to dismiss the

12  FAC.  To plead a tying claim, whether under the rule of reason or the *per se* approach,[2]

13  Plaintiffs must adequately allege: (1) market power in a properly defined tying market;

14  (2) effects in a properly defined tied market; and (3) antitrust injury.  *See Rick-Mik Enters., Inc.*

15  *v. Equilon Enters. LLC*, 532 F.3d 963, 971 (9th Cir. 2008) (tying market power and tied market

16  effects required for all tying claims, including *per se*); *Brantley v. NBC Universal, Inc.*, 675 F.3d

17  1192, 1197 (9th Cir. 2012) (antitrust injury required).  To plead a Section 2 tying claim,

18  Plaintiffs must also allege the "willful acquisition or maintenance of [monopoly] power."  *Epic*

19  *Games*, 67 F.4th at 998 (citation omitted).

20      The SAC falls short on every requirement.  Hermès does not reiterate the flaws common

21  to all three of Plaintiffs' complaints, which Hermès detailed in its first two motions to dismiss

22  and this Court recognized.  Instead, Hermès focuses on why Plaintiffs' latest allegations do not

23

24  [2] Hermès agrees with this Court that "this is not going to be a *per se* case" and instead the "rule
    of reason" applies.  Hearing Tr. 9:23-24.  Modern Supreme Court precedent makes clear that the

25  *per se* rule is a narrow exception to the general applicability of the rule of reason, and it does not

26  apply to arrangements whose ultimate effects on competition are (at best) unclear.  *See NCAA v.*
    *Alston*, 594 U.S. 69, 89 (2021); *see also Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 997 (9th

27  Cir. 2023) (holding that "*per se* rule requires caution and judicial humility" and declining to
    apply *per se* analysis given "purported procompetitive benefits").  But this Court need not

28  choose between the two modes of analysis because Plaintiffs' claims fail either way.

1    change this Court's analysis—and, indeed, underscore the problems with their case.

2              1.      **The SAC Does Not Allege That Hermès Has Market Power In Any**
                       **Properly Defined Market**
3

4           As Hermès explained, the starting point in pleading a tying claim is market power in a

5    properly defined tying market.  *See Rick-Mik Enters.*, 532 F.3d at 971 ("'in all cases involving a

6    tying arrangement, the plaintiff must prove that the defendant has market power in the tying

7    product'" and "to prove it, it must first be properly alleged" (citation omitted)).  The SAC fails to

8    define a viable tying product market and does not allege market power within any such market.

9           No Viable Tying Market.  Plaintiffs' third attempt to plead a tying product market fails,

10   and that alone requires rejecting Plaintiffs' claims.  *See Coronavirus Rep. v. Apple, Inc.*, 85 F.4th

11   948, 955-57 (9th Cir. 2023).  In their original complaint, Plaintiffs alleged a single-brand market

12   limited to Birkin handbags—implying that Hermès had *no* competitors at all.  Compl. ¶ 48.

13   After receiving Hermès' first motion to dismiss, Plaintiffs changed gears and alleged a "luxury

14   handbag" tying market in which Hermès competes with "elite designer and luxury brands like

15   Gucci, Prada, and Louis Vuitton."  FAC ¶¶ 26, 27.  Now that this Court rejected that market,

16   Plaintiffs try out a third formulation (with none of the same competitors)—a market for "elitist

17   luxury handbags" that appears limited to Hermès, Chanel and Bottega Veneta.  SAC ¶ 27.  But

18   that last-ditch attempt to gerrymander a market to make out an antitrust claim is equally flawed.

19          *First*, the SAC's alleged "elitist luxury handbag" market conflicts with Plaintiffs' prior

20   admission that Hermès competes with Gucci, Prada, and Louis Vuitton as part of a larger market

21   that includes (at least) luxury handbags generally.  Plaintiffs make no effort to explain why they

22   believed the Birkin handbag was part of the same market as a host of other competitors, but now

23   have changed their mind.  They are searching in vain for any market definition that might allow

24   them to assert a high enough market share to support their claim.  Courts routinely reject such

25   "artificial" market definitions that are "contorted to meet [the plaintiff's] litigation needs."  *Hicks*

26   *v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) (citation omitted).

