LATHAM & WATKINS LLP
Christopher S. Yates (SBN 161273)
Belinda S Lee (SBN 199635)
Ashley M. Bauer (SBN 231626)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Email: Chris.Yates@lw.com
Belinda.Lee@lw.com
Ashley.Bauer@lw.com

LATHAM & WATKINS LLP
Peter E. Davis (SBN 320256)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: 202.637.2200
Facsimile: 202.637.2201
Email: Peter.Davis@lw.com

Attorneys for Defendants
*Hermès of Paris, Inc. and Hermès International*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TINA CAVALLERI, an individual; MARK GLINOGA, an individual; MENGYAO YANG, an individual; on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

HERMÈS INTERNATIONAL, a French corporation and HERMÈS OF PARIS, INC., a New York corporation, and DOES 1 through 10; inclusive,

Defendants.

Case No. 3:24-cv-01707-JD

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Date: January 30, 2025
Time: 10:00 AM
Place: Courtroom 11, 19th Floor
Judge: Hon. James Donato

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiffs' Opposition Confirms Their Failure To Plead Facts Supporting The Elements Of A Tying Claim .......... 2

1. Plaintiffs Do Not Address Their Failure To Plead Anticompetitive Effects In A Viable Tied Product Market .......... 2

2. Plaintiffs' Antitrust Injury Argument Ignores Binding Precedent And Disregards This Court's Concerns .......... 3

3. Plaintiffs' Manufactured Tying Market And Conclusory Market Power Allegations Fail .......... 4

B. Plaintiffs' Opposition Offers No Viable Defense Of Their State Law Claims .......... 7

1. Plaintiffs' Cartwright Act Argument Fails .......... 7

2. Plaintiffs Do Not Address The Fatal Deficiencies In Their False Advertising, Fraud, And Negligent Misrepresentation Claims .......... 8

3. Plaintiffs Do Not State A Claim Under The UCL .......... 10

C. Leave To Amend Should Be Denied .......... 10

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahn v. Stewart Title Guar. Co.*,
93 Cal. App. 5th 168 (Cal. Ct. App. 2023) ....................7

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996) ....................3

*Apple Inc. v. Pepper*,
587 U.S. 273 (2019)....................5, 6, 7

*Belton v. Comcast Cable Holdings, LLC*,
151 Cal. App. 4th 1224 (Cal. Ct. App. 2007) ....................7, 10

*Blough v. Holland Realty, Inc.*,
574 F.3d 1084 (9th Cir. 2009) ....................2

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ....................1, 3, 4

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962)....................5

*Carter v. Variflex, Inc.*,
101 F. Supp. 2d 1261 (C.D. Cal. 2000) ....................7

*Cascade Health Solutions v. PeaceHealth*,
515 F.3d 883 (9th Cir. 2008) ....................3

*Clayworth v. Pfizer, Inc.*,
49 Cal. 4th 758 (2010) ....................7

*Committee on Children's Television, Inc. v. General Foods Corp.*,
35 Cal. 3d 197 (1983) ....................10

*Consumer Advocate Group, Inc. v. Kintetsu Enterprises of America*,
141 Cal. App. 4th 46 (Cal. Ct. App. 2006) ....................10

*Coronavirus Reporter v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023) ....................5

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
504 U.S. 451 (1992)....................4, 5

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ....................6

*Fink v. Warner Cable*,
714 F.3d 739 (2d Cir. 2013)....8

*Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories Inc.*,
386 F.3d 485 (2d Cir. 2004)....5, 7

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*,
352 F.3d 367 (9th Cir. 2003)....3

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018)....10

*Hopper v. Banana Republic, LLC*,
2008 WL 490613 (S.D.N.Y. Feb. 28, 2008)....8

*Illinois Tool Works Inc. v. Independent Ink, Inc.*,
547 U.S. 28 (2006)....6

*In re Qualcomm Antitrust Litigation*,
2023 WL 121983 (N.D. Cal. Jan. 6, 2023)....3

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009)....10

*Jefferson Parish Hospital District No. 2 v. Hyde*,
466 U.S. 2 (1984)....3, 4

*Korea Kumho Petrochemical v. Flexsys Am. LP*,
2008 WL 686834 (N.D. Cal. Mar. 11, 2008)....6

