UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA CAVALLERI, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>HERMES INTERNATIONAL, A FRENCH CORPORATION, et al.,<br><br>   Defendants. | Case No. 24-cv-01707-JD<br><br>**SECOND ORDER RE DISMISSAL** |

In this putative antitrust class action under the Sherman Act and California state laws, named plaintiffs allege that defendants Hermes International and Hermes of Paris (together, Hermes) won't sell them a famed Birkin bag unless they are "deemed worthy" by buying other Hermes products such as shoes, scarves, jewelry, clothing, and the like. Dkt. No. 52 (second amended complaint (SAC)) ¶¶ 42-43. In plaintiffs' view, this amounts to an unlawful tying arrangement in violation of Sherman Act Sections 1 and 2, 15 U.S.C. §§ 1, 2, the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 *et seq.*, the California Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*, the California False Advertising Law, Bus. & Prof. Code §§ 17200 *et seq.*, and California common law. Plaintiffs sue on behalf of themselves and various putative national and California consumer classes.

The Court dismissed plaintiffs' first amended complaint (FAC), Dkt. No. 33, with leave to amend. This was because the FAC "did not plausibly allege relevant product markets, defendant's market power within those markets, or an injury that the antitrust laws were intended to prevent." Dkt. No. 51. Hermes asks to dismiss the SAC for the same shortcomings under Federal Rules of Civil Procedure Rule 8 and Rule 12(b)(6). Dkt. No. 54. The parties' familiarity with the record is assumed, and the SAC is dismissed.

Overall, the SAC did not provide any new facts that might have filled in the gaps in the prior complaint and raised plaintiffs' antitrust theories above a purely speculative level. *See Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (dismissing Sherman Act complaint). Plaintiffs appear to bank on the theory that all tying claims are a per se violation of the Sherman Act, and so they need not allege much in the way of facts. But the Supreme Court has expressly cautioned against reflexively condemning tying arrangements as per se illegal. *See Illinois Tool Works, Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 35 (2006) ("[T]his Court's strong disapproval of tying arrangements has substantially diminished."); *see also Brantley v. NBC Universal Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012) ("[T]ying arrangements may promote rather than injure competition.") (internal citation omitted). In modern practice, only a "small group of restraints are unreasonable per se because they 'always or almost always tend to restrict competition and decrease output.'" *Ohio v. Am. Express Co.*, 585 U.S. 529, 540 (2018) (quoting *Business Electronics Corp. v. Sharp Electronics Corp.,* 485 U.S. 717, 723 (1988) (cleaned up)). Because the consequences of labelling market conduct as illegal per se may be substantial, "[i]t is only after considerable experience with certain business relationships that courts classify them as per se violations." *Broad. Music, Inc. v. Columbia Broad. Sys. Inc.*, 441 U.S. 1, 9 (1979) (internal quotation omitted).

Experience with the luxury handbag industry is not such that a presumption of per se liability is obvious, as plaintiffs would have it. Nothing in the SAC establishes that the alleged practices with respect to the Birkin bag come within the narrow band of per se violations. Even so, Hermes agreed to assume that a per se standard applies. *See* Dkt. No. at 6 and n.2. The Court will follow the parties' lead, purely for present purposes, and view the SAC through the lens of per se liability. That does not save the SAC from dismissal.

"A tying arrangement is a device used by a seller with market power in one product market to extend its market power to a distinct product market." *Rick-Mik Enterprises, Inc. v. Equilon Enterprises, Inc.*, 532 F.3d 963, 971 (9th Cir. 2008) (internal quotation omitted). "To accomplish this objective, the seller conditions the sale of one product (the tying product) on the buyer's purchase of a second product (the tied product)." *Id*. (internal quotation omitted). "Tying arrangements are forbidden on the theory that, if the seller has market power over the tying

2

1    product, the seller can leverage this market power through tying arrangements to exclude other

2    sellers of the tied product." *Id*. (internal quotation omitted).

3        "For a tying claim to suffer per se condemnation, a plaintiff must prove: (1) that the

4    defendant tied together the sale of two distinctive products or services; (2) that the defendant

5    possesses enough economic power in the tying market to coerce its customers into purchasing the

6    tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in

7    the tied product market." *Id*. (internal quotation omitted). *See also Epic Games, Inc. v. Apple,*

8    *Inc.*, 67 F.4th 946, 996-97 (9th Cir. 2023) (a "tie is per se unlawful if (1) the defendant has market

9    power in the tying product market, and (2) the tying arrangement affects a not insubstantial

10   volume of commerce in the tied product market.") (internal quotation omitted).

11       As these principles establish, a plausible allegation of market power with respect to the

12   tying product is an essential element of a tying claim. "'[I]n all cases involving a tying

13   arrangement, the plaintiff must prove that the defendant has market power in the tying product.'"