27          *Second*, the SAC has none of the requisite factual allegations supporting any "elitist

28   luxury handbag" market.  Plaintiffs invoke "industry experts" that have purportedly divided

luxury goods "into three tiers, 'elitist,' 'aspirational,' and 'accessible.'"  SAC ¶ 27.  From this they claim that Hermès is part of an "elitist luxury handbag market" that is "characterized by high price points, superior craftsmanship and materials, and investment potential."  *Id.* ¶ 30. Even on its own terms, this is not enough:  Plaintiffs "do[] not attempt to demonstrate the cross-elasticity" of demand for Birkin handbags relative to Hermès' potential competitors, "as [they] must."  *Coronavirus Rep.*, 85 F.4th at 956.  And Plaintiffs' allegations misunderstand the sources they invoke.  Neither of Plaintiffs' studies purports to define any *handbag* market; they speak about categories of luxury goods generally.  BernsteinResearch, *European Luxury Goods: The Anatomy of Overseas Luxury Markets* 137 (July 2010) ("Bernstein," attached as Ex. 1 to Decl. of Ashley M. Bauer) (discussing tiers for "total luxury goods"); Tasha L. Lewis & Brittany Haas, *Managing an iconic old luxury brand in a new luxury economy: Hermès handbags in the US market*, *in* GLOBAL FASHION BRANDS: STYLE, LUXURY & HISTORY 172 (2014) ("Lewis," attached as Ex. 2 to Decl. of Ashley M. Bauer) (similar).[3]  And, far from purporting to define distinct luxury markets, they instead speak of a single "U.S. luxury *market*" with different "ranks."  Bernstein, *supra* at 137 (emphasis added).

*Third*, the SAC's own allegations—and the sources cited in them—fatally undercut the existence of any "elitist luxury handbag" market.  In the same paragraph Plaintiffs quote to support an "'elitist' luxury" market for handbags, ¶ 29, the Lewis article states that "[Hermès] *competes with the more accessible luxury brands*."  Lewis, *supra* at 171 (emphasis added). These "accessible luxury brands" include "brands like Ralph Lauren, Tommy Hilfiger, Michael Kors, and most importantly, Coach – a major player in the handbag market."  *Id.*  The Lewis article's *abstract* likewise notes that Hermès faces "competition with 'affordable' luxury brands like Coach."  *Id.* at 168.  Elsewhere in their SAC, Plaintiffs make similar admissions in referring

---

[3] The materials cited in the SAC to support Plaintiffs' allegations (attached as Exs. 1-3 of the accompanying Decl. of Ashley M. Bauer) are incorporated by reference.  *See, e.g., Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *3 n.2 (N.D. Cal. June 9, 2023) ("Incorporation by reference 'prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.'" (citation omitted)); *Freund v. HP, Inc.*, 2023 WL 5184140, at *3 n.1 (N.D. Cal. Aug. 10, 2023) (webpage was incorporated by reference because plaintiff "used information from [the] webpage to support his complaint").

1   to "Louis Vuitton" as one of Hermès' competitors—even though Plaintiffs argue it is part of the

2   separate "aspirational" market in the sources Plaintiffs cite.  SAC ¶¶ 27, 40.  Thus, under the

3   SAC's own allegations, Plaintiffs' three distinct luxury handbag markets quickly collapse.

4         <u>No Market Power.</u>  Even if Plaintiffs had adequately defined a market, their claims would

5   fail for lack of market power.  The SAC merely adds one new allegation of market share:

6   "Based on publicly available data, Hermès' Birkin bags constitute between 60% and 75% of the

7   Elitist Luxury Handbag Market."  SAC ¶ 32.  This bare allegation of market share—unsupported

8   by factual allegations of any kind supporting that conclusion—does not come close to pleading

9   market power.  Adding unsupported and unexplained market share percentages is no different

10   from a conclusory allegation that the defendant has "dominance of the [relevant] market"—and

11   that is not enough.  *See, e.g.*, *Korea Kumho Petrochemical v. Flexsys Am. LP*, 2008 WL 686834,

12   *9 (N.D. Cal. Mar. 11, 2008).  Plaintiffs' new allegations that the Birkin handbag is highly

13   priced in the secondary market does not show otherwise, SAC ¶ 35.  To the contrary, the Birkin

14   handbag's apparent availability on the secondary market suggests that Hermès is competing with

15   secondary resellers, who are omitted from Plaintiffs' market share allegations altogether.