*Rebel Oil Co. v. Atlantic Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995)....3, 6

*Salazar v. Target Corp.*,
83 Cal. App. 5th 571 (Cal. Ct. App. 2022)....9

*Shaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125 (Cal. Ct. App. 2020)....9, 10

*Spirit Airlines, Inc. v. Northwest Airlines, Inc.*,
431 F.3d 917 (6th Cir. 2005)....6, 7

*Teradata Corp. v. SAP SE*,
570 F. Supp. 3d 810 (N.D. Cal. 2021)....2

*Truck-Rail Handling, Inc. v. Burlington Northern & Santa Fe Railway Co.*,
244 F. App'x 130 (9th Cir. 2007)....2

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001)....6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFS.' REPLY ISO MOT. TO DISMISS SAC
CASE NO. 3:24-CV-01707-JD

# I. INTRODUCTION

Plaintiffs' Opposition does not address—let alone refute—the fatal flaws in their case that Hermès and this Court identified. Of the 32 judicial decisions that Hermès cited in its latest Motion, Plaintiffs cite only one—and do not try to distinguish any. Plaintiffs' decision to ignore, rather than engage with, Hermès' core arguments is especially clear in two respects.

- *First*, Plaintiffs have not defined a valid tied product market. Hermès' Motion explained that Plaintiffs' alleged "'market for luxury ready-to-wear apparel and accessories' . . . fails on its face because it again includes wildly disparate kinds of products that are not remotely 'economic substitutes' for each other." Mot. to Dismiss Second Am. Compl. ("Mot. to Dismiss SAC") 10, Dkt. 54 (citations omitted). Plaintiffs offer no response.
- *Second*, Plaintiffs have not alleged anticompetitive effects or antitrust injury under *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192 (9th Cir. 2012). Their allegations of "[r]educing consumers' choices or increasing prices to consumers do[] not sufficiently allege an injury to competition" because "[b]oth effects are fully consistent with a free, competitive market." *Id.* at 1202; *see also* Mot. to Dismiss 11, Dkt. 29. Plaintiffs have no response.

As to the remaining tying element at issue—market power in a valid tying product market—Plaintiffs fare no better. In support of their newly gerrymandered "elitist luxury handbag" market, Plaintiffs raise substantially the same submarket argument this Court already rejected. And they offer no viable defense of their conclusory market power allegations.

At bottom, Plaintiffs' SAC and Opposition continue to misunderstand both tying law and the need to plead facts, as opposed to legal conclusions, to support their claims. This Court told Plaintiffs that "the fact that a lot of your clients may not be able to get a Birkin bag is not Hermès' antitrust problem." Hearing Tr. 15:24-16:1, Sept. 19, 2024 ("Hearing Tr."). Hermès "can do whatever they want with their product so long as it does not substantially foreclose competition in a relevant product market in a way that the antitrust laws would look askance at." *Id.* at 15:16-19. Yet in their third opportunity, Plaintiffs still do not allege the requisite facts. To the contrary, they implicitly concede they are resellers complaining about their inability to obtain more Birkin handbags for resale. This Court should end Plaintiffs' misguided effort to turn that

dissatisfaction into an antitrust claim, and dismiss this case with prejudice.

## II.     ARGUMENT

### A.     Plaintiffs' Opposition Confirms Their Failure To Plead Facts Supporting The Elements Of A Tying Claim

Plaintiffs offer no valid response for the three missing elements of their tying claim that Hermès raised in its Motion. Most glaringly, Plaintiffs' Opposition does not address their failure to plead a viable tied market or effects in any such market. Their response on antitrust injury ignores controlling Ninth Circuit precedent that Hermès cited in its Motion, and disregards this Court's concerns. And Plaintiffs have no persuasive defense of their manufactured tying market definition or conclusory market power allegations.

#### 1.     Plaintiffs Do Not Address Their Failure To Plead Anticompetitive Effects In A Viable Tied Product Market

Plaintiffs do not respond to Hermès' argument that they failed to plead a viable tied product market or effects in such a market.