14   *Rick-Mik Enterprises*, 532 F.3d at 971 (quoting *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466

15   U.S. 2, 46 (1984)). "And to prove it, it must first be properly alleged." *Id*. at 971-72.

16       The SAC did not plausibly allege that Hermes has market power in a properly identified

17   market for the tying product. The tying product is the Birkin bag, and the relevant product market

18   is said to be the market for "elitist luxury handbags in the United States." Dkt. No. 52 ¶ 26. The

19   problem for plaintiffs is that the SAC did not present any facts that might have made these

20   allegations more than purely conclusory. To define the relevant market, the SAC relies mainly on

21   a 2010 paper for institutional investors about luxury good consumption in general, and a 2014

22   academic article on the same topic. *See* Dkt. No. 52 ¶¶ 27-28.[1] As presented in the SAC, these

23   materials simply described consumer perceptions about product quality and exclusivity from more

24   than a decade ago. That is a far cry from properly defining a relevant market for antitrust

---

[1] Hermes provided copies of the 2010 report and 2014 article, with a request that the Court consider them as incorporated by reference in the SAC. *See* Dkt. No. 52 at 8 n.3. Although consideration would likely be appropriate, *see Jones v. Progressive Casualty Ins. Co.*, Case No. 16-cv-06941-JD, 2018 WL 4521919 at *2 (N.D. Cal. Sept. 19, 2018), the Court need not look beyond the SAC and did not rely on those documents here.

1   purposes. *See Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 955 (9th Cir. 2023). So too for
2   the snippets of public statements by Hermes about its business that are mentioned in the SAC.
3   Dkt. No. 52 ¶ 33. The statements are little more than random soundbites assembled from disparate
4   sources.

5       Without a cognizable tying market, the SAC cannot plausibly allege that Hermes possessed
6   market power. *See Am. Express Co.*, 585 U.S. at 542-43 (market power requires the definition of
7   a proper product market). The SAC makes the conclusory allegations that "Hermes Birkin bags
8   constitute between 60% and 75% of the Elitist Luxury Handbag Market," Dkt. No. 52 ¶ 32, and
9   that Hermes has a "dominant position" in that ostensible market, *id.* ¶ 26. But market share or
10  position are not the same as market power, and a "mere showing of substantial or even dominant
11  market share alone cannot establish market power sufficient to carry out a predatory scheme."
12  *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995). There is nothing
13  in the SAC that might translate market share into a plausible allegation of market power.

14      The SAC also did not come close to plausibly alleging harm to competition in a market for
15  a tied product, which is another essential element of a tying claim. *See Rick-Mik Enterprises*, 532
16  F.3d at 971; *Brantley*, 675 F.3d at 1201. The "tied market" alleged here is a kaleidoscope of
17  products covering everything from "scarves and shawls, ready to wear clothing, footwear,
18  watches, jewelry, fragrancies, accessories (including hats, gloves, ties, and sunglasses)" to "home
19  goods such as table wear, furniture, blankets, and decorative objects like vases and trays." Dkt.
20  No. 52 ¶ 40. The SAC is bereft of any facts that might support lumping such a hugely diverse
21  array of non-substitutable products into a single market, and equally devoid of facts indicating that
22  competition for these goods has been illegally restrained by Hermes.

23      Overall, plaintiffs have not plausibly alleged that Hermes engaged in anticompetitive
24  conduct with respect to the Birkin bag. The failure to adequately plead a relevant tying market,
25  market power in the relevant market, and injury to competition in a tied product market, command
26  dismissal of the Sherman Act claims in the SAC. *See Rick-Mik Enterprises*, 532 F.3d at 972;
27  *Brantley*, 675 F.3d at 1201-02. It may be, as plaintiffs suggest, that Hermes reserves the Birkin
28  bag for its highest-paying customers, but that in itself is not an antitrust violation. "Businesses

4

may choose the manner in which they do business absent an injury to competition." *Brantley*, 675 F.3d at 1202 (citing *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009)).

The SAC was plaintiffs' third opportunity to state a plausible Sherman Act claim. Plaintiffs had ample notice of the deficiencies in their federal claims, and did not cure them in the SAC. Consequently, further leave to amend is not warranted and the dismissal of the federal claims is with prejudice. *Louis D. Brandeis Center, Inc. v. Regents of Univ. of Cal.*, Case No. 23-cv-06133-JD, 2025 WL 974983 at *2 (N.D. Cal. Mar. 31, 2025) (internal citation omitted). In the absence of a federal question, which was the only basis of federal subject matter jurisdiction alleged in the SAC, *see* Dkt. No. 52 ¶ 12, the Court declines to exercise supplemental jurisdiction over the California state claims. *See* 28 U.S.C. § 1367(c)(3); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010). This case is in a very early stage, and all proceedings were stayed other than the filing of the SAC and the ensuing motion to dismiss. Dkt. No. 49 at 17:15-16. The SAC is dismissed and the case is closed.

**IT IS SO ORDERED.**

Dated: September 17, 2025

JAMES DONATO
United States District Judge