16
17
         **2.**       **The SAC Does Not Define A Viable Tied Product Market In Which Competitive Effects Can Be Assessed**

18         Plaintiffs' Sherman Act claim fails for the independent reason that Plaintiffs do not

19   define a viable *tied* product market or *effects* in any viable tied product market.  As Hermès has

20   explained, a valid tying claim requires Plaintiffs to properly define the *tied* product market.  *See,*

21   *e.g.*, *Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 851 (N.D. Cal. 2021); *accord Truck-Rail*

22   *Handling, Inc. v. Burlington N. & Santa Fe Ry. Co.*, 244 F. App'x 130, 131-32 (9th Cir. 2007).

23   The SAC only deepens Plaintiffs' problems on this score.

24         *First*, the SAC does not define a viable tied product market.  Plaintiffs' shifting tied

25   market definitions mirror their shifting positions with respect to the tying product market.  They

26   first grouped a host of disparate products together in a single "Ancillary Products" market.  In

27   response to Hermès' first motion to dismiss, Plaintiffs amended their complaint to allege a host

28   of different tied markets—one for each "ancillary product" that Hermès sells.  After this Court

agreed with Hermès that this did not work either, Plaintiffs have returned to a single omnibus market, but with a new name:  "the market for luxury ready-to-wear apparel and accessories." SAC ¶ 40.[4]  This latest market fails on its face because it again includes wildly disparate kinds of products that are not remotely "economic substitutes" for each other.  *Coronavirus Rep.*, 85 F.4th at 956 (citation omitted).  Plaintiffs admitted at the hearing that the relevant competitors "[a]re going to be different for belts and scarves"—and also for other ancillary products.  Hearing Tr. 5:21-22.  But their SAC ignores this:  Plaintiffs allege this single market includes "scarves and shawls, ready to wear clothing, footwear, watches, jewelry, fragrances, accessories (including hats, gloves, ties, and sunglasses), and home goods such as table wear, furniture, blankets, and decorative objects like vases and trays."  SAC ¶ 40.  The idea that a "hat" is somehow "reasonably interchangeable" with "furniture" or "jewelry" is ridiculous.  *See Coronavirus Rep.*, 85 F.4th at 955.  This Court should use "judicial experience and common sense" to reject Plaintiffs' "artificial" market definition.  *Hicks*, 897 F.3d at 1121 (citation omitted).

*Second*, Plaintiffs still do not allege effects or foreclosure of competitors in any tied market.  Plaintiffs again state that "Defendants' conduct affects and has affected a substantial volume of commerce" and that Hermès has "foreclose[ed] competition in the luxury ready to wear apparel and accessories market."  SAC ¶¶ 46, 75.  But these are conclusory allegations; they do not contain allegations of a "total amount of business . . . foreclosed to competitors by the tie" or how competitors are being foreclosed.  *In re Qualcomm Antitrust Litig.*, 2023 WL 121983, *16 (N.D. Cal. Jan. 6, 2023) (citation omitted) (applying Cartwright Act).  And the mere allegation that Hermès' revenues in "leather goods and saddlery" marginally decreased as between 2015 and 2023 while revenues in other goods marginally increased—single-digit percentage changes attributable to a vast array of different factors—does not mean competition was harmed in the tied markets.  *See* SAC ¶ 50.