*First*, as to the tied product market, Hermès explained that Plaintiffs' "single omnibus market"—a "'market for luxury ready-to-wear apparel and accessories'"—"fails on its face because it again includes wildly disparate kinds of products that are not remotely 'economic substitutes' for each other." Mot. to Dismiss SAC 10 (citations omitted). Plaintiffs' Opposition does not respond, and thus concedes the failure to define a viable tied market. This requirement is critical because the relevant market to assess anticompetitive harm in a tying case is "the market for the tied product." *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1089 (9th Cir. 2009) (citation omitted). Plaintiffs' failure to properly define such a market is fatal to their claims. *See Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 851 (N.D. Cal. 2021); *Truck-Rail Handling, Inc. v. Burlington N. & Santa Fe Ry. Co.*, 244 F. App'x 130, 131-32 (9th Cir. 2007).

*Second*, as to anticompetitive effects, Hermès explained that Plaintiffs' "conclusory allegations" about the foreclosure of competition were insufficient, and actual factual allegations were required. Mot. to Dismiss SAC 10. Plaintiffs' Opposition merely repeats these conclusory allegations, without explanation for how they could be sufficient. This too is fatal to their

claims. *See, e.g.*, *In re Qualcomm Antitrust Litig.*, 2023 WL 121983, at *16 (N.D. Cal. Jan. 6, 2023) (requiring allegation of "total amount of business . . . foreclosed" (citation omitted)).

**2. Plaintiffs' Antitrust Injury Argument Ignores Binding Precedent And Disregards This Court's Concerns**

Hermès has explained that antitrust injury in a tying case requires allegations of foreclosure of competitors "in the market for the tied product." *Brantley*, 675 F.3d at 1199 (citation omitted); *see* Mot. to Dismiss SAC 11; Mot. to Dismiss FAC 12, Dkt. 38; Mot. to Dismiss 11, Dkt. 29. The Ninth Circuit is clear: "allegations that an agreement has the effect of reducing consumers' choices or increasing prices to consumers does not sufficiently allege an injury to competition. *Both effects are fully consistent with a free, competitive market*." *Brantley*, 675 F.3d at 1202 (emphasis added).

Unable to distinguish this controlling precedent, Plaintiffs act like it does not exist. They again assert the alleged tying arrangement "limits consumer choice" and "inflates prices." Opp'n to Mot. to Dismiss SAC ("Opp'n") 7. But the Ninth Circuit rejected that same argument in *Brantley*. 675 F.3d at 1201. Each case Plaintiffs cite (Opp'n 8-9) does not help them.

- *Jefferson Parish Hospital District No. 2 v. Hyde* does not address antitrust injury; it also supports Hermès by affirming that the tying harm is foreclosure of competition in the tied market. 466 U.S. 2, 16 (1984). As Justice O'Connor emphasized in her concurrence, if the claimed tied product market has "many stable sellers who are not likely to be driven out by the tying," then there is no threat the seller will obtain market power in the tied product market. *Id.* at 38. That describes this case precisely given the allegations of numerous established suppliers of apparel and accessories. *See* SAC ¶¶ 40, 47-49.
- *Cascade Health Solutions v. PeaceHealth* addresses antitrust injury as to a bundled discounts claim; when it addressed tying, it recognized the relevant harm was the exclusion of "other sellers of the tied product." 515 F.3d 883, 912 (9th Cir. 2008).
- *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 352 F.3d 367 (9th Cir. 2003), *Amarel v. Connell*, 102 F.3d 1494 (9th Cir. 1996), and *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) are not tying cases, and addressed antitrust injury as to

conspiracy (*Glen Holly*) and predatory pricing (*Amarel* and *Rebel Oil*) claims.

- *Eastman Kodak Co. v. Image Technical Services, Inc.* did not address antitrust injury, and supports Hermès because it found that the defendant (unlike Hermès) took "exclusionary action to maintain" its monopoly in violation of Section 2. 504 U.S. 451, 483 (1992).