### 3.     The SAC Does Not Plead Facts Showing Antitrust Injury

The SAC also fails to fix Plaintiffs' failure to plead antitrust injury.  Plaintiffs still fail to

---

[4] Confusingly, Plaintiffs elsewhere appear to retain references to earlier definitions, SAC ¶¶ 57, 74, 80, but Hermès will assume that paragraph 40 accurately reflects their third theory.

allege "specific facts" that Hermès' allegedly unlawful conduct has caused an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Somers v. Apple, Inc.*, 729 F.3d 953, 963-64 & n.5 (9th Cir. 2013) (citation omitted). Plaintiffs offer their conclusory allegation that "Hermès['] tying scheme affects more than de minimis and substantial amount of interstate commerce in the luxury ready-to-[]wear apparel and accessories market." SAC ¶ 47. Their argument appears to be that Hermès customers interested in buying Birkin handbags are forced to buy other products they do not want. They allege, for example, that "Birkin mania might be driving sales of products that customers don't really want" and that many Hermès items are "in pristine condition" on the secondary market. *Id.* ¶ 48. But as Hermès has explained, "[z]ero foreclosure exists where the *tied product is completely* unwanted by the buyer," *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1089 (9th Cir. 2009). "When a purchaser is 'forced' to buy a product he would not have otherwise bought even from another seller in the tied product market, there can be no adverse impact on competition because no portion of the market which would otherwise have been available to other sellers has been foreclosed." *Id.* (citation omitted).

Plaintiffs cannot save their case through (at best) equivocal allegations about their desire to purchase products from Hermès' competitors. They allege that the tying arrangement has led "customers to purchase products that they *either* do not want *or* would prefer to purchase from one of Hermès' competitors such as Chanel or Louis Vuitton" and "Plaintiffs were forced to purchase products that they *either* did not want *or* would have preferred to purchase from Hermès['] competitors." SAC ¶¶ 47, 56 (emphasis added). But the use of the disjunctive "or" gives the game away: Plaintiffs cannot even bring themselves to allege that they *would have* bought the products elsewhere; just that they *might* have done so. Thus, while Plaintiffs note products they purchased from Hermès—including fragrance, polo hat, belt, and tie—they tellingly do not allege that they would have purchased these products from one of Hermès' competitors, nor do they allege which competitor they actually would have preferred. *Id.* ¶ 56.

Finally, Plaintiffs further undermine their case by suggesting that Birkin handbags may be available from resellers at prices equivalent to or less than the price of purchasing the Birkin

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   handbag and any ancillary products from Hermès.  *Id.* ¶ 31.  That option makes clear that

2   Plaintiffs are simply not forced to purchase ancillary products from Hermès, as they can instead

3   purchase the Birkin handbag separately on the secondary market.  Of course, Plaintiffs' real

4   complaint is that they would like a cheaper price for the Birkin handbag, so that *they* can be the

5   ones reselling.  But "'merely enhancing the price of the tying product' . . . does not state a

6   cognizable injury to competition."  *Brantley*, 675 F.3d at 1199, 1202 (citation omitted).

7            **4.      The SAC Does Not Plead Willful Maintenance Or Acquisition Of
                         Monopoly Power As Required By Section 2**
8

9            The SAC also does not address Plaintiffs' continued failure to plead "the willful

10   acquisition or maintenance of [monopoly] power as distinguished from growth or development

11   as a consequence of a superior product, business acumen, or historic accident."  *Epic Games*, 67

12   F.4th at 998 (citation omitted).  Plaintiffs plead *no* facts showing that Hermès willfully acquired

13   or maintained a monopoly through anticompetitive conduct.  They briefly suggest that Hermès

14   has "53% market share of the luxury apparel market," SAC ¶ 49, but that is a different market

15   than the tied market where anticompetitive effects and monopolization are assessed.  That

16   number is therefore meaningless (in addition to being conclusory and wrong).

17        **B.      Plaintiffs' State Law Claims Also Fail**

18            **1.      Plaintiffs Do Not State A Tying Claim Under The Cartwright Act**

19            Plaintiffs' failure to plead market power in a viable tying product market, effects in a

20   viable tied product market, or antitrust injury likewise dooms their two duplicative Cartwright

21   Act claims.  *Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 541-42 (Cal. Ct. App. 1998); *Ahn v.

22   Stewart Title Guar. Co.*, 93 Cal. App. 5th 168, 178-81 (Cal. Ct. App. 2023).

23            **2.      Plaintiffs' False Advertising, Fraud, And Negligent Misrepresentation
                         Claims Fail**
24

25            The SAC also adds clearly meritless claims for false advertising, common law fraud, and

26   negligent misrepresentation.  These claims overlap in substantial part here, requiring the plaintiff

27   to allege (among other things) that (1) the defendant made a false, deceptive, or misleading

28   statement (2) that "caused" the plaintiff "economic injury."  *Shaeffer v. Califia Farms, LLC*, 44

1   Cal. App. 5th 1125, 1136-37 (Cal. Ct. App. 2020) (citation omitted) (false advertising); *Kelley v.*

2   *Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1056 (N.D. Cal. 2009) (common law

3   fraud); *Nat'l Union Fire Ins. Co. of Pitt., PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal.