Plaintiffs' continued invocation of higher prices and reduced consumer choice reflects their broader misunderstanding of tying law. "[M]erely enhancing the price of the tying product" (in which the defendant is alleged to have a monopoly already) does not harm competition; it simply means the plaintiffs paid more than they preferred and also received an additional product. *Brantley*, 675 F.3d at 1199 (citation omitted). *Jefferson Parish* makes the same point: "When the seller's power is just used to maximize its return in the tying product market, where presumably its product enjoys some justifiable advantage over its competitors, the competitive ideal of the Sherman Act is not necessarily compromised." 466 U.S. at 14.

The harm in a tying case is instead the foreclosure of competitors in the tied product market. This Court recognized as much in emphasizing that Hermès can do "whatever they want with their product so long as it does not substantially foreclose competition in a relevant product market in a way that the antitrust laws would look askance at." Hearing Tr. at 15:16-19. And for foreclosure to occur, Plaintiffs must allege that "the tying arrangement here causes consumers to forego the purchase of substitutes for the tied product." *Brantley*, 675 F.3d at 1201.

On this critical issue, Plaintiffs merely repeat their deficient allegations. The SAC offers vague and equivocal allegations that "Plaintiffs were forced to purchase products that they *either* did not want *or* would have preferred to purchase from Hermès['] competitors." SAC ¶ 56 (emphasis added); *see id.* ¶ 47. Plaintiffs again do not even assert that they *would* have purchased the tied products from other competitors absent the alleged tie; they instead reiterate their position that the alleged tie "effectively compell[ed] them to buy products they did not want *or could* have purchased elsewhere." Opp'n 8 (emphasis added). That does not work.

### 3. Plaintiffs' Manufactured Tying Market And Conclusory Market Power Allegations Fail

Plaintiffs also fail to offer any persuasive defense of their tying market definition and

market power allegations, instead resting on legal conclusions inconsistent with the SAC itself.

No Viable Tying Market.  Plaintiffs do not attempt to "demonstrate . . . cross-elasticity of . . . demand," "as [they] must" to define a viable market. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 956 (9th Cir. 2023).  They do not address, and thus concede, Hermès' point that under Plaintiffs' own sources, Hermès' Birkin handbags compete with a wide range of brands.  Mot. to Dismiss SAC 8.  Plaintiffs stake their market definition on a submarket grounded in qualitative indicia in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962); *see* Opp'n 2-3.  That fails.

To start, Plaintiffs made a substantially similar submarket argument in opposing Hermès' Motion to Dismiss the FAC, and this Court rightly rejected it, Minute Entry, Dkt. 51, Sept. 19, 2024.  There, Plaintiffs cited the Birkin handbag's "distinctive design", "distinct customers" (affluent customers), "distinct prices" (thousands of dollars), and industry recognition.  Opp'n to Mot. to Dismiss FAC 9, Dkt. 39.  Plaintiffs' argument here is indistinguishable:  they cite the Birkin handbag's "[u]nique characteristics and [u]ses"; "affluent" and "less price-sensitive" customer base; and "[i]ndustry [r]ecognition and [r]esale [v]alue."  Opp'n 3.  These conclusory factors did not—and still do not—define a submarket here.

Plaintiffs' submarket argument is also inconsistent with the decisions they cite.  As Plaintiffs' cases show, the idea of a submarket "is somewhat of a misnomer, because the 'submarket' analysis simply clarifies whether two products are in fact 'reasonable' substitutes and are therefore part of the same market."  *Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485, 496 (2d Cir. 2004) (cited in Opp'n 6).  The touchstone remains "[r]easonable interchangeability."  *Id.*  Thus, the Court in *Brown Shoe* refused to slice up a market based on "price/quality" distinctions—there, dividing "low priced shoes" from "medium priced shoes."  370 U.S. at 326.  "[T]he boundaries of the relevant market must be drawn with sufficient breadth to include the competing products . . . and to recognize competition where, in fact, competition exists."  *Id.*  Here, Plaintiffs do not dispute that Birkin handbags compete with handbags offered by an array of designers.  *See* Mot. to Dismiss SAC 8-9.  But they nevertheless attempt to exclude those competitors from the market with no explanation.  That is not sustainable.