4   App. 4th 35, 50 (Cal. Ct. App. 2009) (negligent misrepresentation).  The "fraud and negligent

5   misrepresentation" claims "must be pleaded with particularity—that is, the pleading must set

6   forth how, when, where, to whom, and by what the representations were made." *Foster v.*

7   *Sexton*, 61 Cal. App. 5th 998, 1028 (Cal. Ct. App. 2021).  The false advertising claim must be

8   plead with "reasonable particularity." *See, e.g.*, *Klinge v. Ygrene Energy Fund Inc.*, 2023 WL

9   8613672, at *4 (Sup. Ct. Cal. June 1, 2023).  Plaintiffs' claims fail these elements.

10          To start, the SAC fails to adequately allege any false, deceptive, or misleading statement.

11  Plaintiffs reference a statement on Hermès' website that "the Birkin is available to consumers to

12  purchase . . . with certain features." SAC ¶ 122.  But the full quote makes clear that Hermès was

13  simply describing a particular feature of the Birkin handbag; it states that the Birkin handbag is

14  "available in a rare heritage leather with unique character." *Birkin Bag*, Hermès,

15  https://www.hermes.com/us/en/content/106191-birkin/ (last visited Oct. 24, 2024) (attached as

16  Ex. 3 to Decl. of Ashley M. Bauer, *see supra* n.2).  Plaintiffs cannot twist a run-of-the-mill

17  statement about the Birkin handbag's features into an announcement that anyone can obtain

18  unlimited Birkin handbags on demand. *See Fink v. Warner Cable*, 714 F.3d 739, 742 (2d Cir.

19  2013) (holding that "context is crucial" and dismissing California false advertising claim because

20  "the allegations of the Complaint are materially inconsistent with the sole advertisement

21  Plaintiffs have submitted").  Plaintiffs also allege that "Defendants' salespersons represent to

22  customers that they will be able to purchase the Birkin Bag if they purchase Ancillary products."

23  SAC ¶ 123.[5]  Even setting aside Plaintiffs' clear failure to plead with particularity, they do not

24  explain how this statement is misleading:  they allege that two of the three Plaintiffs (Cavalleri

25  and Yang) *did* obtain Birkin handbags after purchasing other products.  And Plaintiff Cavalleri

26  may be upset she spent $10,000 and did not receive a third Birkin handbag, but the salesperson is

27  _____

28  [5] Even if this statement were true, particularized, and actionable, Plaintiffs could not maintain a
    class action on this basis because there would be different statements for each class member.

1   not alleged to have said that spending $10,000 on other products entitles you to such a third bag.

2   As to Cavalleri, moreover, the alleged conversations with the salespersons occurred in 2013 and

3   2020, and the statute of limitations has run as to any such claim.[6]

4          Moreover, Plaintiffs do not adequately plead that they suffered an injury on account of

5   the supposedly false advertisements.  To meet this requirement here, Plaintiffs "must 'truthfully

6   allege' that '[they] would not have bought the product but for the' allegedly actionable

7   misrepresentation or omission." *Shaeffer*, 44 Cal. App. 5th at 1143 (citation omitted).  None of

8   the three Plaintiffs meets this requirement.  No Plaintiff claims they even saw the quote from

9   Hermès' website, so that cannot form the basis for any claim.  *See Salazar v. Target Corp.*, 83

10  Cal. App. 5th 571, 578 (Cal. Ct. App. 2022) (rejecting claim where plaintiff failed to "allege that

11  he visited the website or relied on it when deciding whether to purchase" product).  Nor do

12  Plaintiffs allege reliance as to the salespersons' representations either.  Plaintiff Glinoga is not

13  alleged to have made *any* purchases, so he certainly did not suffer an "economic injury" on

14  account of a misrepresentation.  *See Shaeffer*, 44 Cal. App. 5th at 1137.  As noted above,

15  Plaintiff Yang *did* obtain a Birkin handbag consistent with the alleged representations, and thus

16  could not have suffered any causal injury.   The events involving Plaintiff Cavalleri are muddier,

17  but it appears that she too successfully obtained Birkin handbags in 2013 and 2020.  SAC ¶ 126.