The other cases Plaintiffs cite—*Eastman Kodak*, 504 U.S. 451, and *Apple Inc. v. Pepper*,

587 U.S. 273 (2019)—are far afield. *Eastman Kodak* involved a single-brand *aftermarket*; to define such a market, the plaintiff had to show (among other things) that the "challenged aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase" and "'significant' . . . switching costs." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 977 (9th Cir. 2023) (citations omitted). *Pepper* did not address market definition, but also involved an aftermarket claim. 587 U.S. at 277. This case does not involve an aftermarket, and the proposed "elitist luxury handbag" market plainly would not satisfy *Eastman Kodak*.

No Market Power. The only new allegation in Plaintiffs' SAC regarding market power is the conclusory allegation that Hermès has between 60 and 75% of an "Elitist Luxury Handbag Market." SAC ¶ 32. Hermès pointed out that conclusory allegations of this kind are not enough. Mot. to Dismiss SAC 9. Plaintiffs declined to respond, instead restating the obvious—that a high market share can support a finding of market power. This point is not in dispute; the issue is that Plaintiffs simply picked a number out of thin air and added it to their SAC, with no factual allegations to support it. That does not suffice. *See, e.g.*, *Korea Kumho Petrochemical v. Flexsys Am. LP*, 2008 WL 686834, at *9 (N.D. Cal. Mar. 11, 2008).

Plaintiffs attempt to bolster their market share allegation by arguing that Hermès has "[c]ontrol [o]ver [p]ricing and [s]upply." Opp'n 5. To the extent they are arguing that Hermès has the ability to direct its own price and supply, that does not come close to establishing market power. Market power requires a showing that a firm can, "by restricting its output . . . [thereby] restrict *marketwide* output and, hence, increase *marketwide* prices." *Rebel Oil Co.*, 51 F.3d at 1434 (emphasis added). Hermès' ability to influence the price and supply of Birkin handbags does not give it power to control *marketwide* price or output, and Plaintiffs do not assert otherwise. Nor do vague allegations about consumer demand or brand loyalty make up for these failures. *See Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45 (2006).

Plaintiffs cite several cases to support their control-of-price-and-supply argument (Opp'n 5-6), but these only underscore the failings of the SAC. They cite *United States v. Microsoft Corp.*, but the court there found monopoly power because "Microsoft ha[d] a greater than 95% market share," 253 F.3d 34, 51 (D.C. Cir. 2001). In *Spirit Airlines, Inc. v. Northwest Airlines,*

*Inc.*, the defendant had between a 70 and 89% market share in the relevant markets. 431 F.3d 917, 935-36 (6th Cir. 2005). In *Geneva Pharmaceuticals*, the defendant was "the sole manufacturer" of the drug for a considerable period—thus giving it a monopoly in the market at issue. 386 F.3d at 501. Plaintiffs' invocation of *Pepper* is especially bizarre: "[t]he sole question presented at th[e] early stage of the case [wa]s whether these consumers are proper plaintiffs for this kind of antitrust suit" under the rule in *Illinois Brick*. 587 U.S. at 278. The case offers Plaintiffs nothing on the question of establishing market power. Nothing in those decisions supports the idea that a company's purported control over the pricing and supply of its own products is enough to establish market or monopoly power.[1]

### B. Plaintiffs' Opposition Offers No Viable Defense Of Their State Law Claims

#### 1. Plaintiffs' Cartwright Act Argument Fails

The deficiencies in the Sherman Act claims are fatal to Plaintiffs' Cartwright Act claims as well. Because Plaintiffs did not sufficiently allege either market power or "tied market foreclosure or anticompetitive impact in the tied product market," they cannot bring "an unlawful tying claim." *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1234 (Cal. Ct. App. 2007). The failure to plead antitrust injury is also an independent ground for dismissal. *Ahn v. Stewart Title Guar. Co.*, 93 Cal. App. 5th 168, 178-81 (Cal. Ct. App. 2023). Plaintiffs do not address this case law, but instead insist that the Cartwright Act reaches more broadly than federal law. They cite *Clayworth v. Pfizer, Inc.*, but that decision involved a "pass-on defense" with no relevance here. 49 Cal. 4th 758, 766 (2010). They cite no decision permitting a tying claim to proceed under the Cartwright Act notwithstanding the deficiencies identified above, and many cases hold otherwise. *See, e.g.*, *Belton*, 151 Cal. App. 4th at 1234.[2]

---

[1] Plaintiffs' Section 2 claim must also be dismissed because "Plaintiffs plead *no* facts showing that Hermès willfully acquired or maintained a monopoly through anticompetitive conduct." Mot. to Dismiss SAC 12. Plaintiffs declined to respond in their Opposition.