18  At some undefined point, Cavalleri claims she "spent in excess of $10,000 . . . to obtain a [third]

19  Birkin, but was unable to obtain one."  *Id.*  But Cavalleri does not explain *when* she made those

20  purchases or what specific representations she supposedly relied on; she references two

21  conversations with sales associates that occurred in 2013 and 2020, and she obtained Birkin

22  handbags at that point.  These allegations do not come close to the requisite particularity.  *See,*

23  *e.g.*, *Shaeffer*, 44 Cal. App. 5th at 1143-44.

24          **3.      Plaintiffs Do Not State A Claim Under The UCL**

25          Finally, Plaintiffs again assert largely derivative claims under the UCL's unlawful, fraud,

26

27  ---

[6] *See Broberg v. The Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 920 (Cal. Ct. App. 2009) (3-year limitations period for fraud and negligent misrepresentation); *People v. Johnson &*

28  *Johnson*, 77 Cal. App. 5th 295, 310 n.3 (Cal. Ct. App. 2022) (same for false advertising claim).

and unfair prongs.  As to the "unlawful" prong, Plaintiffs invoke their allegations under the Sherman Act and the Cartwright Act.  SAC ¶ 111.  This claim fails for the same reasons as their antitrust claims.  As to the "fraud" prong, Plaintiffs rely on their false advertising, fraud, and negligent misrepresentation allegations, *id.* ¶ 116—which fail for the reasons explained above.

Plaintiffs have added very little to support their unfairness prong allegations, which rely on the same deficient antitrust and fraud allegations and are just as flawed.  Most fundamentally, Plaintiffs continue to ignore that many ties are procompetitive—and so they cannot merely invoke the existence of a tying relationship to support an unfairness claim.[7]  Plaintiffs likewise cannot allege unfairness due to the absence of any consumer injury and the prospect that procompetitive benefits of the alleged tie would outweigh any (nonexistent) consumer injury.

At bottom, Plaintiffs are dissatisfied that they do not have easier access to Birkin handbags.  Although Birkin handbags are readily available on the secondary market, Plaintiffs would rather buy them from Hermès at a lower price.  One handbag was not enough for Yang; two not enough for Cavalleri.  They want still more to re-sell for profit.  But Hermès is under no duty to sell products to Plaintiffs under their preferred terms.  *See Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 372-76 (Cal. Ct. App. 2001).  Hermès has wide leeway to "run its business" and do what "they want with their product," Hearing Tr. 15:16, 20, free of micromanaging by resellers who seek to undermine a business model that has done precisely what the antitrust laws encourage:  "protect interbrand competition."  *State Oil Co. v. Khan*, 522 U.S. 3, 15 (1997).

## V.       CONCLUSION

This Court should end Plaintiffs' misguided effort to do anything possible to plead a claim against Hermès and dismiss the SAC with prejudice.

---

[7] *See, e.g.*, *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1240 (Cal. Ct. App. 2007) ("If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers.  To permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct." (citation omitted)).

1   Dated:  October 25, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LATHAM & WATKINS LLP

By _____/s/ Christopher S. Yates_____
      Christopher S. Yates
      Belinda S Lee
      Ashley M. Bauer
      505 Montgomery Street, Suite 2000
      San Francisco, CA  94111-6538
      Telephone:  415.391.0600
      Facsimile:  415.395.8095
      Email:  Chris.Yates@lw.com
                    Belinda.Lee@lw.com
                    Ashley.Bauer@lw.com

      Peter E. Davis
      555 Eleventh Street, NW, Suite 1000
      Washington, DC  20004-1304
      Telephone:  202.637.2200
      Facsimile:  202.637.2201
      Email:  Peter.Davis@lw.com

      Attorneys for Defendants
      *Hermès of Paris, Inc. and*
      *Hermès International*