[2] Plaintiffs (Opp'n 10) cite *Carter v. Variflex, Inc.*; Hermès could not find the case at the citation provided (101 Cal. App. 4th 425). Hermès located a district court decision with the same name, which rejected a Cartwright Act claim because the "[t]he Cartwright Act is patterned after the Sherman Act, and federal cases interpreting the Sherman Act are persuasive authority under the Cartwright Act." *Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261, 1270 (C.D. Cal. 2000).

**2. Plaintiffs Do Not Address The Fatal Deficiencies In Their False Advertising, Fraud, And Negligent Misrepresentation Claims**

Plaintiffs also offer no meaningful defense of their false advertising, fraud, and negligent misrepresentation claims. As Hermès explained, each claim requires (a) a false, deceptive, or misleading statement, and (b) reliance on that statement to the plaintiff's detriment. Mot. to Dismiss SAC 12-13. Plaintiffs have no response on either point.

No False, Deceptive, or Misleading Statement. The false advertising claim relies solely on a statement on Hermès' website (again clipped by Plaintiffs) that the Birkin handbag is "available in a rare heritage leather with unique character." Mot. to Dismiss SAC 13 (citation omitted). Plaintiffs' theory is that by using the term "available," Hermès conveyed that "rare heritage leather" Birkin handbags are available in unlimited numbers to anyone that wishes to purchase them at any time. Opp'n 11. The argument is as absurd as it sounds. Hermès used the term "available" to describe one feature of Birkin handbags; not to tell all potential customers they could receive them. Plaintiffs disregard the critical "context" establishing that this statement could not be misleading. *See Fink v. Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).

As to the fraud and negligent misrepresentation claims, Plaintiffs invoke salesperson statements "that buying additional Hermès products would guarantee or increase their chances of obtaining a Birkin, even though this was untrue." Opp'n 11. But even assuming these interactions occurred, the statements *were* true under Plaintiffs' own allegations: "buying additional Hermès products" would "increase their chances of obtaining a Birkin." *Id.* Indeed, the premise of Plaintiffs' case is that Hermès' customers are forced to buy ancillary products to obtain a Birkin handbag—that is the "tie" underlying their lawsuit. *See* SAC ¶ 53. They can hardly maintain that Hermès ties the products together, but also that a salesperson telling customers about the tie is lying.[3] Hermès also explained why none of the three Plaintiffs could

---

[3] Hermès could not locate *Hopper v. Banana Republic, LLC*, 528 F. Supp. 3d 1107, 1113 (N.D. Cal. 2021), which Plaintiffs cite for the (inapposite) proposition that "allegations regarding misleading discount pricing practices were sufficient to state a claim for negligent misrepresentation." Opp'n 13. Hermès did find a case with the same name, *Hopper v. Banana Republic, LLC*, 2008 WL 490613 (S.D.N.Y. Feb. 28, 2008), but the decision does not address any misrepresentation claim, *id.* at *1-4.

have been subject to any actionable false or misleading statement, and Plaintiffs do not respond:

- Mengyao Yang allegedly received a Birkin handbag after purchasing other products. Any statement about payment for ancillary items to obtain a Birkin handbag was true.
- Tina Cavalleri allegedly obtained two Birkin handbags after purportedly buying other products. Any representations tied to those purchases would be true. Cavalleri does not allege any subsequent conversation with a sales associate within the limitations period involving any misleading representation. As Hermès explained, "Plaintiff Cavalleri may be upset she spent $10,000 and did not receive a third Birkin handbag, but the salesperson is not alleged to have said that spending $10,000 on other products entitles you to such a third bag." Mot. to Dismiss SAC 13-14. Plaintiffs declined to respond.
- Mark Glinoga is not alleged to have purchased any item. So he has not suffered injury.

Reliance on Statements to Their Detriment. Plaintiffs also come nowhere close to alleging that they relied on any false statements, thereby causing them injury. Hermès explained that "[t]o meet this requirement here, Plaintiffs 'must "truthfully allege" that "[they] would not have bought the product but for the" allegedly actionable misrepresentation or omission.'" Mot. to Dismiss SAC at 14 (citation omitted). Plaintiffs do not dispute the standard, and thus accept it. But they have not alleged what is required. As to the "available" quote on Hermès website, no Plaintiff alleges they even *saw* the quotation—let alone that they were injured by it. It is settled that a plaintiff cannot make out a claim related to a website advertisement if he did not "allege that he visited the website or relied on it when deciding whether to purchase" a product. *Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 578 (Cal. Ct. App. 2022).

Nor were there any allegations of reliance as to the salesperson statements. Again, Glinoga did not purchase any items—so he could not have relied to his detriment. Yang did obtain a handbag, and thus did not rely to his detriment either. And Cavalleri obtained two handbags in 2013 and 2020. She claims that at some undefined point, she "spent in excess of $10,000 . . . to obtain a [third] Birkin, but was unable to obtain one." SAC ¶ 126. But Cavalleri does not explain when she made those purchases or what specific representations she supposedly relied on. These allegations do not come close to the requisite particularity. *Shaeffer v. Califia*

*Farms, LLC*, 44 Cal. App. 5th 1125, 1143-44 (Cal. Ct. App. 2020).[4]

**3. Plaintiffs Do Not State A Claim Under The UCL**

Plaintiffs' UCL claims are derivative of their failed antitrust and fraud claims and should be dismissed for the same reason. The "unlawful" prong claim simply borrows other violations of the law, and the "fraudulent" prong claim similarly incorporates standards resembling the fraud ones above.[5] Because the underlying claims fail, this one does too.

Plaintiffs' "unfair" prong argument boils down to the allegation that Hermès is imposing an unlawful and coercive tie on customers. Opp'n 14. But the California Court of Appeal is clear, in a case that Hermès cited and Plaintiffs ignore, that "[i]f the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers." *Belton*, 151 Cal. App. 4th at 1240; *see Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th Cir. 2018) (same). That resolves Plaintiffs' claim.

**C. Leave To Amend Should Be Denied**

Plaintiffs have now amended their complaint three times, with shifting theories seeking to find any possible traction they can to assert a claim against Hermès. The failure of Plaintiffs' Opposition to meaningfully engage on the central legal issues in this case—and their continued misunderstanding of the core tenets of tying law—show that further amendment would be futile. This case never had merit, and this Court should dismiss it with prejudice.

## III. CONCLUSION

This Court should dismiss the SAC with prejudice.

---

[4] Plaintiffs incorrectly cite *Consumer Advocate Group, Inc. v. Kintetsu Enterprises of America* for the proposition that a hotel's "misrepresent[ations]" about "its 'non-smoking policy' . . . were likely to induce consumers to rely on the hotel's representations when booking rooms." Opp'n 12 (citing 141 Cal. App. 4th 46, 64 (Cal. Ct. App. 2006)). That decision addressed a Proposition 65 injunction and did not consider any misrepresentation claim. 141 Cal. App. 4th at 60-65.

[5] Plaintiffs invoke a UCL fraud standard superseded by statute. Opp'n 15 (citing *Comm. on Child.'s Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983)). The UCL requires "actual reliance" and "injury in fact." *In re Tobacco II Cases*, 46 Cal. 4th 298, 325-26 (2009).

Dated: December 13, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Christopher S. Yates*

Christopher S. Yates
Belinda S Lee
Ashley M. Bauer
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Email: Chris.Yates@lw.com
Belinda.Lee@lw.com
Ashley.Bauer@lw.com

Peter E. Davis
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: 202.637.2200
Facsimile: 202.637.2201
Email: Peter.Davis@lw.com

Attorneys for Defendants
*Hermès of Paris, Inc. and*
*Hermès International*